IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

State of California, *et al.*,

        Plaintiffs-Appellees,

v.

United States Bureau of Alcohol, Tobacco, Firearms & Explosives, *et al.*,

        Defendants-Appellants.

No. 24-2701

**STATUS REPORT AND MOTION FOR FURTHER RELIEF**

Pursuant to Federal Rule of Appellate Procedure 27 and this Court's order of May 13, 2024, the federal government submits this status report and respectfully moves to vacate the judgment and remand this case to district court in light of recent Supreme Court decisions that may bear on the case's appropriate resolution. Plaintiffs oppose this motion. In support of this motion, the government states the following:

**1.** Through the Gun Control Act of 1968, *codified as amended*, 18 U.S.C. § 921 *et seq.*, Congress has enacted requirements for persons who import, manufacture, or deal in "firearms," *id.* §§ 922-923. Such persons must obtain a federal firearms license, *id.* § 923(a), maintain records of firearm acquisition and disposition, *id.* § 923(g)(1)(A), and conduct a background check before transferring firearms to a non-licensee, *id.* § 922(t). Congress has also required importers and manufacturers to identify each

firearm they import or manufacture with a serial number on the frame or receiver. *Id.* § 923(i).

The statutory scheme hinges on the definition of "firearm." Congress defined that term as follows:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3).

In April 2022, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) promulgated a Rule that, as relevant here, provided updated regulatory definitions for purposes of this statutory scheme. *See Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022); *see also* 87 Fed. Reg. 51,249 (Aug. 22, 2022) (technical corrections). The Rule clarifies that frames and receivers that are partially complete, disassembled, or nonfunctional (such as a frame or receiver parts kit) constitute frames or receivers under the statute if they are "clearly identifiable as an unfinished component part of a weapon" and if they are designed to function as a frame or receiver or may readily be converted to a functional state. 87 Fed. Reg. at 24,663, 24,727-28, 24,739; *see* 27 C.F.R. § 478.12(c). The manufacture and sale of such frames or receivers is therefore subject to federal licensing, background check, and recordkeeping requirements. In addition, the Rule articulates an eight-

factor test to determine whether the process of converting the unfinished component part to a functional state may be "readily" performed.

The Rule also provides examples of particular products that are, or are not, readily converted into functional frames and receivers. As especially relevant here, the Rule concludes that certain unindexed AR-15-style receiver blanks are not "readily" converted into functional receivers so long as they are not sold with templates or other tools that allow easy completion.

Plaintiffs in this suit—the State of California and the Giffords Law Center to Prevent Gun Violence—challenge the Rule's conclusion that AR-15 blanks are not, standing alone, regulated receivers. The district court concluded that plaintiffs have Article III standing to challenge ATF's non-regulation of AR-15 blanks because, in the district court's view, that non-regulation may lead plaintiffs to incur additional costs or divert resources to respond to crime associated with such blanks. *See* Dkt. No. 207, at 13-19. And the district court granted summary judgment to plaintiffs on their claims that ATF's determination regarding AR-15 blanks—in the Rule and in subsequent implementing actions—was inadequately explained. *See id.* at 34-37, 40-44. As a remedy, the court declared unlawful, vacated, and enjoined ATF from enforcing the relevant example in the rule "and related agency actions." *Id.* at 46. The government has now appealed that grant of summary judgment.

**2.** In addition to this suit challenging the Rule, a different suit was brought by two individual firearms owners, two advocacy organizations, and five entities that

3

manufacture or distribute products regulated by the Rule. *See Garland v. VanDerStok*, No. 23-852 (U.S.). Those plaintiffs similarly claimed that the Rule's provisions regarding partially complete frames and receivers are unlawful. But they—unlike plaintiffs here—contended that the provisions impermissibly reach too many, not too few, partially complete frames and receivers. The Fifth Circuit agreed with that contention, *see VanDerStok v. Garland*, 86 F.4th 179 (5th Cir. 2023), and the Supreme Court granted the government's petition for a writ of certiorari to review that decision, *see VanDerStok*, 2024 WL 1706014 (U.S. Apr. 22, 2024).

On May 13, 2024, this Court granted the government's motion to stay proceedings in this appeal pending the Supreme Court's decision in *VanDerStok*. *See* Order (May 13, 2024). The Court directed that the government "notify the court by filing a status report and motion for further relief within 7 days of" the Supreme Court's decision. *Id.*

**3.** We write to inform the Court that, on March 26, 2025, the Supreme Court issued its decision in *VanDerStok*. The Court reversed the Fifth Circuit and rejected the *VanDerStok* plaintiffs' facial challenges to the Rule. First, the Court held that the Rule's provisions regarding weapon parts kits are not "inconsistent on their face with the" statute. Slip Op. 7. In reaching that conclusion, the Court discussed the statute's ready-conversion standard, explaining that Congress determined that a so-called "starter gun"—which can be converted into a working firearm by "a person without any specialized knowledge" with "everyday tools in less than an hour"—satisfies that

4

standard. *Id.* at 12. Because by comparison some weapon parts kits "require[] no more time, effort, expertise, or specialized tools to complete," *id.*, the Court reasoned that at least those kits must also satisfy the standard and so the Rule "is not facially invalid," *id.* at 12-13. The Court cautioned, however, that some kits "may be so incomplete or cumbersome to assemble that" they "can no longer fairly be described" as meeting the statutory definition of a "firearm." *Id.* at 13.

