# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>    Plaintiffs-Appellees,<br><br>v.<br><br>UNITED STATES BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, et al.,<br><br>    Defendants-Appellants. | No. 24-2701 |

## PLAINTIFFS-APPELLEES' RESPONSE OPPOSING DEFENDANTS-APPELLANTS' MOTION FOR FURTHER RELIEF

Plaintiffs-Appellees, the State of California and Giffords Law Center to Prevent Gun Violence ("Giffords") oppose Defendants-Appellants' motion to vacate the Northern District of California's judgment and to remand to the district court.

This case concerns the question whether certain "ghost gun" products qualify as firearms under the Gun Control Act of 1968 and its amendments. Ghost guns are do-it-yourself firearms—designed specifically to enable purchasers to create an operable weapon quickly and easily with common household tools. In 2022, ATF promulgated a rule that, in effect, regulated these products by enumerating a series of factors that bear on whether a given product is a "firearm," and thus subject to federal background check and serialization requirements. Plaintiffs asserted that ATF's rule,

while an important step to address the proliferation of ghost guns, nevertheless arbitrarily failed to apply the rule to all categories of firearm parts that it should have. The district court granted summary judgment to Plaintiffs, finding that ATF's classifications for certain firearm parts were arbitrary and capricious applications of the rule. *California v. ATF*, 718 F. Supp. 3d 1060 (N.D. Cal. 2024).

Meanwhile, in *Bondi v. VanDerStok et al.*, No. 23-852, 604 U.S. ---- (2025), the plaintiffs challenged the entire regulatory regime, arguing that ATF's rule conflicted with the Gun Control Act, and that *no* weapons parts kit or unfinished frame or receiver could qualify as a "firearm" no matter how easily or quickly it could be converted into a fireable weapon. The Fifth Circuit agreed and vacated ATF's rule. *VanDerStok v. Garland*, 86 F. 4th 179 (5th Cir. 2023). Last month, the Supreme Court reversed the Fifth Circuit and reinstated the rule. Consistent with the district court's analysis in this case, the Supreme Court held that "[t]he [Gun Control Act] embraces, and thus permits ATF to regulate, some weapon parts kits and unfinished frames or receivers." *VanDerStok*, No. 23-852, slip op. at 24.

Defendants argue that the Supreme Court's opinion in *VanDerStok* warrants remanding this case to the district court for further proceedings. Yet in reaching its decision, the district court merely applied the factors in ATF's rule to certain products that ATF had arbitrarily and capriciously deemed not to constitute firearms. That is precisely the type of analysis that *VanDerStok* endorsed. *VanDerStok*, No. 23-852, slip op. at 4.

Defendants also argue that the Supreme Court's decision in *FDA v. Alliance for Hippocratic Medicine* suggests that Plaintiffs may lack standing. *Alliance* confirmed that organizations can "sue on their own behalf for injuries they have sustained" as long as they "satisfy the usual standards for injury in fact, causation, and redressability." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, n. 19 (1982)). Those were the same standards the district court analyzed and applied in this case. *See California v. ATF*, 718 F. Supp. 3d at 1073 (acknowledging that, "[t]o have standing, plaintiffs must establish (1) that they have suffered an injury in fact, (2) that their injury is fairly traceable to a defendant's conduct, and (3) that their injury would likely be redressed by a favorable decision"). And in any event, the district court separately determined that the State of California has standing applying standard principles of Article III standing doctrine to reach that conclusion. Given that "only one plaintiff need have standing in order for the case to proceed," there is no need to relitigate this issue in the district court. *Id.*

Because Defendants' motion fails to identify any change in the relevant facts or law that requires further development of the record in the district court, remand is not warranted here. This Court should deny Defendants' motion.

## BACKGROUND

Plaintiffs filed this action in September 2020 challenging ATF's then-operative agency actions with respect to ghost gun parts—firearms marketed as "partially complete" or "unfinished"—under the Administrative Procedural Act ("APA"). *See*

3

Complaint, *California v. ATF*, No. 3:20-cv-06761 (N.D. Cal. Sept. 29, 2020), Dkt. 1 (alleging that ghost gun parts must be subject to the same background check and licensing requirements as all other firearms). In May 2021, the federal government proposed a new ATF rule that would require background checks, licensing, and serial numbers for certain weapon parts kits and partially complete frames or receivers, and the parties agreed to stay this case in light of the proposed rule. Order on Stay, *California v. ATF*, No. 3:20-cv-06761 (N.D. Cal. May, 21, 2021), Dkt. 88.