Second, the Court held that the Rule's provisions regarding incomplete frames and receivers are also not "facially inconsistent with the" statute. Slip Op. 17. In reaching that conclusion, the Court focused on a partially complete frame described in the record that "[a]n ordinary person, using ordinary tools, can finish" in "minutes." *Id.* at 18, 20. And the Court emphasized that ATF's "contemporary and consistent vie[w]" for "decades" has been that "some unfinished frames and receivers" are "firearms" under the statute. *Id.* at 20-21. But again, in rejecting plaintiffs' facial challenge, the Court emphasized that "[s]ome products may be so far from a finished frame or receiver that they cannot fairly be described using those terms." *Id.* at 21.

**4.** In light of the Supreme Court's recent decision, the government respectfully requests that this Court vacate the judgment and remand for the district court to consider in the first instance the effect of *VanDerStok* on plaintiffs' claims. As this Court has explained, it may be proper to vacate a judgment and "remand for further proceedings" in light of such "intervening" precedent. *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 837 n.2 (9th Cir. 2021).

The Supreme Court's decision in *VanDerStok* contains an extended discussion of the proper interpretation of the relevant statutory terms and of how best to apply those terms to particular products, which will likely inform the proper resolution of plaintiffs' claims in this case. Although the district court's decision on the merits turned on the agency's perceived inadequate explanation of its conclusion that AR-15 blanks do not qualify as firearms, the reasonableness of the agency's explanation necessarily depends on the underlying statutory context.

The Supreme Court's decision plainly bears on the reasonableness question in this case. For example, as explained, the Supreme Court provided some guideposts regarding when a weapon parts kit or a partially complete frame or receiver may be described as "readily converted" to a functional article —guideposts that will likely be relevant to determining whether ATF adequately supported the challenged conclusion that AR-15 blanks are not readily converted to functional receivers. Similarly, the Supreme Court's opinion emphasized the importance of considering the agency's consistent past views in construing how the statute applies to particular products. That aspect of the opinion too may bear on the proper resolution of plaintiffs' claims in light of the agency's previous determinations related to AR-15 blanks. *See, e.g.*, Compl. Ex. 11 (2013 classification letter).

Moreover, remand is particularly appropriate here because in addition to *VanDerStok*, other intervening Supreme Court precedent may also bear on the proper resolution of this case. As explained, the district court concluded that California and

6

the Giffords Center have standing to challenge ATF's non-regulation of AR-15 blanks primarily based on the court's conclusion that plaintiffs would incur costs or divert resources to combat ATF's non-regulation. The Supreme Court has more recently rejected a similar theory of standing in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024). In that case, the Supreme Court reiterated that standing is "ordinarily substantially more difficult to establish" when a plaintiff who is not directly regulated challenges the government's "lack of regulation" of "someone else." *Id.* at 382 (quotation omitted). And the Court specifically rejected the proposition that such plaintiffs may "spend [their] way into standing simply by expending money" to combat—or "divert[ing] [their] resources in response" to—the government's alleged under-regulation. *Id.* at 394-95. The district court did not have the benefit of that decision in concluding that plaintiffs have standing to bring their claims.

Finally, the early stage of these appellate proceedings further weighs in favor of vacating the district court's judgment and remanding for further proceedings. This Court stayed proceedings in this case before any briefs had been filed and, thus, before the appeal was calendared for argument or assigned to a merits panel. In these circumstances, where neither the parties nor the Court has invested substantial resources in these appellate proceedings, a remand would not have substantial drawbacks that would counteract the benefits from allowing the district court to

7

consider in the first instance the effect of intervening precedent on plaintiffs' claims.

**5.** Plaintiffs oppose this motion.

          Respectfully submitted,

          COURTNEY L. DIXON

          *s/ Sean R. Janda*
          SEAN R. JANDA
            *Attorneys, Appellate Staff*
            *Civil Division, Room 7260*
            *U.S. Department of Justice*
            *950 Pennsylvania Avenue NW*
            *Washington, D.C. 20530*
            *(202) 514-3388*

April 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this motion complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Garamond, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 1682 words, according to the count of Microsoft Word.

*s/ Sean R. Janda*
Sean R. Janda