The rule, the Definition of "Frame or Receiver" and Identification of Firearms, 27 C.F.R. §§ 447, 478, 479 (the "Final Rule"), took effect in August 2022. The Final Rule interpreted the term "firearm" in the GCA to include weapon parts kits "that [are] designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." 27 CFR § 478.11 (2023). It also explained that the GCA terms "frame" and "receiver" include "a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." 27 CFR § 478.12(c). As a result, partially complete frames or receivers and ghost gun kits were subject to the background check and serialization requirements of the GCA.

ATF carved out of its new definition of frames and receivers certain "AR-15 variant receiver[s] without critical interior areas having been indexed, machined, or formed" *and* "that [are] not sold, distributed, or possessed with instructions, jigs,

4

templates, equipment, or tools such that it may readily be completed." 27 CFR § 478.12(c), Example 4. Plaintiffs amended their complaint to challenge this exception as inconsistent with the GCA and as arbitrary and capricious. Amended Complaint, *California v. ATF*, No. 3:20-cv-06761 (N.D. Cal. Oct. 20, 2022), Dkt. 122.

As discovery in this proceeding revealed, ATF would go on to issue at least 23 classification letters applying that rationale in concluding that certain products were *not* firearms. Yet ATF's classification letters revealed that it treated materially similar products differently and failed to consistently apply its own factors in assessing how long it would take and how easy it would be to convert these products into fully operative assault weapons. Accordingly, Plaintiffs supplemented their amended complaint to challenge these determinations as arbitrary and capricious. Supplemental Amended Complaint, *California v. ATF*, No. 3:20-cv-06761 (N.D. Cal. Sept. 7, 2023), Dkt. 177.

In February 2024, following extensive briefing and argument, the district court entered an order granting in relevant part summary judgment to Plaintiffs. The district court held that "ATF acted arbitrarily and capriciously with respect to its categorical determinations that AR-type partially complete receivers that are not indexed or machined and not sold with, e.g., a jig or tools are not firearms for purposes of the GCA." *California v. ATF*, 718 F. Supp. 3d at 1065. As the district court explained, ATF failed to provide "*any* explanation" as to its categorical treatment of AR-type receivers, and its "post-hoc explanations [were] problematic."

5

*Id.* at 1094, 1097 (emphasis in original). Defendants timely appealed, Dkt. 1, but the parties agreed to stay this appeal pending the Supreme Court's decision in *VanDerStok*, Dkt. 8.

On March 26, 2025, the Supreme Court issued its opinion in *VanDerStok*. The Court held that "[t]he GCA embraces, and thus permits ATF to regulate, some weapon parts kits and unfinished frames or receivers." *VanDerStok*, No. 23-852, slip op. at 24. In upholding the provisions of the Final Rule challenged in *VanDerStok*, 27 C.F.R. § 478.11 and 27 C.F.R. § 478.12(c), the Supreme Court rejected the Fifth Circuit's holding that the GCA "do[es] not allow the agency to regulate unfinished frames and receivers no matter how close to completion they may be." *VanDerStok*, No. 23-852, slip op. at 6 (cleaned up).

## ARGUMENT

Remand "may be appropriate" in two instances: an "outcome-changing factual development" or a "change[]" in "relevant law." Chris Goelz, Peder K. Batalden & John F. Querio, Rutter Group Prac. Guide. Fed. Ninth Cir. Civ. App. Prac. Ch. 6C ¶ 6:371 (2024 ed.); *see also Hays v. Concannon*, 921 F.2d 240, 241 (9th Cir. 1990) (remanding due to new legislation amending the same Act at issue); *Creech v. Tewalt*, 84 F.4th 777, 793–94, 794 n.7 (9th Cir. 2023) (remanding in part due to an intervening change in state execution protocol, which necessarily affected disposition of Eighth Amendment claim as it was decided below). Neither of these circumstances is present here.

6

### A.    Remand Is Not Warranted Based on *VanDerStok*

The Supreme Court's decision in *VanDerStok* upheld the Final Rule—the same rule the district court applied in this case.  In granting in part and denying in part Plaintiffs' motion for summary judgment below, the district court concluded that portions of the Final Rule "related to [AR-15 type unfinished receivers] are arbitrary [and] capricious." *California v. ATF*, 718 F. Supp. 3d at 1097–98.

Defendants argue that *VanDerStok* could "inform the proper resolution of plaintiffs' claims in this case" because it "contains an extended discussion of the proper interpretation of the relevant statutory terms and of how best to apply those terms to particular products."  Mot. at 6.  But *VanDerStok* is not an "outcome-changing factual development" or a "change[]" in "relevant law."  Rutter Group Prac. Guide ¶ 6:371.  To the extent *VanDerStok* provides insights relevant to this case, the opinion can be addressed in the parties' merits briefing before this Court.  *See Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency*, 609 F.2d 383, 385–386 (9th Cir. 1979).

The sole supporting authority Defendants cite is inapposite.  In that case, *Inland Empire Waterkeeper v. Corona Clay Co.*, a change in law presented a direct conflict with "this Court's prior interpretation of" a Clean Air Act requirement, resulting in the imposition of a heightened standard of proof.  17 F.4th 825, 829, 836 (9th Cir. 2021).  The district court there had used a lower standard for determining when an emission of polluted water is a "discharge" under the Act in jury instructions and in its partial

summary judgment determination. *Id.* at 836. This Court concluded that remand was necessary for the parties to address whether the alleged discharge met the new heightened standard. *Id.* Here, the opposite occurred. The Supreme Court did not change the law but rather upheld the "existing law" that existed when the district court rendered its summary judgment order.[1] *First Beverages, Inc. of Las Vegas v. Royal Crown Cola Co.*, 612 F.2d 1164, 1171 (9th Cir. 1980) (denying motion to remand based on a purported "intervening change in the law" where the record showed that the intervening decisions merely "applied the existing law"); *see also Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 948 (Fed. Cir. 2016) ("unnecessary" to remand when an intervening case "reiterated the [same] rule").

## B. Remand Is Not Warranted Based on *Alliance for Hippocratic Medicine*

Defendants contend that *Alliance for Hippocratic Medicine* "rejected a similar theory of standing" presented to the district court, and as a result, remand is "particularly appropriate." Mot. at 6–7. Defendants overstate the similarities between the standing theories presented in *Alliance* and this case—particularly as to the State of

---

[1] In fact, the district court itself considered and rejected the reasoning in the same Fifth Circuit decision that *VanDerStok* reversed. *See California v. ATF*, 718 F. Supp. 3d at 1084 n.11 ("Respectfully, the [Fifth Circuit's *VanDerStok*] analysis [] is problematic for several reasons. . . . Congress's silence with respect to 'frame' or 'receiver' does not compel the conclusion that the definition of these terms is beyond interpretation by the ATF.").

California's standing. Because "once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others," *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993), *Alliance* does not support remand here.

*Alliance* reiterated well-understood principles of Article III standing and clarified how they relate to organizations in particular. *Alliance* analyzed standing for plaintiff doctors, doctor members of medical associations, and the medical associations themselves. Each plaintiff "object[ed] to mifepristone being prescribed and used by others," but did "not prescribe, manufacture, sell, or advertise mifepristone or sponsor a competing drug." *Alliance*, 602 U.S. at 385–86 (emphasis omitted). The physician plaintiffs set forth two theories of causation. The physicians argued that "FDA's relaxed regulation of mifepristone causes conscience injuries to the doctors," *id.* at 386, and that the doctors will need to "divert[] resources and time from other patients to treat patients with mifepristone complications; increasing risk of liability suits from treating those patients; and potentially increasing insurance costs," *id.* at 390. Each theory was "too speculative or otherwise too attenuated" to link the "alleged injuries" to "the FDA's regulatory actions." *Id.* at 390.

The medical associations separately argued "that the associations themselves have organizational standing." *Id.* at 393. The medical associations "claim[ed] to have standing not based on their mere disagreement with FDA's policies, but based on their incurring costs to oppose FDA's actions," alleging that the "FDA has 'caused' the associations to conduct their own studies on mifepristone so that the associations

can better inform their members and the public about mifepristone's risks." *Id.* at 394. The medical associations argued that "under *Havens Realty Corp. v. Coleman*, standing exists when an organization diverts its resources in response to a defendant's actions." *Id.* at 395. In holding that the medical associations lacked standing, the Supreme Court explained that in *Havens* the defendant "directly affected and interfered with" the plaintiff organization's "core business activities." *Id.* Because the associations in *Alliance* did not allege "any similar impediment to [their] advocacy businesses," their reliance on *Havens* was misplaced and overly "expansive." *Id.*

Defendants argue that the Supreme Court "rejected" the theory that plaintiffs may "spend [their] way into standing" by "expending money" or "diverting [their] resources" to combat government action. Mot. at 7 (quoting *Alliance*, 602 U.S. at 394–95). But those observations pertain only to *Alliance's* analysis of *Havens* in the context of organizational plaintiffs. *See Alliance*, 602 at 394-95 (analyzing plaintiff medical associations' argument that they had standing under *Havens*). The district court did not apply *Havens* or cite a "diversion of resources" theory in evaluating the State of California's standing. Instead, the court analyzed cases concerning state standing in the context of "increased costs of policing and law enforcement" and "enactment and implementation of state legislation." *California v. ATF*, 718 F. Supp at 1074 (referring back to its prior order on standing; Order on Motion to Dismiss, *California v. ATF*, No. 3:20-cv-06761, Dkt. 135). Defendants' arguments as to the State of California are thus misplaced.

10

To the extent *Alliance* discussed relevant principles of standing generally, it did so with respect to other Supreme Court precedent that was before the district court at the time of its opinion below. *See Alliance*, 602 U.S. at 380–83 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) throughout). As to the State of California's standing, then, there is no change in relevant law that could produce a different outcome. And because "only one plaintiff need have standing in order for the case to proceed," *California v. ATF*, 718 F. Supp. 3d at 1073–74, remand to consider Giffords's standing alone is unnecessary here. *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1282 (9th Cir. 2023) (cleaned up) ("Remand is not necessary where . . . the record is clear and remand would impose needless additional expense and delay.").

As to Giffords, the district court's standing analysis is entirely consistent with the principles applied in *Alliance*. As noted in *Alliance*, an organization has standing to sue where the defendant "directly affected and interfered with" the organization's "core business activities." *Alliance*, 602 U.S. at 395. Unlike the medical associations, which did not allege "any [] impediment to [their] advocacy business," *id.*, Giffords has amply done so here. The district court specifically held that ATF's inaction on ghost guns "undermines every other firearm policy that [Giffords] advocates for," including Giffords's core mission "to ensure firearms are legally and responsibly possessed." *California v. ATF*, 718 F. Supp. 3d at 1075 (also noting "the organization's core policy platform of supporting background check and licensing laws at the federal

and state level, for all firearms *in general*") (internal quotation marks omitted) (emphasis in original).

Indeed, Giffords's support of background checks for all firearm sales—including ghost guns—has existed both before and after the "defendant's action" in this matter.[2] *Cf. Alliance*, 602 U.S. at 394 ("An organization cannot manufacture its own standing" simply by expending money to "gather information and advocate against the defendant's action"). As a result, the resources allocated to support background checks are part of Giffords's pre-existing core activities—and were not "divert[ed] in response to a defendant's actions." *Id.* That is sufficient to establish standing here. *Havens,* 455 U.S. at 379.

---

[2] Giffords Law Center has been advocating common sense gun reform, including comprehensive background checks, for many years. *E.g.*, Press Release, Giffords Law Center, *Americans for Responsible Solutions and the Law Center to Prevent Gun Violence to Join Forces* (Mar. 15, 2016), https://giffords.org/press-release/2016/03/joiningforces/ ("The merger builds on collaboration between the two organizations that has won legislative victories in several states in 2015 and 2016; delivered defining new executive actions from President Obama to narrow loopholes and improve background checks; and has produced comprehensive resources for legislators and advocates, including a series of Commonsense Solutions Toolkits on topics like strengthening the background check system . . .") (emphases added). Post merger, Giffords has "a much larger platform to help bring key policies like universal background checks to more states." *Id.* (emphasis added).

## CONCLUSION

Defendants-Appellants' motion to vacate the Northern District of California's decision and remand this case to the district court should be denied.

*Dated*: April 14, 2025

Respectfully submitted,

*s/ S. Clinton Woods*

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE, SBN 238485
Supervising Deputy Attorney General
S. CLINTON WOODS, 246054
Deputy Attorney General
Clint.Woods@doj.ca.gov
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3807
Facsimile: (415) 703-5843

*Attorneys for Plaintiff-Appellee State of California, by and through Attorney General Rob Bonta*

*s/ Lee R. Crain*

GIBSON, DUNN & CRUTCHER LLP
LEE R. CRAIN
LIESEL SCHAPIRA, *pro hac vice*
200 Park Avenue
New York, NY 10166-0193
lcrain@gibsondunn.com
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

PAUL HASTINGS LLP
AVI WEITZMAN, *pro hac vice*
200 Park Avenue
New York, NY 10166
aviweitzman@paulhastings.com

13

Telephone: (212) 318-6000
Facsimile: (212) 752-3620

GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
DAVID M. PUCINO, *pro hac vice*
223 West 38th St. # 90 New York, NY
10018 Telephone: (917) 680-3473

*Attorneys for Plaintiff-Appellee Giffords Law
Center to Prevent Gun Violence*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this response complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Garamond, a proportionally spaced font, and that it complies with the type volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2,968 words, according to the count of Microsoft Word.

*s/ Lee R. Crain*
_____
Lee R. Crain

## RULE 25-5(F) ATTESTATION

In accordance with Ninth Circuit Rule 25-5(f), I hereby attest that all other parties on whose behalf this document is submitted concur in its content.

*Dated*: April 14, 2025

_____s/ Lee R. Crain_____
Lee R. Crain
