**No. 24-2701**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

STATE OF CALIFORNIA, et al.,

*Plaintiffs-Appellees*,

v.

UNITED STATES BUREAU OF ALCOHOL, TOBACCO, FIREARMS
AND EXPLOSIVES, et al.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:20-cv-0676
Hon. Edward M. Chen

---

**APPELLEES' SUPPLEMENTAL EXCERPTS OF RECORD
VOLUME 2 OF 2 (PAGES 211 TO 475)**

---

Lee R. Crain
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
lcrain@gibsondunn.com

*Attorney for Appellee Giffords
Law Center to Prevent
Gun Violence*

Rob Bonta
ATTORNEY GENERAL
OF CALIFORNIA
455 Golden Gate Ave.
Suite 11000
San Francisco, CA 94102
Telephone: (415) 510-3807

*Attorney for Appellee
State of California*

*[Additional Counsel Listed on Next Page]*

Gregg Costa
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002
Telephone: (346) 718-6649
gcosta@gibsondunn.com

Avi Weitzman, *pro hac vice*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
aviweitzman@paulhastings.com

David M. Pucino*, pro hac vice*
GIFFORDS LAW CENTER
TO PREVENT GUN VIOLENCE
223 West 38th St. # 90
New York, NY 10018
Telephone: (917) 680-3473

*Attorneys for Appellee Giffords Law
Center to
Prevent Gun Violence*

Thomas S. Patterson
SENIOR ASSISTANT
ATTORNEY GENERAL
R. Matthew Wise, 238485
SUPERVISING DEPUTY
ATTORNEY GENERAL
S. Clinton Woods, 246054
DEPUTY ATTORNEY GENERAL
455 Golden Gate Ave.
Suite 11000
San Francisco, CA 94102
Telephone: (415) 510-3807
Clint.Woods@doj.ca.gov

*Attorneys for Appellee State of
California, by and through
Attorney General
Rob Bonta*

1 | GIBSON, DUNN & CRUTCHER LLP
2 | SCOTT A. EDELMAN, SBN 116927
 | sedelman@gibsondunn.com
3 | 2029 Century Park East
 | Los Angeles, CA 90067-3026
4 | Telephone: (310) 552-8500
 | Facsimile: (310) 551-8741
5 |
6 | LEE R. CRAIN, *pro hac vice*
 | ERICA PAYNE, *pro hac vice*
7 | LIESEL SCHAPIRA, *pro hac vice*
 | 200 Park Avenue
8 | New York, NY 10166-0193
 | Telephone: (212) 351-4000
9 | Facsimile: (212) 351-4035
10 |
 | PAUL HASTINGS LLP
11 | AVI WEITZMAN, *pro hac vice*
 | aviweitzman@paulhastings.com
12 | 200 Park Avenue
 | New York, NY 10166
13 | Telephone: (212) 318-6000
 | Facsimile: (212) 752-3620
14 |

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE, SBN 238485
Supervising Deputy Attorney General
S. CLINTON WOODS, SBN 246054
Deputy Attorney General
Clint.Woods@doj.ca.gov
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3807
Facsimile: (415) 703-5843

*Attorneys for Plaintiff State of California, by and through Attorney General Rob Bonta*

15 | *Attorneys for Plaintiff Giffords Law Center to Prevent Gun Violence*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, BRYAN MUEHLBERGER, FRANK BLACKWELL, GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE,<br><br>        Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, et al.,<br><br>        Defendants. | CIVIL CASE NO.:  3:20-CV-06761-EMC<br><br>**DECLARATION OF SALVADOR GONZALEZ IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Action Filed:  September 29, 2020<br>Hearing:  January 25, 2024<br>Hon. Edward M. Chen |

1

Decl. of Gonzalez in Support of Plaintiffs' Motion for Summary Judgment
and Opposition to Motion for Summary Judgment  (3:20-cv-06761-EMC)

I, Salvador Gonzalez, declare under penalty of perjury that:

1.    I am over the age of 18 years and competent to make this declaration, which is based on my personal knowledge.

2.    I am a Special Agent Supervisor for the California Department of Justice ("CA DOJ"), Division of Law Enforcement, Bureau of Firearms ("BOF").

3.    My curriculum vitae is attached hereto as **Exhibit A**. It contains a true and correct description of my educational background, professional achievements, and qualifications.

4.    In May 2005, I received a Bachelor of Science degree in Criminal Justice, and a Bachelor of Arts degree in Ethnic Studies, from the California State University, Sacramento.

5.    I have worked as a Special Agent Supervisor with CA DOJ for approximately four years. I started working at CA DOJ approximately nine years ago and approximately eight of my nine years have been at BOF, where I am currently assigned. BOF serves the people of California through education, regulation, and enforcement actions regarding the manufacture, sale, ownership, safety training, and transfer of firearms.

6.    My current job responsibilities at CA DOJ BOF involve the recovery, investigation, and identification of firearms. In addition, over the past nine years, I have handled a wide variety of gun parts including unfinished frames, receivers, and kits. I have also handled thousands of unserialized weapons that were made from unfinished gun parts that are colloquially known as "ghost guns." Over the course of my career, I have become proficient in the use and assembly of various firearms, including the various structural components of firearms, how they work together, and how firearms are made.

7.    As part of my duties with BOF approximately the past four years, I have provided consultation services to BOF programs regarding the legality of firearms and weapons known as Firearms Manufactured By Unlicensed Subject (FMBUS), pursuant to state law. State law requires such weapons, which are either recovered by law enforcement agencies (LEAs) or made by individuals from unserialized firearm precursor parts and other firearm parts, to be assigned a unique state serial number through a serialization application process administered by the BOF. Through my involvement with the unique serial number application (USNA) program and my

2

Decl. of Gonzalez in Support of Plaintiffs' Motion for Summary Judgment
and Opposition to Motion for Summary Judgment   (3:20-cv-06761-EMC)

**SER-214**

1    other duties with BOF, I have become familiar with the components of numerous self-made

2    firearms and firearm precursor parts available commercially.

3          8.    Based on my experience with firearms, education, formal trainings, and work at DOJ,

4    I am knowledgeable about the requirements of California's laws meant to address the

5    proliferation of unserialized ghost guns and firearm precursor parts, such as Assembly Bill 857

6    (Cal. 2016), Assembly Bill 879 (Cal. 2019), and Assembly Bill 1621 (Cal. 2022), among other

7    laws.  During the time I have been providing consultation services to the USNA program, I have

8    also been trained to determine whether a firearm precursor part falls under the current definition

9    of "firearm" under the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)'s various

10    interpretations of the federal Gun Control Act (GCA).

11         9.    As part of my duties at BOF, I assist in providing guidance to other state and local

12    LEAs and licensed firearm industry members as to how federal law interacts with California law.

13    For example, the ATF's Final Rule on the "Definition of 'Frame or Receiver' and Identification

14    of Firearms" (ATF Final Rule) became effective on August 24, 2022. Thereafter, I attended ATF

15    trainings on the ATF Final Rule and subsequently assisted in training BOF and DOJ personnel on

16    the ATF Final Rule's effect on enforcement of California law.

17         10.    Additionally, I assisted in the generation and completion of the January 2022

18    Precursor Part Identification Guidebook, the August 2022 Revised Precursor Part Identification

19    Guidebook (2022 Revised Guidebook), and an informational bulletin about the interaction

20    between AB 1621 and the Final Rule.  The 2022 Revised Guidebook and bulletin were released to

21    the public to inform them of changes in how firearm precursor parts are identified and treated

22    under federal and state law after the ATF Final Rule's issuance and AB 1621's enactment.  A true

23    and correct copy of the 2022 Revised Guidebook is attached hereto as **Exhibit B**.  A true and

24    correct copy of the DOJ informational bulletin is attached hereto as **Exhibit C**.

25         11.    Producing the 2022 Revised Guidebook and bulletins were significant undertakings

26    involving hundreds of hours of work from half a dozen different CA DOJ employees.  Based on

27    my research and analysis of time expended, producing the 2022 Guidebook cost the state

28

<div align="center">3</div>

Decl. of Gonzalez in Support of Plaintiffs' Motion for Summary Judgment
and Opposition to Motion for Summary Judgment   (3:20-cv-06761-EMC)

**SER-215**

1     approximately $19,554.86. A true and correct copy of a spreadsheet reflecting these costs is

2     attached hereto as **Exhibit D**.

3        12.    Thousands of firearms every year are recovered by California state and local LEAs.

4     A recovered firearm is a firearm found, discovered, surrendered, or given to an LEA for any

5     period of time. California law requires all recovered firearms to be recorded in the statewide

6     Automated Firearm System (AFS). California law also requires all recovered firearms without a

7     serial number to be assigned a FMBUS number from BOF. As a result, AFS is able to track

8     ghost guns recovered by California state and local LEAs on a month-to-month basis. A true and

9     correct copy of a spreadsheet from AFS tracking the number of guns and ghost guns recovered by

10     California state and local LEAs is attached hereto as **Exhibit E**.

11        13.    As reflected in the AFS chart, the number of ghost guns recovered by California state

12     and local LEAs has increased dramatically since 2016. For example, in July 2016, LEAs

13     recovered 2,106 guns in Los Angeles County, but only two were ghost guns without serial

14     numbers. By July 2020, that number exploded to 82 ghost guns in Los Angeles County,

15     accounting for nearly 6% of all weapons recovered. July 2021 saw another dramatic increase,

16     with 321 ghost guns recovered in Los Angeles County, accounting for over 9% of all recovered

17     firearms. In 2022 through January 2023, the percentage of ghost guns recovered in Los Angeles

18     County remained high, accounting for approximately 5 to 8% of firearms recovered each month.

19        14.    Other counties saw a similar increase in both the raw numbers of ghost guns

20     recovered and ghost guns as a percentage of overall firearms recovered. For example, Alameda

21     County recovered just four ghost guns in the entire second half of 2016, but recovered 50 ghost

22     guns in October 2021 alone. And while there were only eight ghost guns recovered in San

23     Bernardino County from July to December 2016, by 2022 ghost guns accounted for over 10% of

24     the over 1,000 guns recovered per month in that jurisdiction. Based on my knowledge and

25     experience, the vast majority of these ghost guns were assembled using commercially-available

26     firearm precursor parts known colloquially as "80% frames" or "80% receivers," or other

27     precursor part variants. Moreover, since 2018 approximately 15-20% of the ghost guns recovered

28     statewide were made with AR-style receivers.

<div align="center">4</div>

Decl. of Gonzalez in Support of Plaintiffs' Motion for Summary Judgment
and Opposition to Motion for Summary Judgment (3:20-cv-06761-EMC)

**SER-216**

15.    In addition to the BOF's process of generating and approving FMBUS numbers for ghost guns recovered by LEAs, BOF also provides FMBUS numbers to individuals who create their own firearms and who apply to BOF for a FMBUS number pursuant to state law.  This process requires significant time and BOF resources.  Based on my research, BOF issued 12,391 FMBUS numbers in 2021, 12,890 FMBUS numbers in 2022, and nearly 8,000 FMBUS numbers in 2023 as of October 13, 2023.  Each applicant for a FMBUS number must submit a USNA.  BOF processes the USNA and performs a background check before providing a FMBUS number.  Based on a reasonable estimate of 10 minutes of BOF analyst time per FMBUS number issued, BOF and the DOJ have expended over $203,000 issuing FMBUS numbers over the last three years.  These costs would not have been necessary if the weapons recovered by LEAs or the firearm precursor parts or parts kits acquired by individuals were already serialized pursuant to federal law.  A true and correct copy of a spreadsheet reflecting these numbers is attached hereto as **Exhibit F**.

16.    In addition to the cost of the USNA program, every time a ghost gun is recovered by an LEA, that LEA contacts BOF to determine whether a USNA has been initiated before further processing the firearm.  This process also requires BOF staff time.

17.    As reflected in Exhibit E, between 2018 and 2022, BOF processed between 1,033 and 1,838 USNAs per year.  Based on a reasonable estimate of time of 45 minutes of a BOF analyst's time per USNA processed, BOF and the DOJ have expended over $165,000 processing USNAs since 2018.  These costs would not have been necessary if background checks were required by federal law before the firearm precursor parts or parts kits were acquired.

18.    In addition to the costs to BOF of operating the USNA program, BOF and the DOJ also incurred significant costs to implement AB 1621 statewide.  These costs are reflected in a Budget Change Proposal (BCP) approved by the Legislature in 2023, which allocated $2,762,000 in expenditures from the General Fund during the 2023-24 fiscal year, along with an additional $2,518,000 in 2024-25, and $1,153,000 in 2025-26.  Among other uses for the aforementioned funds, the BCP approved the addition of ten BOF positions to handle such tasks as adding FMBUS numbers to unserialized firearms and precursor parts, and enforcing criminal penalties

5

Decl. of Gonzalez in Support of Plaintiffs' Motion for Summary Judgment and Opposition to Motion for Summary Judgment  (3:20-cv-06761-EMC)

**SER-217**

1    for possession of unserialized firearms.  The approved BCP can be located on the Department of

2    Finance website at https://tinyurl.com/3nz984dc.

3    ///

4         I declare under penalty of perjury under the laws of the State of California that the

5    foregoing is true and correct and that this declaration was executed on October 25th, 2023, in

6    SACRAMENTO              , California.

7

8

9                                    SALVADOR GONZALEZ

10

11   SA2020302190
     Gonzalez Declaration CA v. ATF Final for Signing (002)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

Decl. of Gonzalez in Support of Plaintiffs' Motion for Summary Judgment
and Opposition to Motion for Summary Judgment  (3:20-cv-06761-EMC)

SER-218

1  BRIAN M. BOYNTON
   Principal Deputy Assistant Attorney General
2
3  LESLEY FARBY
   Assistant Branch Director
4
5  DANIEL RIESS (Texas Bar No. 24037359)
   TAISA M. GOODNATURE (New York Bar No. 5859137)
   JEREMY S.B. NEWMAN (Massachusetts Bar No. 688968)
6  Trial Attorneys
7  United States Department of Justice
   Civil Division
8  Federal Programs Branch
   1100 L Street NW
9  Washington, DC 20005
   Telephone: (202) 532-3114
10 FAX: (202) 616-8460
11 jeremy.s.newman@usdoj.gov

12 Attorneys for Federal Defendants

13                 UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15                  SAN FRANCISCO DIVISION

16
   STATE OF CALIFORNIA,                    )  Case No. 3:20-cv-06761-EMC
17                        *et al.*         )
          Plaintiffs,                       )  **DEFENDANTS' NOTICE OF MOTION AND**
18                                          )  **MOTION FOR SUMMARY JUDGMENT;**
      v.                                    )  **[PROPOSED] ORDER**
19 BUREAU OF ALCOHOL, TOBACCO,              )
   FIREARMS, and EXPLOSIVES ("ATF"),       )
20                        *et al.*,        )  Noting Date: January 25, 2024
                                            )  Time:  4:30 p.m.
21        Defendants.                       )  Place:  Courtroom 5, 17th Floor
                                            )
22                                          )
                                            )
23 ─────────────────────────────

24
25
26
27
28

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT          C-20-6761- EMC

1

## NOTICE OF MOTION AND MOTION

2    PLEASE TAKE NOTICE that on January 25, 2024 at 4:30 p.m. or as soon thereafter as the parties

3  may be heard, in the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California,

4  before the Honorable Edward M. Chen, Defendants United States Department of Justice, Merrick Garland,

5  United States Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, and Daniel

6  Hoffman (collectively "Defendants") will move this Court for an order granting summary judgment in

7  Defendants' favor on all claims asserted by Plaintiffs State of California, Bryan Muehlberger, Frank

8  Blackwell, and Giffords Law Center to Prevent Gun Violence ("Plaintiffs") pursuant to Federal Rule of

9  Civil Procedure 56.  Defendants' Motion is based on this notice; the following memorandum of points

10  and authorities; and such oral argument as the Court may permit.

11

12

13  DATED:  October 5, 2023                    Respectfully submitted,

14                                             BRIAN M. BOYNTON
                                               Principal Deputy Assistant Attorney General
15
                                               LESLEY FARBY
16                                             Assistant Branch Director

17
                                     By:       */s/ Jeremy S.B. Newman*
18                                             Jeremy S.B. Newman
19                                             Trial Attorney

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT          C-20-6761- EMC

**SER-220**

1  is a useful method for ATF to provide information to the public and regulated parties about ATF's

2  interpretations of federal firearms laws.  The Court should reject Plaintiffs' argument that the December

3  2022 Open Letter is unlawful because of topics that it does not address.

4  **C. The Rule and Letters Are Reasonable.**

5  Plaintiffs' arbitrary-and-capricious claims fare no better.  The APA's "arbitrary [or] capricious

6  . . . standard of review is highly deferential, presuming the agency action to be valid and affirming the

7  agency action if a reasonable basis exists for its decision." *Ranchers Cattlemen Action Legal Fund v.*

8  *USDA*, 499 F.3d 1108, 1115 (9th Cir. 2007) (citation omitted).  Plaintiffs bear a "heavy burden" in seeking

9  to rebut the presumption that the agency action is valid.  *Managed Pharmacy Care v. Sebelius*, 716 F.3d

10  1235, 1244 (9th Cir. 2013).  And where, as here, the agency decision involves "a high level of technical

11  expertise," a court must be particularly deferential.  *Sierra Club v. EPA*, 346 F.3d 955, 961 (9th Cir. 2003);

12  *see Sig Sauer, Inc. v. Jones*, 133 F. Supp. 3d 364, 371 (D.N.H. 2015) (explaining that examination of

13  firearms parts and comparison with other items on the market "require[s] expertise that is well within

14  ATF's grasp . . . [and] entitled to substantial deference").

15  Plaintiffs make two allegations in support of their arbitrary-and-capricious claim.  First, Plaintiffs

16  allege that the Rule and Letters are arbitrary because (Plaintiffs claim) they consider partially complete

17  frames and receivers to be regulable "frames" and "receivers" only if they are sold in kits or alongside

18  jigs, templates, or similar equipment.  Second, Plaintiffs contend that the Rule and Letters fail to consider

19  whether they could have reached more conduct than they did.  Neither allegation has merit.

20  **1. Plaintiffs Err in Contending that the Rule and Letters Only Regulate Partially
21  Complete Frames and Receivers Sold in Kits or Alongside Supplementary
      Materials.**

22  Plaintiffs allege in their Complaint that the Rule and Letters are arbitrary and capricious because

23  the Rule "arbitrarily deems as firearms only those 80 percent[14] receivers and frames sold in kits or

24  alongside jigs, templates, or similar aids leaving 80 percent receivers and frames sold separately wholly

25  unregulated." Suppl. Am. Compl. ¶ 180; *see also id*. ¶¶ 181 (alleging that the Rule "fail[s] to consider

26  that 80 percent receivers and frames may be easily and legally purchased separate from an assembly kit"),

27

28  [14] As noted above, although Plaintiffs refer to "80 percent" frames and receivers throughout their Complaint, neither the *GCA* nor the Rule use this term with respect to frames and receivers.  87 Fed. Reg. at 24,663 n.47; ATF Open Letter to All FFLs, September 2022 Open Letter at 3.

1   *York v. Dep't of Justice*, 951 F.3d 84, 122 (2d Cir. 2020) ("While agency action may be overturned if the

2   agency 'entirely failed to consider an important aspect of the problem' at issue . . . a court will not 'lightly'

3   reach that conclusion[.]") (citations omitted).

4         In promulgating the Rule, ATF did consider that partially complete frames and receivers may be

5   purchased separately from an assembly kit or from templates, jigs, and other similar equipment.  The Rule

6   makes clear that sellers or distributors may not undermine the Rule's requirements "by working with

7   others or structuring transactions to avoid the appearance that they are not commercially manufacturing

8   and distributing firearms." 87 Fed. Reg. at 24,713.[17]  Sellers thus may not make an end run around the

9   Rule's requirements by structuring sales transactions, for example, by shipping a partially complete

10  receiver to a buyer in one transaction and then shipping the jigs, tools, or written materials allowing the

11  partially complete receiver to be readily converted into a functional receiver in a separate package or at a

12  different time.  Nor may sellers conspire with other sellers to evade the Rule's requirements by agreeing

13  that they will separately sell to a buyer a partially complete frame and tools allowing for its ready

14  conversion into a functional frame.  *See id*. at 24,713 n.138 (citing Ninth Circuit decision affirming

15  convictions for conspiracy, and aiding and abetting, possession of unregistered machineguns based on

16  such agreement between different sellers).  ATF thus did consider that partially complete frames and

17  receivers may be sold separately from kits, jigs, or similar items, but decided to address this problem

18  through well-established criminal law: conspiracy, aiding and abetting, and structuring of transactions.

19  The Rule thus takes account of kits, jigs, and similar items if a seller structures transactions by selling a

20  partially complete frame or receiver separately to the buyer from such items, or if a seller arranges with

21  other sellers to provide both the partially complete frame or receiver and such items to a buyer in separate

22  transactions.

23        ATF decided to draw this line where it did based on its expertise in enforcing federal firearm laws,

24  including an analysis of factors such as the difficulty of enforcing a broader scope of regulated behavior

25

26      [17] Although this discussion occurred in response to a comment regarding weapon parts kits rather
than partially complete frames or receivers, these same strictures apply equally to the sale of partially

27  complete frames and receivers and associated items such as jigs, tools, and written instructions. *See Public
Safety Advisory to All Federal Firearms Licensees, and Firearm Parts, Components, and Accessories*

28  *Manufacturers and Distributors*, https://www.atf.gov/firearms/docs/guide/public-safety-advisory-all-
federal-firearms-licensees-and-firearm-parts/download (March 21, 2023).

DATED: October 5, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

*/s/ Jeremy S.B. Newman*
DANIEL RIESS
TAISA M. GOODNATURE
JEREMY S.B. NEWMAN
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: (202) 532-3114
FAX: (202) 616-8460
jeremy.s.newman@usdoj.gov

*Attorneys for Defendants*



www.atf.gov

# FINAL RULE 2021R-05F

# Definition of "Frame or Receiver" and Identification of Firearms



**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives



ATF Supp 000102

**SER-224**

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 103 of 357

**ATF** PROTECTING THE PUBLIC SERVING OUR NATION

# REASONS FOR CHANGE

➢ The Department of Justice ("Department") amended the Federal regulations to:

- Remove and replace regulatory definitions of "firearm frame or receiver" and "frame or receiver" because the current regulations fail to capture the full meaning of those terms.

- Clarify the meaning of "firearm" and "gunsmith."

- Provide definitions of terms such as "complete weapon," "complete muffler or silencer device," "multi-piece frame or receiver," "privately made firearm," and "readily" for purposes of clarity given advancements in firearms technology.

➢ The Department also amended ATF's regulations on marking and recordkeeping that are necessary to implement these definitions.



ATF Supp 000103

2

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 104 of 357

# Effect Date of Final Rule

➢ The final rule was signed by the Attorney General on April 11, 2022.

➢ Published in the Federal Register on April 26, 2022.

➢ The Final Rule is effective on August 24, 2022, 120 days from the date it was published in the Federal Register.





ATF Supp 000104

3

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 105 of 357

# Goals of this rulemaking are to address and balance...





Adverse Court
Cases - Update
Definition

Sufficient
Legal
Authority

Technology/
Terminology

Allow
Tracing/
Inspections

Reduce
Unserialized
"Ghost Guns"

Minimize
Disruption and
Cost to
Industry





ATF Supp 000105

4

**SER-227**

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 106 of 357

# Topics of Discussion

➢ Definition of Firearm, Frame and Receiver

➢ Privately Made Firearms (PMFs)

➢ Marking requirements

➢ Recordkeeping requirements

➢ Record retention

➢ ATF Rulings/Procedure affected

❖ These are the broad topics, but they are all interrelated. Change to one requirement requires changes to others.





ATF Supp 000106

5

**ATF**   Protecting the Public · Serving Our Nation

# Defining Frame or Receiver - Background

➢ The predecessor to the Gun Control Act (GCA) – the Federal Firearms Act – regulated "any part or parts" of a "firearm." While debating the GCA, Congress recognized that it was "impractical to have controls over each small part of a firearm" and therefore substituted "frame or receiver" for the words "any part or parts." Since shortly after passage of the GCA in 1968, the term "firearm frame or receiver" has been defined by regulation.

➢ On December 14, 1968, the Department of the Treasury published final regulations that defined "firearm frame or receiver" as "that part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." This definition has remained unchanged until now.

- This definition described a housing for three fire control components: **hammer**, **bolt or breechblock**, <u>and</u> **firing mechanism**. However--

  - Numerous firearms do not utilize a hammer.

  - Vast majority of firearms commonly used today—including the AR-15 and variants—do not have a single housing for all those components. See Figure 1 (next slide).

- The original definition of "firearm frame or receiver" lacked analysis as to the stage at which an item is regulated as a frame or receiver.

  - Technology and manufacturing processes complicated the analysis. Further, as ATF stated in the final rule, Federal courts have applied ATF's definition of "frame or receiver" in a way that would leave most firearms currently in circulation in the United States without an identifiable frame or receiver.



ATF Supp 000107

6

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 108 of 357

# Figure 1



Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 109 of 357

# Definition of Frame and Receiver

➢ The final rule includes an additional section—27 CFR 478.12—

- Defines "frame" and "receiver" to address issues of interest to the public and the firearms industry.

- This definition is incorporated in, and applies to 27 CFR Part 447 and Part 479, as well.

- The definition provides greater detail and analysis, better accounts for diverse and modern firearm designs, provides greater detail on when an item becomes regulated as a frame or receiver, and addresses those firearms with frame or receivers that are further broken down to constituent parts.

- The final rule also defines which part of a firearm silencer is the "frame or receiver."

➢ The term "**frame**" now means the part of a handgun or "variants" (also a defined term) using a handgun design, that provides housing or a structure for the sear or equivalent—that part that holds back the hammer, striker, bolt, or similar component prior to firing.

➢ The term "**receiver**" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants, that provides housing or a structure for the bolt, breechblock or other primary component designed to block or seal the breech prior to firing.

➢ The term "**variant**" means a weapon utilizing a similar frame or receiver design irrespective of new or different model designations or configurations, characteristics, features, components, accessories, or attachments.



ATF Supp 000109

8

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 110 of 357

**ATF** PROTECTING THE PUBLIC
SERVING OUR NATION

# Definition of Frame and Receiver

➢   The final rule, 27 CFR 478.12(a)(4), includes analysis and pictures of the frame or receiver of specific firearms and variants to better guide the public and the firearms industry.

  •   Includes revolvers, pistols, including those using chassis systems (serialization visible or "conspicuous" when placed in grip), bolt action rifles, various shotgun designs, AK variants, Steyr AUG variants, Thompson submachineguns, HK variants, FN-FAL, and Stens.

  •   These are some examples:



ATF Supp 000110

9

**ATF** PROTECTING THE PUBLIC
SERVING OUR NATION

# Definition of Frame and Receiver

➢ In addition, the final rule addresses "partially complete, disassembled, or nonfunctional frames or receivers" and provides standards that the industry and the public can apply to better determine whether the component has reached the stage of manufacture to be regulated as a "frame or receiver."

   • The rule makes clear that the "frame" or "receiver" includes a partially complete frame or receiver, including a parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, *i.e.*, to house or hold the appliable fire control component.

➢ It is important to note that in classifying any frame or receiver, "the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."

   • This change makes clear that many of the products currently marketed and sold as unregulated "80% kits" contain a "frame or receiver" that is regulated by Federal law.



ATF Supp 000111

10

ATF · PROTECTING THE PUBLIC SERVING OUR NATION

# Definition of Frame and Receiver

- *Example 1— Frame or receiver:* A **frame or receiver parts kit** containing a partially complete or disassembled billet or blank of a frame or receiver that is sold, distributed, or possessed with a compatible jig or template is a frame or receiver, as a person with online instructions and common hand tools may readily complete or assemble the frame or receiver parts to function as a frame or receiver.



ATF Supp 000112

11

# Definition of Firearm

➢ The rule clarifies that the definition of "firearm" includes a **weapon parts kit** that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive.



➢ The term "firearm" does not include a weapon, including a weapon parts kit, in which the frame or receiver of such weapon is "destroyed" as described in the definition "frame or receiver."





ATF Supp 000113

12

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 114 of 357

**ATF** PROTECTING THE PUBLIC SERVING OUR NATION

# Definition of Firearm, Frame and Receiver

- The rule makes clear that the terms **shall not** include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material).







ATF Supp 000114

13

## Definition of Firearm, Frame and Receiver

*Example 2— Not a receiver:* A billet or blank of an AR-15 variant receiver without critical interior areas having been indexed, machined, or formed that is not sold, distributed, or possessed with instructions, jigs, templates, equipment, or tools such that it may readily be completed is not a receiver.





ATF Supp 000115

14

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 116 of 357

# Definition of Firearm, Frame and Receiver

➤ Finally, the rule provides that prior determinations that a partially complete, disassembled, or nonfunctional frame or receiver, including parts kits, was not, or did not include, a frame or receiver prior to April 26, 2022, the publication of rule are not valid or authoritative.

➤ With these changes, it is important to understand those things that are **unchanged** by the rule.

- Specifically, that "part" of a firearm classified as the "frame" or "receiver" prior to publication of the final rule shall continue to be classified as the "frame" or "receiver" under Federal law.

- For example, pursuant to 27 CFR 478.12(a)(2), the "receiver" of an AR-15/M-16 variant firearms would be the upper assembly as it provides housing for the bolt.

  o However, the final rule makes clear that "[t]he receiver is the lower part of the weapon that provides housing for the trigger mechanism and hammer (i.e., lower receiver). Figure 3.

➤ The rule also identifies the frame or receiver of the Ruger Mark IV pistol (upper assembly) and the Benelli 121 M1 Shotgun (lower assembly) as other examples.



ATF Supp 000116

15

Case 3:20-cv-06761-EMC　Document 179-1　Filed 09/28/23　Page 117 of 357

# AR Receiver Unchanged by the Final Rule





ATF Supp 000117

16

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 118 of 357

# Other Frames or Receivers of Firearms Unchanged by the Final Rule



Ruger Mark IV

Frame

Benelli 121

Receiver

ATF Supp 000118

17

**SER-240**

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 119 of 357

**ATF** PROTECTING THE PUBLIC
SERVING OUR NATION

# Other Frames or Receivers of Firearms Unchanged by the Final Rule

➢ The final rule states that, consistent with ATF's long-standing classifications and ATF Ruling 2010-3, the right-side plate of "box-type" receivers will continue to be the "receiver" of the firearm.

- Specifically, the receiver "is the side plate of the weapon that is designed to hold the charging handle."

    o This includes the Vickers/Maxim, Browning 1919, M2, and box-type machineguns and semiautomatic variants.





ATF Supp 000119

18

**SER-241**

# Privately Made Firearms (PMF)





ATF Supp 000120

19



# PMF

## Definition of a Privately Made Firearm:

➢ The final rule amends 27 CFR Parts 447.11 and 478.11 to define a firearm made by a nonlicensee as a "Privately Made Firearm" ("PMF").

    • A PMF is defined as "[a] firearm, including a frame or receiver, completed, assembled, or otherwise produced by a person other than a licensed manufacturer, and without a serial number placed by a licensed manufacturer at the time the firearm was produced.  The term shall not include a firearm identified and registered in the National Firearms Registration and Transfer Record pursuant to chapter 53, title 26, United States Code, or any firearm manufactured or made before October 22, 1968 (unless remanufactured after that date)."

➢ The final rule amends the regulations to require all FFLs to identify (mark) any PMF they take into their inventory. This requirement will allow licensees to comply with GCA recordkeeping requirements when accepting PMFs and allow ATF to trace those firearms through licensees' records if involved in a crime.



ATF Supp 000121

20

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 122 of 357

# PMF

## The final rule:

➢ **Does not** prohibit an individual from making their own PMF.

➢ **Does not** mandate unlicensed persons mark their own PMF.

➢ **Does not** require an FFL to accept unmarked PMFs into their inventory.

➢ **Does not** apply to firearms marked and registered pursuant to the NFA, 26 U.S.C. 5842 and 27 CFR 479.102, upon approval of an ATF Form 1 .

➢ **Does not** apply to firearms manufactured or made before the effective date of the Gun Control Act of 1968, October 22, 1968, unless remanufactured after that date.





ATF Supp 000122

21



# PMF

## Definition of a Gunsmith:

➤ To ensure greater access to professional marking services for PMFs, the final rule amends the definition of the term "engaged in the business" pertaining to a "gunsmith" to include persons who engage in the business of marking PMFs.

➤ Specifically, the final rule amends 27 CFR 478.11:

> *(d) **Gunsmith.** A person who, as a service performed on existing firearms not for sale or distribution, devotes time, attention, and labor to repairing or customizing firearms, making or fitting special barrels, stocks, or trigger mechanisms to firearms, **or placing marks of identification on privately made firearms in accordance with this part**, as a regular course of trade or business with the principal objective of livelihood and profit, but such term shall not include a person who occasionally repairs or customizes firearms (including identification), or occasionally makes or fits special barrels, stocks, or trigger mechanisms to firearms. In the case of firearms for purposes of sale or distribution, such term shall include a person who performs repairs (e.g., by replacing worn or broken parts) on complete weapons, **or places marks of identification on privately made firearms**, but shall not include a person who manufactures firearms (i.e., frames or receivers or complete weapons) by completion, assembly, or applying coatings, or otherwise making them suitable for use, requiring a license as a manufacturer;*

ATF Supp 000123

22



# PMF

### Required Markings on PMFs:

➤ Licensees who take a PMF into inventory are required to mark it with an individual serial number that begins with the licensee's abbreviated Federal firearms license number, which is the first three and last five digits, as a prefix to a unique identification number, followed by a hyphen, e.g., "12345678-[unique identification number]" in accordance with 478.92(a)(2). The markings must be completed no later than **seven days** upon receipt, **or before the date of disposition**, whichever is sooner.

➤ *Per amended regulation, 27 CFR 478.92(a)(2), an acceptable method of identifying a PMF is by placing the serial number on a metal plate that is permanently embedded into a polymer frame or receiver, or other method approved by the Director.*

▪ ATF has long held that placing a serial number directly on the polymer does not meet the specified requirement of 27 CFR 478.92 since marking in this manner would make the serial number "susceptible [to] being readily obliterated, altered or removed."

➤ Notably, licensees are <u>not</u> required to mark PMFs received for same day <u>adjustment</u> or <u>repair</u> and returned to the person from whom it was received.



ATF Supp 000124

23

# PMF

**ATF** PROTECTING THE PUBLIC / SERVING OUR NATION

### Serialized PMF Markings:

➢ Where the PMF is already marked by a nonlicensee with a unique identification number that otherwise meets the marking standards in 478.92, FFLs may establish a PMF serial number by placing their abbreviated license number (first three and last five digits) as a prefix to the number, followed by a hyphen, e.g., "**12345678-[unique identification number**]."

➢ The final rule amends 27 CFR 478.92(a)(4)(iii)(D) to allow for such adoption of a PMF serial number.

➢ The resulting serial number must be unique and therefore may not duplicate any number that the FFL has previously placed on a firearm.

➢ FFLs **must** be aware of the serial numbers they have used/marked.





ATF Supp 000125

24

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 126 of 357

## PMF

### PMF Marking Timeframe:

➤ PMFs in an FFL's existing inventory must be marked within 60 days of the effective date of the Final Rule, *i.e.*, by October 23, 2022.

  • Until this date, FFLs may mark the PMFs themselves, if capable, or contract out marking services to a gunsmith for them to serialize PMFs.

  • After this date, FFLs may contract out marking services of PMFs to a gunsmith (licensed or unlicensed) but <u>only</u> if the gunsmith is performing such engraving services under the direct supervision of the requesting FFL.

➤ Any such PMF transferred within 60 days from the effective date must be properly marked before the PMF may be transferred.

➤ FFLs who acquire PMFs after the effective date are required to mark PMFs within seven (7) days of receipt (or before date of disposition, whichever is sooner) 27 CFR 479.92(a)(2).



ATF Supp 000126

25

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 127 of 357



# PMF

## Other Persons Marking PMFs for FFL:

➤ FFLs that do not have the capability to mark a PMF may take PMFs they receive to another FFL, or to a nonlicensee, to have those PMFs marked under their direct supervision, in accordance with 27 CFR 478.92(a)(2).

➤ An FFL who marks an unmarked PMF for the original FFL who received the PMF **shall not** log the firearm into its records, if the firearm is marked on-the-spot under the direct supervision of the original licensee recording the acquisition of the firearm. The marking licensee shall mark the firearm with the original licensee's license number in accordance with 478.92(a)(2).

➤ A nonlicensee may mark a PMF for the original FFL who received the PMF provided it is marked on-the-spot, under the direct supervision of the original licensee, and with the original licensee's FFL number.

➤ An individual who devotes time attention and labor to placing marks of identification on privately made firearms as a regular course of trade or business with the principal objective of livelihood and profit must be licensed as a dealer-gunsmith.

➤ In no case may the original licensee dispose of an unmarked PMF until the firearm is properly marked and the serial number is recorded in the original licensee's records.





ATF Supp 000127

26



# PMF

## Recordkeeping and Marking Exception:

### A&D Records:

➢ As with all firearms, except in cases where a PMF is received by a FFL for <u>adjustment</u> or <u>repair</u> and returned to the person from whom received on the same day, licensees must record the acquisition of a PMF by the close of the next business day following receipt of the firearm.

➢ If a PMF is unmarked upon receipt by a licensee, the licensee may leave the serial number portion of the A&D record blank until the PMF is properly marked. However, the PMF must be marked within seven (7) days of receipt (or prior to disposition, whichever comes first) and once marked, the A&D record must be updated.

➢ The final rule amends A&D recordkeeping requirements to require licensees to record "privately made firearm" or "PMF" in the absence of a manufacturer's name in the "Description of firearm" section (formerly licensed manufacturer and/or licensed importer name).



ATF Supp 000128

27

# PMF

## ATF Form 4473:

➢ The final rule amends 27 CFR 478.124 in part to require licensees to record **"privately made firearm"** or **"PMF"** on the ATF Form 4473 for over-the-counter transactions and, pursuant to 18 U.S.C. 922(c), for other than over-the counter transactions.

➢ Specifically, the licensee shall identify the firearm to be transferred by listing on the Forms 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm to be transferred. **Where no manufacturer name has been identified on a privately made firearm, the words "privately made firearm" (or abbreviation "PMF") shall be recorded as the name of the manufacturer.**





ATF Supp 000129

28

# Marking Requirements





ATF Supp 000130

29

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 131 of 357



# Marking Requirements

## Impact on Manufacturers and Importers:

➢ Revised marking requirements under the final rule are intended to increase the success rate in the tracing of firearms used in criminal activities through licensees' records.

➢ Licensed manufacturers and importers are required by Federal law and the regulations to identify each firearm they manufacture or import by placing a serial number on the frame or receiver.

• Prior to the final rule, in addition to the serial number, additional markings (i.e., model – if designated, caliber or gauge, name as manufacturer or importer, city and State and the name and country of the foreign manufacturer when applicable) were required to be placed on either the frame, receiver, or the barrel.





ATF Supp 000131

30

**ATF** · PROTECTING THE PUBLIC · SERVING OUR NATION

# Marking Requirements

➢ Under the final rule, licensed manufacturers and importers are required to identify each firearm manufactured or imported by placement of the serial number, name of licensee, and city and State of their place of business <u>on the frame or receiver</u> in accordance with the regulations. **These markings may no longer be placed on the barrel or pistol slide (if applicable).**

➢ The model, caliber or gauge, foreign manufacturer, and country of manufacture may be placed on the frame or receiver, or barrel, or pistol slide.

➢ Additionally, this revised guidance provides two options for marking the serial number, name, and place of business on the frame or receiver.

➢ Specifically, a frame or receiver must have an individual serial number **<u>and</u>** one of the following:

1. Name of FFL (or recognized abbreviation) and City & State (or recognized abbreviations) where the FFL maintains their business **OR**

2. Name of FFL (or recognized abbreviation), and abbreviated FFL number (first three and last five digits with no dashes) as a serial number prefix, followed by a hyphen, then the assigned unique identification number (as stated in the amended regulation, 27 CFR 478.92(a)(1)(i)).

➢ Please note that the serial number and any abbreviated license number (Option 2) must be marked in a print size no smaller than 1/16 inch (as stated in the amended regulation 27 CFR 478.92(a)(v)).



ATF Supp 000132

31

**ATF** PROTECTING THE PUBLIC
SERVING OUR NATION

# Marking Requirements

**Marking Requirements for Multi-Piece Frames and Receivers:**

➤ The final rule defines "multi-piece frame or receiver" at 27 C.F.R. 478.12 —-

*The term "multi-piece frame or receiver" shall mean a frame or receiver that may be disassembled into multiple modular subparts, i.e., standardized units that may be replaced or exchanged...*

*...The term shall not include the internal frame of a pistol that is a complete removable chassis that provides housing for the energized component, unless the chassis itself may be disassembled...*

*...The modular subpart(s) identified in accordance with § 478.92 with an importer's or manufacturer's serial number shall be presumed, absent an official determination by the Director or other reliable evidence to the contrary, to be part of the frame or receiver of a weapon or device...*

➤ For multi-piece frames or receivers, the requirements regarding individual serial numbers may vary.

➤ For a multi-piece frame or receiver that has more than one outermost component, all similar parts that are required to be marked must be marked with the same serial number if sold together as a complete modular frame or receiver.

➤ However, the final rule requires each outermost modular subpart of a frame or receiver be marked with a unique serial number when the modular subparts are disposed of separately (27 C.F.R. 478.92(a)(iv)).



ATF Supp 000133

32

**ATF** PROTECTING THE PUBLIC
SERVING OUR NATION

# Marking Requirements

➢ Multi-piece frames or receivers are to be identified and marked as follows:

1. The outermost housing or structure designed to house, hold, or contain the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be, is the subpart of a multi-piece frame or receiver that must be marked with the identifying information;

2. If more than one modular subpart is similarly designed to house, hold, or contain such primary component (e.g., left and right halves), each of those subparts must be identified with the same serial number not duplicated on any other frame or receiver; and

3. A marked modular sub-part of a multi-piece frame or receiver must be presumed, absent an official determination by the Director or other reliable evidence to the contrary, to be a part of the frame or receiver of a weapon.



ATF Supp 000134

33

# Marking Requirements

Typical AR-15 Receiver (top view)



"Modular" AR-15 (top view)



Left Side

Right Side

ATF Supp 000135

34

**SER-257**

**ATF** PROTECTING THE PUBLIC SERVING OUR NATION

# Marking Requirements

➤ Once a modular subpart of a multi-piece frame or receiver has been marked and then aggregated (assembled or unassembled) with the other frame or receiver subparts, the marked part cannot be removed and replaced unless:

1. The subpart replacement is not a firearm under 26 U.S.C. 5845;

2. The subpart replacement is identified by the licensed manufacturer of the original subpart with the same serial number in the manner prescribed by this section; and

3. The original subpart is destroyed under the firearm licensee's control or direct supervision prior to such placement.

❖ This is because removing and replacing the identified component of a multi-piece frame or receiver would place the possessor in violation of 18 U.S.C. 922(k) and 27 CFR 478.34 (and if an NFA firearm, 26 U.S.C. 5861(g) and (h)), which prohibit the possession of any firearm with the manufacturers or importer's serial number removed.

➤ If a modular subpart of a multi-piece frame or receiver is sold separately, the rule requires that it be identified with an individual serial number. This is to ensure that the frame or receiver of the resulting weapon has traceable marks of identification.



ATF Supp 000136

35

**ATF** PROTECTING THE PUBLIC
SERVING OUR NATION

# Marking Requirements

## Marking Muffler or Silencer parts, and transfers for further manufacturing or repair:

➢ Under the final rule, manufacturers and makers of complete muffler or silencer devices only need to mark the part of the device that is designated the frame or receiver.

➢ The final rule defines firearm muffler or silencer frame or receiver at 27 C.F.R. 478.12(b) –

*The terms "frame" and "receiver" shall mean, in the case of a firearm muffler or firearm silencer, the part of the firearm, such as an outer tube or modular piece, that provides housing or a structure for the primary internal component designed to reduce the sound of a projectile (i.e., baffles, baffling material, expansion chamber, or equivalent)…*

*…In the case of a modular firearm muffler or firearm silencer device with more than one such part, the terms shall mean the principal housing attached to the weapon that expels a projectile, even if an adapter or other attachments are required to connect the part to the weapon…*

*…The terms shall not include a removable end cap of an outer tube or modular piece.*



ATF Supp 000137

36

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 138 of 357

# Marking Requirements



*Attach to weapon*

*"...principal housing attached to the weapon that expels a projectile..."*

ATF Supp 000138

37

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 139 of 357

# Marking Requirements

## Marking Muffler or Silencer parts and transfers for further manufacturing or repair cont'd:

➢ The end cap of a silencer cannot be a "frame" or "receiver." In most cases, the "frame" or "receiver" would be the outer tube, or the principal housing attached to the weapon. In the case of a multi-piece frame or receiver, if there are two or more similar subparts that make up a multi-piece frame or receiver then those subparts would be marked with the same serial number.

➢ Minor components of silencers would not need to be engraved or registered when transferred between Special Occupational Taxpayers (SOTs).

➢ A subpart of a firearm muffler or silencer that is not a component part of a complete weapon at the time sold must be identified by an individual serial number.

   • Therefore, any firearm muffler or silencer part transferred separately to an individual that is not a SOT **MUST** be marked and registered and transferred in accordance with the National Firearms Act.



ATF Supp 000139

38

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 140 of 357

# Marking Requirements

## Marking Muffler or Silencer parts and transfers for further manufacturing or repair cont'd:

➢ There should be very few circumstances in which there is more than one unique serial number placed on a weapon (e.g., remanufactured or imported firearm where the manufacturer or importer chooses to mark their own serial number rather than adopting an existing serial number).

➢ The definition of "transfer" in Part 479 now excludes temporary conveyances solely for repair, identification, evaluation, research, testing, or calibration and return to the same lawful possessor.

➢ With respect to parts defined as firearm mufflers or silencers, which are difficult to mark and record, the final rule allows them to be transferred between qualified licensees (SOT) for purposes of further manufacture or repair of complete devices without immediately marking and registering them in the National Firearms Registration and Transfer Record ("NFRTR").



ATF Supp 000140

39

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 141 of 357

# Marking Requirements

**Time limits for marking firearms (GCA vs NFA):**

➢ GCA firearms must be marked within seven (7) days after completion of the manufacturing process, or prior to disposition, whichever comes first.

➢ NFA firearms must be marked by close of the next business day after completion of the manufacturing process, or prior to disposition, whichever comes first.





ATF Supp 000141

40

# Marking Requirements

**Marking Exceptions:**

➢ Under the final rule, licensees are allowed to adopt and not required to mark the serial number or other identifying markings previously placed on a firearm under the following conditions:

1. When a firearm that has not been sold, shipped, or otherwise disposed of to a person other than a licensee and the serial number is not duplicated (i.e., newly manufactured firearms).

2. When a licensee remanufactures or imports a firearm that was sold, shipped, or disposed of to a nonlicensee when the licensee identifies the firearm with their name and city and state; or their name, "FFL", and abbreviated Federal firearms license number (i.e., **FFL12345678).**

3. When a manufacturer performs a service as a gunsmith (as defined in section 27 CFR 478.11) on an existing firearm that is for a non-licensee and not for sale or distribution.





ATF Supp 000142

41

# Marking Requirements

**Marking Grandfathering Provisions:**

➢ The final rule allows manufacturers and importers to mark firearms (other than a PMF) of the same design in the same manner as before the effective date of the final rule (August 24, 2022).

➢ Almost all firearms, except as described below, that ATF classified prior to issuance of the final rule are grandfathered and may continue to be marked in the same manner as before the effective date of the final rule.

  • ATF classifications of partially complete, disassembled, or nonfunctional frames or receivers that determined the parts kit, was not, or did not include a "frame or receiver" are no longer valid or authoritative after the date of publication of the final rule.

    ○ ATF may not have been provided with a full and complete parts kit containing those items along with any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that were made available to the purchaser or recipient of the item or kit.

    ○ As explained in the final rule, these items and materials are necessary for ATF and others to make a proper firearm classification under the GCA and NFA (if applicable). Thus, these items must be marked in accordance with the revised requirements.



ATF Supp 000143

42

# Recordkeeping Requirements

➢ **Gun Control Act (GCA)**

- • 27 CFR 478.122

- • 27 CFR 478.123

- • 27 CFR 478.125(e)

- • 27 CFR 478.125(i)

➢ **National Firearms Act (NFA)**

- • 27 CFR 479.103





ATF Supp 000144

43

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 145 of 357

# Recordkeeping Requirements

➢ The final rule requires all licensed manufacturers and importers to consolidate their records of manufacture, importation, acquisition, and disposition of firearms.

➢ The final rule requires **ALL** licensees to eliminate duplicate recordkeeping entries.

- In the event the licensee records a duplicate entry with the same firearm and acquisition information, whether to close out an old record book or for any other reason, the licensee shall record a reference to the date and location of the subsequent entry (e.g., date of entry, book name/number, page number, and line number) as the disposition.

➢ The final rule clarifies that licensed dealers (including gunsmiths), manufacturers, and importers may conduct same day on the spot adjustments or repairs to firearms without recording them as acquisitions or dispositions, provided they are returned to the person from whom they were received on the same day.



ATF Supp 000145

44

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 146 of 357

**ATF** PROTECTING THE PUBLIC / SERVING OUR NATION

# Recordkeeping Requirements

### Recording information into the A&D record:

➢ Manufacturers **MUST** record the acquisition of GCA firearms manufactured or otherwise acquired within seven (7) days, or prior to disposition, whichever is sooner.

➢ If there is more than one manufacturer or importer, country of manufacture, or serial number marked on a firearm--

  • Licensees **MUST** record all firearms markings in the A&D record.

➢ Any FFL number either as a prefix, or if remanufactured or imported, separated by a semicolon, placed on a firearm, must be included in the serial number recorded in the A&D record.

➢ All firearms acquired by an FFL, <u>except for same day adjustments or repairs returned to the same person,</u> must be recorded as an "acquisition," in the A&D record.



ATF Supp 000146

45

# Recordkeeping Requirements

## NFA Requirements:

➢ Manufacturers **MUST** record <u>NFA</u> firearms in the A&D Record by close of the next business day unless there is a sufficient commercial record of acquisition, in which case the grace period to record would be extended until the seventh day.

➢ Manufacturers may delay submission of an ATF Form 2, *Notice of Firearms Manufactured or Imported*, if firearm muffler or silencers parts are transferred between qualified licensees for further manufacture or to complete devices that are registered upon completion of the device, or to repair existing, registered devices.

   • FFL/SOT manufacturers may transfer a part defined as a firearm muffler or firearm silencer to another qualified FFL/SOT manufacturer without immediately identifying or registering such part, provided that it is for further manufacture (i.e., machining, coating, etc.) or manufacturing a complete muffler or silencer device. Once the device with such part is completed, the manufacturer who completes the device shall identify, record, and register it in the manner and within the period specified in this part for a complete muffler or silencer device.

   • FFL/SOT manufacturers may transfer a replacement part defined as a firearm muffler or firearm silencer other than a frame or receiver to another FFL/SOT manufacturer or dealer without identifying or registering such part, provided that it is for repairing a complete muffler or silencer device that was previously identified, recorded, and registered in accordance with this part and part 479.



ATF Supp 000147

46

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 148 of 357

# Record Retention

➢ The final rule requires that **ALL** licensees **MUST** retain **ALL** required records (A&D Records and ATF Forms 4473) until the business or licensed activity is discontinued. <u>A&D records must be kept either on paper or in an electronic alternate method approved by the Director</u>, at the licensed business premises readily accessible for inspection.

➢ The final rule made changes to § 478.50(a) to make clear that a warehouse may be used for the storage of **paper records over 20 years of age**.

  • The warehouse may not be used to conduct other business activities, which would require a separate license and fee.

  • Any warehouse utilized for the storage of required paper records more than 20 years old is subject to inspection.

➢ Licensees should not send records to the National Tracing Center until discontinuance of business.



ATF Supp 000148

47

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 149 of 357



# Rulings and Procedure Affected

➢ ATF publishes formal rulings and procedures to promote uniform understanding and application of the laws and regulations it administers, and to provide uniform methods for performing operations in compliance with the requirements of the law and regulations.

➢ ATF Rulings represent ATF's guidance as to the application of the law and regulations to the entire state of facts involved and apply retroactively unless otherwise indicated.





ATF Supp 000149

48

Case 3:20-cv-06761-EMC    Document 179-1    Filed 09/28/23    Page 150 of 357

# Rulings Superseded

## FFL Requirements (Type 01-Gunsmith v. Type 07-Manufacturer):

➢ ATF Ruling 2009-1 (Firearms Manufacturing Activities—Camouflaging or Engraving Firearms)

- Ruling 2009-1 stated that any person who engages in the business of camouflaging or engraving firearms must be licensed as a dealer but does not need a license as a manufacturer regardless of the purpose for which the activity was performed.

➢ ATF Ruling 2010-10 (Manufacturing Operations May be Performed by Licensed Gunsmiths Under Certain Conditions)

- Ruling 2010-10 stated that a Type 01-Gunsmith that performs activities on behalf of licensed manufacturers or importers need not obtain a Type 07-Manufacturer license under certain conditions.

➢ The regulations provide a definition of "gunsmith" which differentiates gunsmithing and manufacturing based on the purpose for which the activity is being performed. 27 CFR 478.11. **The final purpose (i.e., for purposes of sale or distribution) of the activities being performed determine whether a Type 01-Gunsmith License or a Type 07-Manufacturer License is required.**

➢ These rulings are superseded by the final rule to the extent that those processes are performed on new or remanufactured firearms "for purposes of sale or distribution." That is, if the activity is performed as a part of the production of a new or remanufactured firearm for sale or distribution, then a **Type 07-Manufacturer FFL is required.**



ATF Supp 000150

49

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 151 of 357

# Rulings Superseded

**Marking Requirements:**

➢ ATF Ruling 2009-5 (Firearms Manufacturing Activities, Identification Markings of Firearms)

- A "non-marking variance request" or notice is no longer required under the amended regulations under certain circumstances.

- The amended regulations enumerate specific exceptions as to when and how a licensee may adopt existing markings:

  o When a firearm that has not been sold, shipped, or otherwise disposed of to a person other than a licensee (i.e., newly manufactured firearms). Under these circumstances, the licensee must adopt both the serial number **and** the other identifying markings provided the serial number adopted is not duplicated on any other firearm.





ATF Supp 000151                    50

# Rulings Superseded

<u>Adoption of Markings Continued:</u>

- o When a licensee remanufactures or imports a firearm that was previously sold, shipped, or disposed of to a nonlicensee, provided that the licensee legibly and conspicuously places, or causes to be placed, on the frame or receiver either: their name (or recognized abbreviation), and city and State (or recognized abbreviation) where they maintain their place of business; or their name (or recognized abbreviation) and abbreviated Federal firearms license number, which is the first three and last five digits, individually (i.e., not as a prefix to the serial number adopted) after the letters "FFL", in the following format: "FFL12345678." The serial number adopted or placed on the firearm generally may not be a duplicate.

- o When a manufacturer performs a service for a nonlicensee as a gunsmith (as defined in section 27 CFR 478.11) on an existing firearm that is not for sale or distribution.





ATF Supp 000152

51

# Rulings Superseded

➢ ATF Ruling 2012-1 (Time Period for Marking Firearms Manufactured)

- The regulations codify this ruling by requiring that all complete GCA firearms outside the purview of the NFA must be marked within seven (7) days after completion of the entire manufacturing process, or prior to disposition, whichever is sooner.





ATF Supp 000153

52

# Rulings Superseded

➢ ATF Ruling 2013-3 (Adopting Identification of Firearms)

- The regulations codify this ruling by allowing licensed manufacturers and importers who remanufacture or import firearms to adopt an existing serial number, caliber/gauge, model, or other markings already identified on a firearm, provided they legibly and conspicuously place, or cause to be placed, on the frame or receiver, either:

  o Name of FFL (or recognized abbreviation) and City & State (or recognized abbreviation) where the FFL maintains their business, OR

  o Name of FFL (or recognized abbreviation) and their abbreviated FFL number (first three and last five digits with no dashes) individually, not as a prefix to the serial number adopted.





ATF Supp 000154

53

# Rulings Superseded

## Recordkeeping Requirements:

➢ **ATF Ruling 2011-1 (Importers Consolidated Records)**

- The regulations codify this ruling by requiring all licensed importers to consolidate their records of importation, acquisition, and disposition of firearms.

- Separate records are no longer allowed.

➢ **ATF Ruling 2016-3 (Consolidation of Records Required for Manufacturers)**

- The regulations codify this ruling by requiring all licensed manufacturers to consolidate their records of manufacture, acquisition, and disposition of firearms.

- Separate records are no longer allowed.





ATF Supp 000155

54

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 156 of 357

# Rulings Amplified

➢ ATF Ruling 2002-6 (Identification of Firearms, Armor Piercing Ammunition, and Large Capacity Ammunition Feeding Devices)

- The regulations amplify the meaning of the terms "conspicuously" and "legibly" to explain how they apply to the marking of frames or receivers, including multi-piece frames and receivers and modular silencer devices.

- The ruling still applies in all other respects.





ATF Supp 000156

55

# Rulings Amplified

➢ ATF Ruling 2016-1 (Requirements to Keep Firearms Records Electronically)

- The regulations amplify this ruling to explain that acquisition and disposition records over 20 years of age may be maintained electronically and cannot be destroyed.

- The ruling still applies in all other respects.

➢ ATF Ruling 2016-2 (Electronic ATF Form 4473)

- The regulations amplify this ruling to explain that ATF Forms 4473 over 20 years of age may be maintained electronically and cannot be destroyed.

- The ruling still applies in all other respects.





ATF Supp 000157

56

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 158 of 357

**PROTECTING THE PUBLIC
SERVING OUR NATION**

# Rulings Clarified

➤ Revenue Ruling 55-342 (FFLs Assembling Firearms from Component Parts)

- The regulations clarify that a gunsmith must obtain a manufacturer's license <u>when the activity is conducted on a firearm for purposes of sale or distribution.</u>

➤ ATF Ruling 77-1 (Gunsmithing at Shooting Events)

- The regulations clarify ATF Rul. 77-1 by explaining that licensed manufacturers and importers, who may engage in the business as a licensed dealer/gunsmith without obtaining a separate license, may also perform same-day adjustment or repair and return the firearm to the person from whom received without an acquisition record entry.

➤ ATF Ruling 2009-2 (Installation of Drop-in Replacement Parts)

- This ruling stated that gunsmiths who engage in the business of installing "drop in" replacement parts must be licensed as dealers.

- The regulations clarify this to the extent that licensed dealer/gunsmiths may install "drop in" replacement parts **to repair** their own firearms, or **to repair** firearms for other licensees who plan to resell them without being licensed as a manufacturer.

- The regulation also clarifies that a dealer/gunsmith may repair or customize customer owned firearms which includes using drop-in replacement parts.



ATF Supp 000158

57

**ATF** PROTECTING THE PUBLIC SERVING OUR NATION

# Rulings Clarified

➢ ATF Ruling 2010-3 (Identification of Maxim Side-Plate Receivers)

- The regulations clarify that the classification of the right-side plate of Vicker/Maxim receiver is grandfathered and may continue to be marked on the right-side plate unless the receiver is re-designed.

➢ ATF Ruling 2015-1 (Manufacturing and Gunsmithing)

- The regulations provide a definition of "gunsmith."

  o The purpose for which the activity is being performed will determine what type of license is required (i.e., dealer/gunsmith or manufacturer).

- This rule further clarifies when a manufacturer's license is required.

- Dealer-gunsmiths must be licensed as manufacturers whenever they perform work that produces or remanufactures firearms (weapons or frames or receivers) for sale or distribution.



ATF Supp 000159

58



# Procedure Clarified

➢ ATF Procedure 2020-1 (Recordkeeping Procedure for Non-Over-the-Counter Firearm Sales by Licensees to Unlicensed In-State Residents that Are NICS Exempt)

- The regulations clarify that ATF Proc. 2020-1 is no longer an alternate method of complying with 27 CFR 478.124(f).

    o The regulation no longer requires that the firearm description information be completed after the licensee receives a completed ATF Form 4473 from the transferee.

- ATF Proc. 2020-1 **MUST** still be followed whenever non-over-the counter transactions are conducted in accordance with section 478.96(b).



ATF Supp 000160

59

**ATF** PROTECTING THE PUBLIC
SERVING OUR NATION

# ATF Resources

➢ ATF Website - Definition of "Frame or Receiver" and Identification of Firearms: https://www.atf.gov/rules-and-regulations/definition-frame-or-receiver

➢ ATF eRegulations: https://regulations.atf.gov/

➢ ATF Rulemaking: https://www.atf.gov/rules-and-regulations/rulemaking

➢ Federal Regulation: https://www.govinfo.gov/content/pkg/FR-2022-04-26/pdf/2022-08026.pdf





ATF Supp 000161

60

**ATF** PROTECTING THE PUBLIC
SERVING OUR NATION

# Contact Us

➢ For questions regarding the application of the final rule, contact the Firearms Industry Programs Branch at Firearms Industry Programs Branch: FIPB@atf.gov.

    • Subject line should state **Frame or Receiver Final Rule.**

➢ For technical questions regarding firearms, contact the Firearms and Ammunition Technology Division at: Fire_Tech@atf.gov.

➢ For questions regarding the rulemaking process, contact the Office of Regulatory Affairs at: ORA@atf.gov.





ATF Supp 000162

61



# Are "80%" or "unfinished" receivers illegal?   ⊙ Español

Receiver blanks that do not meet the definition of a "firearm" are not subject to regulation under the Gun Control Act (GCA). ATF has long held that items such as receiver blanks, "castings" or "machined bodies" in which the fire-control cavity area is completely solid and un-machined have not reached the "stage of manufacture" which would result in the classification of a firearm according to the GCA.

The following three photos are provided as examples. The first receiver has a solid, un-machined fire-control cavity area with no holes or dimples for the selector, trigger, or hammer pins. It does not meet the GCA definition of a firearm. The second receiver, shown from the top, likewise has a solid, un-machined fire-control cavity area. It does not meet the GCA definition of a firearm. The third receiver has a partially machined fire-control cavity and does meet the GCA definition of a firearm.

ATF Supp 000164

# Are some items being marketed as non-firearm "unfinished" or "80%" receivers actually considered firearms?

Yes. In some cases, items being marketed as "unfinished" or "80%" receivers do actually meet the definition of a "firearm" as defined in the Gun Control Act (GCA).

If you are unsure about whether an item you are planning to buy or sell is considered a firearm under the GCA, please contact ATF's Firearms and Ammunition Technology Division (FATD) by email at fire_tech@atf.gov or by phone at 304-616-4300.

*Last Reviewed June 24, 2020*

ATF Supp 000166

# Are there restrictions on who can purchase receiver blanks?

The Gun Control Act (GCA) does not impose restrictions on receiver blanks that do not meet the definition of a "firearm."

Please note that some items marketed as non-firearm "unfinished" or "80%" receivers are actually considered firearms.

*Last Reviewed June 24, 2020*

ATF Supp 000167

# Can functioning firearms made from receiver blanks be traced?

ATF is able to successfully trace most crime guns to the first retail purchaser. ATF starts with the manufacturer and goes through the entire chain of distribution to find who first bought the firearm from a licensed dealer.

Because receiver blanks do not have markings or serial numbers, when firearms made from such receiver blanks are found at a crime scene, it is usually not possible to trace the firearm or determine its history, which hinders crime gun investigations and jeopardizes public safety.

*Last Reviewed February 6, 2020*

ATF Supp 000168

# Have firearms made from unmarked receiver blanks been recovered after being used in a crime?

Yes. Firearms that began as receiver blanks have been recovered after shooting incidents, from gang members, and from prohibited people after they have been used to commit crimes.

*Last Reviewed February 6, 2020*

ATF Supp 000169

# Is ATF aware of the receiver blanks, commonly referred to as 80% receivers?

Yes. ATF routinely collaborates with the firearms industry and law enforcement to monitor new technologies and current manufacturing trends that could potentially impact the safety of the public.

*Last Reviewed February 6, 2020*

ATF Supp 000170

# What is an "80%" or "unfinished" receiver? ⏷ Español

"80% receiver," "80% finished," "80% complete" and "unfinished receiver" are all terms referring to an item that some may believe has not yet reached a stage of manufacture that meets the definition of "firearm frame" or "receiver" according to the Gun Control Act (GCA). These are not statutory terms and ATF does not use or endorse them.

*Last Reviewed February 6, 2020*

ATF Supp 000171

# When does a receiver need to have markings and/or serial numbers?

Receivers that meet the definition of a "firearm" must have markings, including a serial number. See 27 CFR § 478.92, Firearm manufacturers marking requirements.

*Last Reviewed February 6, 2020*

ATF Supp 000172

# Open Letters

ATF periodically publishes Open Letters to the industries it regulates in order to remind or assist licensees with understanding their regulatory compliance responsibilities under the laws and regulations administered by ATF.

Open Letters to the Firearms Industry

Open Letters to the Explosives Industry

*Last Reviewed September 23, 2022*

ATF Supp 000173

# Firearms Open Letters

ATF Supp 000174

| Title ▲ | Description |
|---|---|
| Alabama-July2019-Public Safety Advisory-Alabama Federal firearms licensees transferring firearms (310.89 KB) | The purpose of this public safety advisory is to notify you of an important change to the procedure you may follow to comply with the Brady Handgun Violence Protection Act (Brady Act), codified at 18 U.S.C. § 922(t), when transferring a firearm to an unlicensed person. |
| Alabama-Oct1998-Open Letter-Permanent Provisions of the Brady Law (44.54 KB) | The purpose of this letter is to advise Federal firearms licensees in Alabama of their responsibilities under the permanent provisions of the Brady law. |
| Alaska-Jun2012-Open Letter-Identification Showing Residence is Neither a Street Address or Rural Route and Box Number (99.27 KB) | The purpose of this open letter is to provide guidance to Federal firearms licensees (FFLs) in Alaska regarding firearms transferees whose government issued identification documents indicate a residence address that is neither a street address nor a rural route and box number address. |
| Alaska-Oct1998-Open Letter-Permanent Provisions of the Brady Law (49 KB) | The purpose of this letter is to advise Federal firearms licensees in Alaska of their responsibilities under the permanent provisions of the Brady law. |
| Alaska-Oct2005-Open Letter-Alaska Concealed Handgun Permits Marked "NICS Exempt" Qualify as NICS Check Alternative (38.9 KB) | This open letter informs Alaska Federal firearms licensees that beginning October 19, 2005, only Alaska Concealed Handgun Permits marked "NICS EXEMPT" will qualify as an alternative to a National Instant Criminal Background Check System (NICS) check. |
| All FFLs - Jan 2023 - Open Letter - Machinegun Dealer Sales Sample Letters (218.29 KB) | Open letter to the Federal firearms licensee (FFL) community to advise on the restrictions and parameters of 18 U.S.C. § 922(o), which generally prohibits the possession or transfer of machineguns imported or manufactured after May 19, 1986, with limited exceptions. |
| All FFLs - July 2023 - Open Letter - Safe Storage (205.12 KB) | The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is issuing this open letter to assist Federal Firearms Licensees ("FFLs") in understanding their obligations when they choose to provide firearm storage services to their customers and the public. |
| All FFLs-Apr2001-Open Letter-End of Registration Period for Streetsweeper, Striker-12, and USAS-12 Shotguns (87.53 KB) | On February 9, 2001, ATF published a ruling that establishes a final deadline and ends the registration period for individuals who are currently in possession of the Streetsweeper, Striker-12, and the USAS-12 shotguns. The registration period for these shotguns will expire on May 1, 2001. |
| All FFLs-Apr2006-Open Letter-Child Safety Lock Act of 2005 (31.25 KB) | This open letter serves to notify Federal firearms licensees that the Child Safety Lock Act of 2005 makes it generally unlawful for "any licensed importer, manufacturer, or dealer to sell, deliver, or transfer any handgun to any person, other than another licensee, unless the |

| Title ▲ | Description |
|---|---|
|  | transferee (buyer) is provided with a secure gun storage or safety device for that handgun." |
| All FFLs-Aug2005-Open Letter-Extension of Time to Effect Importation of Approved Permits for Frames, Receivers or Barrels (33.62 KB) | The purpose of this open letter is to provide important updated information to importers concerning the lawful importation of certain frames, receivers and barrels. |
| All FFLs-Aug2008-Open Letter-Clarification for FFLs on Obtaining a Marking Variance (121.73 KB) | The purpose of this letter is to advise you of an important clarification to the manner in which a Federal Firearms License holder can obtain a marking variance from the provisions of 27 CFR § 478.92. |
| All FFLs-Aug2008-Open Letter-Guidelines for Natural Disasters (120.31 KB) | The purpose of this open letter is to provide you guidance on certain regulatory requirements and voluntary security measures, as well as recommended guidelines for securing and moving firearms records and inventory in the event of a natural disaster. |
| All FFLs-Aug2010-Open Letter-Acquisition and Disposition Records Maintained by Licensed Importers (100.87 KB) | This open letter contains information about a recent clarification on the "date of importation" required to be recorded in a licensed importer's record of acquisition, often referred to as the "bound book." |
| All FFLs-Aug2011-Open Letter-Rural Route Address (137.78 KB) | The purpose of this open letter is to provide further guidance regarding purchasers who present an identification document bearing a Rural Route address. |
| All FFLs-Aug2011-Open Letter-September 11th Anniversary (89.4 KB) | The purpose of this letter is to encourage all Federal firearms licensees to increase their awareness and vigilance as the anniversary of September 11th approaches. |
| All FFLs-Dec2002-Open Letter-Homeland Security Act of 2002 - ATF Moves to the Department of Justice (25.56 KB) | The purpose of this open letter is to provide you with information on a provision of the recently enacted Homeland Security Act of 2002. This provision moves most of the Bureau of Alcohol, Tobacco and Firearms (ATF) from the Department of the Treasury to the Department of Justice effective January 24, 2003. |
| All FFLs-Dec2004-Open Letter-Establishment of the FBI's National Instant Criminal Background Check System's Voluntary Appeal File (14.87 KB) | The purpose of this letter is to inform Federal firearms licensees that the Federal Bureau of Investigation's (FBI) National Instant Criminal Background Check System's (NICS) Voluntary Appeal File (VAF) has been established. |
| All FFLs-Dec2011-Open Letter-Future Amendment of Nonimmigrant Alien Provisions (66.96 KB) | The purpose of this open letter is to inform all Federal firearms licensees that ATF is in the process of amending its regulations and forms related to nonimmigrant alien provisions of the Gun Control Act. |
| All FFLs-Dec2011-Open Letter-State of Residence (70.01 KB) | The purpose of this open letter is to inform all Federal firearms licensees that ATF will be revising the regulations in 27 C.F.R. Part 478 |

| Title ▲ | Description |
|---|---|
| | to conform to the Department of Justice's conclusions by removing the separate 90-day residency requirement for aliens. |
| All FFLs-Dec2012-Open Letter-For Importers the Availability of ATF Form 4587 (ATF F 5330.4) on Pay.gov (947.46 KB) | This open letter contains information about the availability of ATF F 4587 (ATF F 5330.4), Application to Register as an Importer of U.S. Munitions Import List Articles, on Pay.gov. |
| All FFLs-Jan2001-Open Letter-"Do's" and "Don'ts" for Curio or Relic Firearms Collectors (113.71 KB) | The purpose of this letter is to apprise Federally licensed collectors of pertinent regulations of the Gun Control Act of 1968 (GCA).  In this letter are some major "Do's" and "Don'ts" for collectors that are based on these provisions. |
| All FFLs-Jan2004-Open Letter-Importance of Partnerships Between ATF and the Firearms Industry (94.99 KB) | This open letter discusses the importance of the partnerships that have been established between ATF and the firearms industry and to reinforce our joint responsibilities under the Gun Control Act (GCA). |
| All FFLs-Jan2006-Open Letter-Certain Firearms Transfers Affected by the Change to the Atomic Energy Act of 1954 (35.37 KB) | The purpose of this Open Letter is to advise all Federal firearms licensees (FFLs) of a recent change to the Atomic Energy Act of 1954, as it relates to the transfer of certain types of firearms. |
| All FFLs-Jan2006-Open Letter-Change to the Look of the Federal Firearms License (FFL) (49.73 KB) | The purpose of this letter is to advise you of a change to the look of the Federal firearms license (FFL) beginning January 12, 2006, in response to feedback received from licensees. |
| All FFLs-Jan2009-Open Letter-Availability of 2007 - 28th Edition State Laws and Published Ordinances (ATF P 5300.5) (95.97 KB) | The purpose of this Open Letter is to make you aware of the availability of the 2007, 28th Edition State Laws and Published Ordinances - Firearms (ATF P 5300.5). This publication is now being distributed in a CD-ROM version. |

1    2    3    4    5    6    7    8    NEXT ›    LAST »

**Email Updates**

Subscribe to receive news and update from the Bureau of Alcohol, Tobacco, Firearms and Explosives

*Enter Email Address

Submit

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 178 of 357

| Title▲ | Description |
|---|---|
| All FFLs-Jan2009-Open Letter-Reporting Theft or Loss of Firearms from Inventory (47.79 KB) | The purpose of this open letter is to reminder Federal firearms licensees of their responsibility in reporting any theft or loss of firearms from their inventory to ATF. |
| All FFLs-Jan2009-Open Letter-Use and Acceptance of Electronically Transmitted Permanent Change of Station (PCS) Military Orders (180.3 KB) | The purpose of this open letter is to provide guidance on the use and acceptance of electronically transmitted permanent change of station (PCS) military order to establish a transferee's State of residence. |
| All FFLs-Jan2013-Open Letter-Facilitating Transfers of Firearms Between Private Individuals (297.42 KB) | The purpose of this open letter is to remind all Federal firearms licenses (FFL) of their ready ability to enhance public safety and assist law enforcement by encouraging and facilitating transfers of firearms between private individuals thorough their businesses. |
| All FFLs-July2002-Open Letter-Importer Dealer Sales Samples (41.24 KB) | This open letter contains information about recent changes that may affect your day-to-day operations and/or long range plans regarding dealer sales samples of machineguns. |
| All FFLs-July2004-Open Letter-3rd Anniversary of September 11th Attack (28.79 KB) | It will be 3 years this September since America was attacked. We at ATF remain vigilant, but we are requesting your assistance in our national effort to prevent terrorism. |
| All FFLs-July2004-Open Letter-ATF Requests Assistance in National Effort to Prevent Terrorism (151.75 KB) | This open letter provides awareness information for Federal firearms licensees to incorporate in their daily business activities. |
| All FFLs-July2005-Open Letter-Department of State Rescinded Sanctions on Trade in Defense Articles and Services from South Africa (70.81 KB) | The purpose of this open letter is to inform licensed firearms importers and registered importers of U.S. Munitions Import List Articles that the United States Department of State has rescinded the sanctions on trade in defense articles and services from South Africa. |
| All FFLs-July2005-Open Letter-Importation of Frames, Receivers or Barrels of Firearms Under Title 18 U.S.C. § 925(d)(3) (40.9 KB) | The purpose of this open letter is to provide important information to importers concerning the lawful importation of certain frames, receivers and barrels |
| All FFLs-July2005-Open Letter-Importation of U.S. Manufactured Surplus Military Firearms Classified as Curios or Relics (100.63 KB) | This Open Letter is to advise all Federal Firearms Licensees and registered importers of U.S. munitions import list articles that ATF was advised by the Department of State, on a case-by-case basis, permit the retransfer of U.S. manufacturing military firearms that were sold or granted by the United States Government classified by ATF as curios or relics. |
| All FFLs-July2009-Open Letter-Selling or Delivering Firearms Frames or Receivers (103.66 KB) | The purpose of the this open letter is to provide guidance on certain regulatory requirements and definitions under the Gun |

ATF Supp 000178

| Title ▲ | Description |
|---|---|
| | Control Act of 1968 (GCA) about selling or delivering firearm frames or receivers. |
| All FFLs-June2000-Open Letter-Open Letter to Importers Regarding CICAD Model Regulations (112.73 KB) | Through a final rule published June 20, 2000, in the Federal Register, ATF is amending its regulations and affected forms to comply with Model Regulations for the Control of the International Movement of Firearms, Their Parts and Components, and Ammunition (the Model Regulations). |
| All FFLs-June2007-Open Letter-Post Office (P.O.) Boxes or Rural Route Numbers as a Residence Address (295.3 KB) | The purpose of this open letter is to provide guidance regarding firearms transferees whose only identification documents indicate only Post Office Box or Rural Route number as a residence address. |
| All FFLs-Mar 2022-Open Letter-Forced Reset Triggers (FRTs) (268.72 KB) | The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) recently examined devices commonly known as "forced reset triggers" (FRTs) and has determined that some of them are "firearms" and "machineguns" as defined in the National Firearms Act (NFA), and "machineguns" as defined in the Gun Control Act (GCA). |
| All FFLs-Mar2006-Open Letter-Filing National Firearms Act (NFA) Transaction Forms by Facsimile Transmission (34.03 KB) | This is to update information regarding the filing of certain National Firearms Act (NFA) forms by facsimile transmission as the functions of the NFA Branch have been relocated to Martinsburg, West Virginia from Washington, DC. |
| All FFLs-May2004-Open Letter-Importation of Articles Added by the Amendment to Annex A of the Voluntary Restraint Agreement (VRA) (42.08 KB) | A decision was agreed upon to amend Annex A of the Voluntary Restraint Agreement (VRA) by adding 74 types of firearms to the list. Please note, that even though these 74 firearms have been added to Annex A, ATF will still need to determine the importability of some of these firearms. |
| All FFLs-May2006-Open Letter-Adding a Vertical Fore Grip to a Handgun (192.32 KB) | This open letter provides information regarding the affect of adding a vertical fore grip to a handgun, therefore making it a firearm that falls under the National Firearms Act (NFA). |
| All FFLs-May2006-Open Letter-Flare Inserts-Any Other Weapon (711.28 KB) | This open letter provides informations regarding the use of an insert/sleeve designed to be installed in an Orion 25mm/12 gauge flare launcher that allows the use of conventional ammunition in these flare launchers. |
| All FFLs-May2006-Open Letter-New E-mail Service Available to Federal Firearms Licensees (25.93 KB) | ATF is offering Federal Firearms Licensees (FFLs) a new option to receive ATF information by email. This voluntary service will allow FFLs to receive newsletters, open letters, and important notices by email. |
| All FFLs-May2007-Open Letter-Guidelines for Natural Disasters (135.14 KB) | This open letter provides guidance on certain regulatory requirements and voluntary security measures, as well as recommended guidelines for securing and moving firearms records and inventory in the event of a natural disaster. |

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 180 of 357

| Title ▲ | Description |
|---|---|
| ⊡ All FFLs-May2007-Open Letter-Virginia Tech Tragic Events (90.52 KB) | We at ATF were saddened by the tragic events that unfolded at Virginia Tech just last month. In the immediate aftermath, many questions arose about whether the person responsible for the shootings was prohibited under Federal law from possessing a firearm. |
| ⊡ All FFLs-May2008-Open Letter-Procedual Guidance for Licensed and/or Registered Importers for ATF Form 6A (299.9 KB) | This open letter is a reminder of the procedures to follow when completing ATF Form 6A as outlined in 27 CFR 478.112 and on the instruction page of the form. |
| ⊡ All FFLs-May2008-Open Letter-Security Firms Temporarily Assigning Firearms to Unlicensed Employees (95.91 KB) | The purpose of this open letter is to inform security firms and other persons who have Federal firearms licenses (FFLs), and who may temporarily assign firearms to their unlicensed employees in furtherance of legitimate business purposes, of the statutory and regulatory requirements that affect them. |
| ⊡ All FFLs-May2011-Open Letter-Complying with Recordkeeping Requirements When the Initial NICS Response is Changed (101.56 KB) | The purpose of this open letter is to provide guidance to Federal firearms licensees (FFLs) on how to comply with recordkeeping requirements when there is a change to the response initially received by the National Instant Criminal Background Check System (NICS) during a background check for a firearm transfer. |
| ⊡ All FFLs-May2013-Open Letter-Prohibited Transfers of Firearms to Foreign Purchaser (75.08 KB) | The purpose of this open letter is to advise federal firearms licensees that arranging for the exportation of firearms and ammunition through in-person disposition to foreign purchasers at airline ticket counters of local international airports violates the Gun Control Act of 1968. |
| ⊡ All FFLs-Nov2001-Open Letter-Supporting Documentation for the Importation of Surplus Military Curio or Relic Firearms (89.89 KB) | In response to the recent number of inquiries from licensed importers concerning the importation of surplus military curio or relic firearms and the submission of supporting documentation, ATF has published ATF Ruling 2001-3. |

« FIRST    ‹ PREVIOUS    1    2    3    4    5    6    7    8    NEXT ›    LAST »

**Email Updates**

Subscribe to receive news and update from the Bureau of Alcohol, Tobacco, Firearms and Explosives

*Enter Email Address*

Submit

ATF Supp 000180

| Title ▲ | Description |
|---|---|
| All FFLs-Nov2003-Open Letter-Procedural Guidance Regarding the Handling of ATF Form 4473 After a Firearms Transaction (1.09 MB) | This letter serves to provide Federal Firearms Licensees (FFLs) with procedural guidance regarding the handling of ATF From 4473, Firearms Transaction Record, after a firearm transaction has occurred. |
| All FFLs-Nov2005-Open Letter-Lawful Importation of Certain Firearm Barrels into the United States for Commercial Purposes (34.31 KB) | The purpose of this open letter is to update licensed and registered importers of firearms, ammunition and other regulated commodities on the lawful importation of certain firearm barrels into the United States for commercial purposes. |
| All FFLs-Nov2011-Open Letter-Recent Changes to Florida State Law (62.6 KB) | The purpose of this open letter is to provide guidance on the recent changes to Florida State law and to assist Federal firearms licensees in complying with Federal firearms laws and regulations and how they may affect Florida county ordinances that require sellers to wait five days before delivering a firearms. |
| All FFLs-Oct1998-Open Letter-Pawnbroker Transactions (29.24 KB) | The Omnibus Appropriations Act for 1999 provides that a pawnbroker may complete a NICS check when a firearm is offered as collateral for a loan, at the option of the dealer. ATF will be publishing a Notice of Proposed Rulemaking setting forth the procedures pawnbrokers must follow if they wish to complete the optional NICS check at the time a firearm is offered for pawn. |
| All FFLs-Oct2007-Open Letter-Availability of the Personal Firearms Record, ATF Form 3312.8 (85.09 KB) | The purpose of this open letter is to make you aware of the availability of ATF Publication 3312.8, *Personal Firearms Record.* This record is to help firearms owners adequately identify their firearms in case of a theft or loss. |
| All FFLs-Sep2012-Open Letter-Building Positive Working Relationships with Industry Members (160.7 KB) | This open letter was sent from ATF's Deputy Director to all Federal firearms licensees and all Federal explosives licensees/permittees discussing how ATF continues to work towards maintaining and building positive working relationships industry members, trade associations, law enforcement, and the general public. |
| All FFLs-Sept2004-Open Letter-Expiration of the Ban on the Importation of SAWs and LCAFDs (44.22 KB) | This open letter is to advise the import community of the provisions of the Violent Crime Control and Law Enforcement Act of 1994 that no longer apply to the manufacture, transfer and possession of semiautomatic assault weapons (SAWs) and to transfer and possess large capacity ammunition feeding devices (LCAFDs). |
| All FFLs-Sept2011-Open Letter-Marijuana for Medicinal Purposes (56.61 KB) | The purpose of this open letter is to provide guidance on the issue of marijuana for medicinal purposes and its applicability to Federal firearms laws. |
| All FFLs-September 2022-Impact of Final Rule 2021-05F on Partially | The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is issuing this open letter to further assist the firearms industry and the public in understanding whether a "partially complete, disassembled, or |

| Title ▲ | Description |
|---------|-------------|
| Complete AR-15/M-16 Type Receivers (1.01 MB) | nonfunctional" receiver of an AR-15/M-16 variant weapon has reached a stage of manufacture such that it "may readily be completed, assembled, restored, or otherwise converted" to a functional receiver, and is therefore classified as a "frame or receiver" or "firearm" in accordance with the final rule titled "Definition of 'Frame or Receiver' and Identification of Firearms (Final Rule 2021R-05F), which became effective August 24, 2022. |
| All NC FFLs-Open Letter- Aug 2023-Brady Handgun Violence Protection Act (187.92 KB) | The purpose of this Open Letter is to notify you of an important change to the procedure you may follow to comply with the Brady Handgun Violence Protection Act (Brady Act), codified at 18 U.S.C. § 922(t), when transferring a firearm to an unlicensed person. Specifically, the North Carolina pistol purchase permit may no longer be used as an alternative to the National Instant Criminal Background Check System (NICS) check requirement. |
| All States' Attorney General-May2007-Open Letter-Adjudicated as a Mental Defective (107.38 KB) | This open letter is to all States' Attorney General and focuses on working with each State in taking steps to identify person who are prohibited from possessing firearms as a result of their mental health history. |
| American Samoa-Oct1998-Open Letter-Permanent Provisions of the Brady Law (704.01 KB) | The purpose of this letter is to advise Federal firearms licensees in American Samoa of their responsibilities under the permanent provisions of the Brady law. |
| Arizona-Oct1998-Open Letter-Permanent Provisions of the Brady Law (658.56 KB) | The purpose of this letter is to advise Federal firearms licensees in Arizona of their responsibilities under the permanent provisions of the Brady law. |
| Arkansas-Oct1998-Open Letter-Permanent Provisions of the Brady Law (892.25 KB) | The purpose of this letter is to advise Federal firearms licensees in Arkansas of their responsibilities under the permanent provisions of the Brady law. |
| ATF Business Premises Guidance Letter 4-10-2020 (271.68 KB) | Letter to all federal firearms licensees (FFLs) in response to questions from industry members regarding the legality of firearm sales and deliveries exterior to the brick-and-mortar structure at which the firearms business is licensed, in light of the March 13, 2020, declaration of a national emergency concerning the outbreak of the novel coronavirus disease (COVID-19), and the Department of Homeland Security's subsequent classification of firearms businesses as essential. |
| California-Apr2013-Open Letter-Completing ATF Forms 4473 While Complying with CA DOJ Dealer Record of Sale | The purpose of this letter is to provide procedures for completing Firearms Transaction Records, ATF Form 4473, while complying with the California Department of Justice (CA DOJ) Dealer Record of Sale (DROS) transaction procedures. |

| Title▲ | Description |
|---|---|
| (DROS) Transaction Procedures (42.65 KB) | |
| California-May2015-Open Letter-Guidance for Completing ATF Forms 4473 while Complying with California DOJ DROS DES Transaction Procedures. (174.88 KB) | The ATF has received inquiries from California Federal firearms licensees (FFLs) concerning the correct procedure for completing Firearms Transaction Records, ATF Forms 4473, while complying with the California Department of Justice (CA DOJ) Dealer Record of Sale (DROS) Entry System (DES) transaction procedures. |
| California-Oct1998-Open Letter-Permanent Provisions of the Brady Law (37.92 KB) | The purpose of this letter is to advise Federal firearms licensees in California of their responsibilities under the permanent provisions of the Brady law. |
| California-Oct2004-California Entertainment Firearms Permit (34.43 KB) | The purpose of this letter is to inform you that, on September 20, 2004, Governor Schwarzenegger approved a change in California law that establishes an Entertainment Firearms Permit, and to further advise you of the affect this new permit may have on firearms transactions conducted under your Federal firearms license. |
| Colorado Open Letter - HB1298.pdf (220.9 KB) | Colorado House Bill 1298 (HB1298) establishes a state requirement for an FFL in Colorado to obtain approval, in the form of a "proceed" response, from the Colorado Bureau of Investigation (CBI) prior to any firearm transfers. HB1298 prohibits the CBI from approving a firearm transfer until the CBI determines that its background investigation is complete and that the transfer would not violate federal prohibitions on firearms possession or result in a violation of state law. |
| Colorado-July1999-Open Letter-Correction Notice-State of Colorado Point of Contact for Background Checks (94.52 KB) | The Colorado Department of Public Safety recently notified ATF that the State of Colorado will again act as the point of contact for NICS checks for all firearms transactions. Therefore, beginning August 1, 1999, in order to request a NICS check for any firearm transaction, you must contact the Colorado Bureau of Investigation. |
| Colorado-Mar1999-Open Letter-Correction Notice-Colorado Bureau of Investigation Ceases Operations as NICS Point of Contact (95.4 KB) | The Colorado Bureau of Investigation will cease its operations as the NICS point of contact on March 31, 1999. Therefore, beginning April 1, 1999, in order to initiate a NICS check for any firearm, Colorado licensees must contact the FBI's NICS Operations Center. |
| Connecticut-Oct1998-Open Letter-Permanent Provisions of the Brady Law (820.75 KB) | The purpose of this letter is to advise Federal firearms licensees in Connecticut of their responsibilities under the permanent provisions of the Brady law. |
| Delaware-Oct1998-Open Letter-Permanent | The purpose of this letter is to advise Federal firearms licensees in Delaware of their responsibilities under the permanent provisions of the Brady law. |

ATF Supp 000183

| Provisions of the Brady Law (44.76 KB) | Description |
|---|---|
| District of Columbia-Oct1998-Open Letter-Permanent Provisions of the Brady Law (915.29 KB) | The purpose of this letter is to advise Federal firearms licensees in the District of Columbia of their responsibilities under the permanent provisions of the Brady law. |

« FIRST    ‹ PREVIOUS    1    2    3    4    5    6    7    8    NEXT ›    LAST »

## Email Updates

Subscribe to receive news and update from the Bureau of Alcohol, Tobacco, Firearms and Explosives

*Enter Email Address

| Title▲ | Description |
|---|---|
| Florida-Oct1998-Open Letter-Permanent Provisions of the Brady Law (984.34 KB) | The purpose of this letter is to advise Federal firearms licensees in Florida of their responsibilities under the permanent provisions of the Brady law. |
| Franklin Armory - Dec2019 - Open Letter - Franklin Armory Reformation Firearm (1.09 MB) | The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATP) has received questions from industry members and the general public regarding a new type of firearm produced by the Franklin Armory®. This 'firearm, known as the "Reformation", utilizes a barrel that is produced with straight lands and grooves. This design contrasts with conventional rifling, in which the barrel's lands and grooves are spiral or twisted, and are designed to impart a spin onto the projectile. |
| Georgia-Apr2005-Open Letter-Georgia Crime Information Center Ceases Operations as NICS Point of Contact (35.18 KB) | The purpose of this letter is to inform you that on July 1, 2005, the Georgia Crime Information Center (GCIC) will cease to operate as the point of contact (POC) for the National Instant Background Check (NICS) program, and to further advise you of the affect these changes may have on firearms transactions conducted under your Federal firearms license. |
| Georgia-July2006-Open Letter-Georgia's Concealed Weapons Permit Again Qualifies as Alternative to NICS Check (37.12 KB) | The purpose of this letter is to advise you of an important change to the procedure you may follow beginning July 1, 2006. On this day, Georgia's Concealed Weapons Permit (CWP) will again qualify as an alternative to a National Instant Criminal Background Check System (NICS) check. Accordingly, the October 17, 2005, Open Letter to Georgia Federal Firearms Licensees (FFLs) is superseded. |
| Georgia-Oct1998-Open Letter-Permanent Provisions of the Brady Law (46.84 KB) | The purpose of this letter is to advise Federal firearms licensees in Georgia of their responsibilities under the permanent provisions of the Brady law. |
| Georgia-Oct2005-Open Letter-Georgia's Concealed Weapons Permits No Longer Alternative to NICS Check (38.27 KB) | The purpose of this letter is to inform all Georgia Federal firearms licensees (FFL) that Georgia's Concealed Weapons Permits no longer qualifies as an alternative to a National Instant Criminal Background Check System (NICS) check. |
| Guam-Oct1998-Open Letter-Permanent Provisions of the Brady Law (879.94 KB) | The purpose of this letter is to advise Federal firearms licensees in Guam of their responsibilities under the permanent provisions of the Brady law. |
| Hawaii-Oct1998-Open Letter-Permanent Provisions of the Brady Law (44.84 KB) | The purpose of this letter is to advise Federal firearms licensees in Hawaii of their responsibilities under the permanent provisions of the Brady law. |
| Idaho-Oct1998 Firearms-Establishment of National Instant Criminal Background Check System (NICS) (840.33 KB) | The purpose of this open letter is to advise you of an important change to the procedure you may follow to comply with the Brady Handgun Violence Prevention Act, when transferring a firearm to an unlicensed person. This open letter supersedes the document by the same title, posted on April 8, 2010. |

| Title ▲ | Description |
|---|---|
| Illinois-May2008-Open Letter-Illinois Firearms Owner Identification (FOID) Cards No Longer Qualify as an (119.24 KB) | The purpose of this open letter is to advise you that beginning July 1, 2008, Illinois Firearms Owner Identification (FOID) cards no longer qualify as an alternative to a National Instant Criminal Background Check System (NICS) check. |
| Indiana-Dec2005-Open Letter-Procedures for Indiana FFLs Using the Revised ATF Form 4473 (53.58 KB) | The purpose of this letter is to clarify that the revised ATF Form 4473, Firearms Transaction Record Part I – Over The Counter, has no effect on the procedures Indiana Federal Firearms Licensees must follow in order to comply with the Brady Law. The procedures enumerated in the September 2003 Open Letter To All Indiana Firearms Licensees are still in effect. |
| Indiana-Oct1998-Firearms-Establishment of National Instant Criminal Background Check System (NICS) (44.65 KB) | The purpose of this letter is to advise you of your responsibilities under the permanent provisions of the Brady law. The permanent provisions of the Brady law provide for the establishment of a national instant criminal background check system (NICS) that licensees must contact before transferring any firearm to unlicensed individuals. |
| Indiana-Sept2003-Open Letter-Changes to Indiana Background Check Procedures (103.34 KB) | The purpose of this letter is to advise you of important changes to the procedures Indiana Federal Firearms Licensees (FFLs) must follow beginning October 1, 2003, in order to comply with the Brady Law. It also will advise you of the procedures you will have to follow to comply with Indiana State law. |
| Iowa-Jun2011-Open Letter-Transferring a Firearm to an Unlicensed Person Using an Iowa Permit Alternative (108.63 KB) | The open letter provides guidance to all Iowa Federal firearms licensees when transferring a firearm to an unlicensed person using an Iowa issued permit as an alternative to a NICS background check. |
| Iowa-Oct1998-Open Letter-Permanent Provisions of the Brady Law (123.14 KB) | The purpose of this letter is to advise Federal firearms licensees in Iowa of their responsibilities under the permanent provisions of the Brady law. |
| Kansas-July2013-Open Letter-Passage of the Kansas Second Amendment Protection Act (57.54 KB) | The purpose of this open letter is to provide guidance and information related to the passage of the Kansas Second Amendment Protection Act, Kansas, effective April 25, 2013. |
| Kansas-May2011-Firearms-National Instant Criminal Background Check System (NICS) Requirement Exception. (109.55 KB) | The purpose of this open letter is to advise you of an important change to the procedure you may follow to comply with the Brady Handgun Violence Prevention Act when transferring a firearm to an unlicensed person. This open letter supersedes the document by the same title, posted on April 8, 2010. |
| Kansas-Oct1998-Open Letter-Permanent Provisions of the Brady Law (117.44 KB) | The purpose of this letter is to advise you of your responsibilities under the permanent provisions of the Brady law, 18 U.S.C. § 922(t). On November 30, 1998, the interim provisions of the Brady law will cease to apply, and the permanent provisions of the Brady law will take effect. |

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 187 of 357

| Title ▲ | Description |
|---|---|
| Kentucky-July2006-Open Letter-Kentucky Carry Concealed Deadly Weapon License Qualifies as Alternative to NICS Check (35.19 KB) | The purpose of this letter is to advise you that the Kentucky Carry Concealed Deadly Weapon License (CCDWL) issued on or after July 12, 2006, will qualify as an alternative to a National Instant Criminal Background Check System (NICS) check. |
| Kentucky-Jun2007-Open Letter-Amendment to What was Formerly Known as Kentucky's Contiguous State Law (249.97 KB) | The purpose of this open letter is to advise that the recent amendment to what was formerly known as Kentucky's contiguous state law has no effect on Federal firearms laws and regulations. |
| Kentucky-May-2015-Open Letter-Guidance on Alternative Permit Procedures that Comply with the Brady Handgun Violence Protection Act (62.49 KB) | The purpose of this letter is to provide clarification and guidance on alternative permit procedures that comply with the Brady Handgun Violence Protection Act (Brady law) for firearms transfers to unlicensed persons in the Commonwealth of Kentucky. This open letter supersedes the 2006 Open Letter to All Kentucky Federal Firearms Licensees with respect to alternatives to the National Instant Criminal Background Check System (NICS) background check. |
| Kentucky-Oct1998-Open Letter-Permanent Provisions of the Brady Law (509.17 KB) | The purpose of this letter is to advise Federal firearms licensees in Kentucky of their responsibilities under the permanent provisions of the Brady law. |
| Louisiana-Apr2015-Open Letter-Louisiana's Concealed Handgun Permit Qualifies as Alternative to to NICS Check (472.3 KB) | The purpose of this open letter is to advise all Louisiana Federal firearms licensees that Louisiana's concealed handgun permit has been determined to qualify as an alternative to the National Instant Criminal Background Check System (NICS) check. |
| Louisiana-Jun2021-Open Letter-Lifetime Permit (286.37 KB) | The purpose of this open letter is to advise you that the Louisiana Lifetime Concealed Handgun Permit meets the requirements as an alternative to the NICS check only during the five-year period beginning on the date of issuance of the Lifetime Permit. |
| Louisiana-Oct1998-Open Letter-Permanent Provisions of the Brady Law (473.05 KB) | The purpose of this letter is to advise Federal firearms licensees in Louisiana of their responsibilities under the permanent provisions of the Brady law. |

« FIRST     ‹ PREVIOUS     1     2     3     4     5     6     7     8     NEXT ›     LAST »

**Email Updates**

Subscribe to receive news and update from the Bureau of Alcohol, Tobacco, Firearms and Explosives

＊ *Enter Email Address*

ATF Supp 000187

| Title ▲ | Description |
|---|---|
| Maine-Oct1998-Open Letter-Permanent Provisions of the Brady Law (44.64 KB) | The purpose of this letter is to advise Federal firearms licensees in Maine of their responsibilities under the permanent provisions of the Brady law. |
| Maryland-Oct1998-Open Letter-Permanent Provisions of the Brady Law (1007.63 KB) | The purpose of this letter is to advise Federal firearms licensees in Maryland of their responsibilities under the permanent provisions of the Brady law. |
| Massachusetts-Oct1998-Open Letter-Permanent Provisions of the Brady Law (44.67 KB) | The purpose of this letter is to advise Federal firearms licensees in Massachusetts of their responsibilities under the permanent provisions of the Brady law. |
| Massachusetts-Oct2003-Open Letter-Massachusetts License to Carry No Longer an Alternative to NICS Check (78.08 KB) | This open letter is to inform all Massachusetts Federal firearms licensees that as of October 21, 2003 all previously grandfathered Massachusetts licenses to carry will have expired. |
| Michigan-Mar2004-Open Letter-Curbing the Flow of Illegal Crime Guns (74.97 KB) | The purpose of this letter is to advise you of ATF's continued commitment and strong partnership with the Michigan firearms industry and to request your assistance in combating the illegal traffic and use of firearms. |
| Michigan-Mar2004-Open Letter-Michigan Concealed Pistol Permit Not an Alternative to NICS (74.77 KB) | This open letter provides guidance regarding the use of a State of Michigan issued Concealed Pistol Permit (CPP, but commonly referred to as a CCW) and a License to Purchase a Pistol as alternatives to NICS background check. |
| Michigan-Oct1998-Open Letter-Permanent Provisions of the Brady Law (632.48 KB) | The purpose of this letter is to advise Federal firearms licensees in Michigan of their responsibilities under the permanent provisions of the Brady law. |
| Minnesota-Oct1998-Open Letter-Permanent Provisions of the Brady Law (44.74 KB) | The purpose of this letter is to advise Federal firearms licensees in Minnesota of their responsibilities under the permanent provisions of the Brady law. |
| Minnesota-Oct2019-NICS Background Check Prior to Firearm Transfer to Non-Licensee with Valid Minnesota Permit to Carry (435.49 KB) | All Minnesota Federal Firearms Licensees are required to conduct a NICS background check prior to the transfer of a firearm to a non-licensee even if that person presents a valid Minnesota Permit to Carry. |

| Title ▲ | Description |
|---|---|
| Mississippi-Oct1998-Open Letter-Permanent Provisions of the Brady Law (325.13 KB) | The purpose of this letter is to advise Federal firearms licensees in Mississippi of their responsibilities under the permanent provisions of the Brady law. |
| Missouri- Open Letter To All FFLs- House Bill Number 85, Second Amendment Preservation Act (261.14 KB) | Missouri House Bill Number 85, Second Amendment Preservation Act ("the Act" or "SAPA"), signed into law by Governor Parson on June 12, 2021, has generated questions from industry members and firearm owners as to how this Missouri state law may affect them while engaged in a firearms business activity or seeking to acquire a firearm. Section 1.420 of the Act states that "federal acts, laws, executive orders, administrative orders, rules, and regulations" falling into five categories of regulations relating to firearms "shall be considered infringements on the people's right to keep and bear arms, as guaranteed by Amendment II of the Constitution of the United States and Article I, Section 23 of the Constitution of Missouri." SAPA § 1.420. |
| Missouri-Oct1998-Open Letter-Permanent Provisions of the Brady Law (816.58 KB) | The purpose of this letter is to advise Federal firearms licensees in Missouri of their responsibilities under the permanent provisions of the Brady law. |
| Montana-July2009-Open Letter-Guidance Regarding Montana Firearms Freedom Act (72.71 KB) | The purpose of this letter is to provide guidance on your obligations as a Federal firearms licensee (FFL) and the passage of the Montana Firearms Freedom Act. |
| Montana-Oct1998-Open Letter-Permanent Provisions of the Brady Law (775.57 KB) | The purpose of this letter is to advise Federal firearms licensees in Montana of their responsibilities under the permanent provisions of the Brady law. |
| National-Apr2011-Open Letter-Submitting ATF Form 4 or Form 5 (93.76 KB) | The purpose of this letter is to provide guidance to any person submitting ATF Form 4, Application for Tax Paid Transfer and Registration of a Firearm, or with ATF Form 5, Application for Tax Exempt Transfer and Registration of a Firearm. |
| National-Jan2005-Open Letter-Fabrique Nationale FR 5.7 Pistol (530 KB) | The letter provides information in response to numerous questions that ATF has received regarding the capabilities of the 5.7 X 28mm cartridge and the FR 5.7 (Fabrique Nationale) pistol. |
| National-Jan2008-Open Letter-Submitting Payments to ATF (87.04 KB) | The purpose of this letter is to provide notification that the ATF will be switching to electronic funds processing (ECP) for all payments received by the agency. |
| National-Jan2016-Presidential | Tracing firearms in connection with criminal investigations and improving availability of relevant Executive Brand records to the National Instant Criminal Background Check System (NICS). |

| Title ▲ | Description |
|---|---|
| Memorandum (23.71 KB) | |
| National-June1997-Open Letter-Attorney General Brady Law Decision (24.8 KB) | The purpose of this letter is to address the Supreme Court's decision regarding that part of the Brady Handgun Control Act is unconstitutional. |
| National-May 2016-Open Letter-All Chief Law Enforcement Officers of State and Local Law Enforcement Agencies (79.55 KB) | On January 15, 2016, ATF published in the Federal Register a final rule entitled "Machineguns, Destructive Devices and Certain Other Firearms; Background Checks for Responsible Persons of a Trust or Legal Entity with Respect to Making or Transferring a Firearm." This final rule is effective on July 13, 2016, and amends the regulations governing the making and transfer of firearms regulated by the National Firearms Act. |
| National-Oct2004-Open Letter-Improperly Destroyed Russian GP-30 Grenade Launcher (542.27 KB) | The letter provides information on ATF's findings with regards to the improperly destroyed Russian GP-30 grenade launcher, which is classified as a destructive device. |
| Nebraska-Apr2011-Open Letter-Nebraska's Concealed Handgun Permit Qualifies as Alternative to NICS Check (109.21 KB) | The purpose of this open letter is to advise that ATF has reviewed Nebraska's Concealed Handgun Permit Act, as amended in 2010 by Legislative Bill 817, and has determined that Nebraska's Concealed Handgun Permit does qualify as an alternative to the background check required by the Brady law. |
| Nebraska-Oct1998-Open Letter-Permanent Provisions of the Brady Law (118.46 KB) | The purpose of this letter is to advise Federal firearms licensees in Nebraska of their responsibilities under the permanent provisions of the Brady law. |
| Nevada-Aug2011-Open Letter-Nevada's Concealed Firearm Permit Qualifies as Alternative to NICS Check (109.38 KB) | The purpose of this letter is to advise all Nevada Federal firearms licensees that Nevada's Concealed Firearm Permit qualifies as an alternative to the background check required by the Brady law. |
| Nevada-Jan2006-Open Letter-Nevada's Carry Concealed Weapon (CCW) Permits Again Qualify as Alternative to NICS Check (101.57 KB) | The purpose of this letter is to advise you of an important change to the procedure you may follow beginning January 5, 2006. On this day, Nevada's Carry Concealed Weapon (CCW) permit will again qualify as an alternative to a National Instant Criminal Background Check System (NICS) check. Accordingly, the October 17, 2005 Open Letter to Nevada Federal Firearms Licensees (FFLs) is superseded. |

« FIRST    ‹ PREVIOUS    1    2    3    4    5    6    7    8    NEXT ›    LAST »

| Title ▲ | Description |
|---|---|
| Nevada-May2008-Open Letter-Nevada's Carry Concealed Weapon (CCW) Permits No Longer Qualify as an Alternative to a NICS check (92.51 KB) | The purpose of this letter is to advise you that beginning July 1, 2008, Nevada's Carry Concealed Weapon (CCW) permits will no longer qualify as an alternative to a National Instant Criminal Background Check System (NICS) check. |
| Nevada-Nov1998-Open Letter-Permanent Provisions of the Brady Law.pdf (123.72 KB) | The purpose of this letter is to advise Federal firearms licensees in Nevada of their responsibilities under the permanent provisions of the Brady law. |
| Nevada-Oct2005-Open Letter-Nevada's Carry Concealed Weapon (CCW) Permits No Longer Alternative to NICS Check (37.38 KB) | **This letter is superseded by ATF's January 5, 2006 open letter.** The purpose of this letter is to inform Federal firearms licensees (FFLs) that beginning October 19, 2005, Nevada's Carry Concealed Weapon (CCW) Permits will no longer qualify as an alternative to a National Instant Criminal Background Check System (NICS) check. |
| New Hampshire-Nov1998-Open Letter-Change to New Hampshire Background Check Procedures (1.47 MB) | This correction notice is an update to the original background check letter, dated October 28, 1998. The State of New Hampshire has elected to participate as a NICS point of contact for handguns. |
| New Hampshire-Oct1998-Open Letter-Permanent Provisions of the Brady Law (93.12 KB) | The purpose of this letter is to advise Federal firearms licensees in New Hampshire of their responsibilities under the permanent provisions of the Brady law. |
| New Jersey-Dec1998-Open Letter-Correction Notice-Change to New Jersey Background Check Procedure (658.26 KB) | The correction notice corrects an error found in the ATF open letter, dated November 10, 1998, regarding the point of contact for background checks firearm transfers. |
| New Jersey-Nov1998-Open Letter-Permanent Provisions of the Brady Law (42.9 KB) | The purpose of this letter is to advise Federal firearms licensees in New Jersey of their responsibilities under the permanent provisions of the Brady law |
| New Mexico-Feb1994-Open Letter-Implementation of Brady Law Requirements (34.11 KB) | The purpose of this open letter is to advise Federal firearms licensees in New Mexico the requirements of the Brady Law. |
| New Mexico-Nov1998-Open Letter-Correction Notice-Permanent Provisions of the Brady Law (986.38 KB) | This correction notice is to advise all New Mexico Federal firearms licensees that the New Mexico Department of Public Safety will no longer participate as the NICS point of contact. |
| New Mexico-Oct1998-Open Letter-Permanent Provisions of the Brady Law (83.69 KB) | The purpose of this letter is to advise Federal firearms licensees in New Mexico of their responsibilities under the permanent provisions of the Brady law. |
| New York-May2006-Open Letter-New York's License to | The purpose of this letter is to advise New York Federal firearms licensees that the New York license to carry and possess handguns |

| Title ▲ | Description |
|---|---|
| Carry and Possess Handguns No Longer Qualifies as Alternative to NICS Check (90.79 KB) | no longer qualifies as an alternative to the National Instant Criminal Background Check System (NICS) check. |
| New York-Oct1998-Open Letter-Permanent Provisions of the Brady Law (113.11 KB) | The purpose of this letter is to advise Federal firearms licensees in New York of their responsibilities under the permanent provisions of the Brady law. |
| North Carolina-Oct1998-Open Letter-Permanent Provisions of the Brady Law.pdf (712.86 KB) | October 1991 Open Letter to all FFL's regarding Brady Law. |
| North Dakota-Apr2000-Open Letter-Correction Notice-Qualifying Permit Alternatives to NICS Check (102.27 KB) | The provisions of North Dakota law regarding the issuance of concealed weapons permits were recently amended.  Based on these changes, concealed weapons permits issued on or after December 1, 1999, will now qualify as alternatives to a NICS check at the time of transfer. |
| North Dakota-Oct1998-Open Letter-Permanent Provisions of the Brady Law (44.75 KB) | The purpose of this letter is to advise Federal firearms licensees in North Dakota of their responsibilities under the permanent provisions of the Brady law. |
| Northern Mariana Islands-Oct1998-Open Letter-Permanent Provisions of the Brady Law (49.81 KB) | The purpose of this letter is to advise Federal firearms licensees in the Commonwealth of Northern Mariana Islands of their responsibilities under the permanent provisions of the Brady law. |
| Northern Mariana Islands-Oct2005-Open Letter-Northern Mariana Island Weapons Identification (38.5 KB) | This open letter informs Northern Mariana Island Federal firearms licensees that beginning October 19, 2005, Commonwealth of the Northern Mariana Island Weapons Identification Card Permits no longer qualifies as an alternative to a National Instant Criminal Background Check System (NICS) check. |
| Ohio-May2016-Open Letter-Ohio's Concealed Handgun License Qualifies as Alternative to Background Check Requirement (62.79 KB) | The purpose of this open letter is to advise all Ohio FFLs that Ohio's concealed handgun license qualifies as an alternative to the background check requirement. |
| Ohio-Oct1998-Open Letter-Permanent Provisions of the Brady Law (471.42 KB) | The purpose of this letter is to advise Federal firearms licensees in Ohio of their responsibilities under the permanent provisions of the Brady law. |
| Oklahoma-Jun2023-OpenLetter-SDALicense (187.04 KB) | The purpose of this open letter is to advise you that the Oklahoma Self Defense Act Handgun License (SDA Handgun License) issued on or after November 1, 2021, meets the requirements as an alternative to the National Instant Criminal Background Check System (NICS) check — but only in Oklahoma during the five-year period beginning on the date of issuance of the SDA Handgun License. |
| Oklahoma-Oct1998-Open Letter-Permanent Provisions of | The purpose of this letter is to advise Federal firearms licensees in Oklahoma of their responsibilities under the permanent provisions |

**Title** ▲

**Description**

the Brady Law (825.02 KB)

of the Brady law.

Open Letter Federal Firearms Licensees Ready Ability (237.83 KB)

The purpose of this open letter is to remind all Federal firearms licensees (FFL) of their ready ability to enhance public safety and assist law enforcement by encouraging and facilitating transfers of firearms between private individuals through their businesses.

Oregon-Dec2000-Open Letter-Notice of Amendment for All Oregon Firearms Background Checks (100.58 KB)

The provision of Oregon State law regarding all firearms background checks was recently amended. Effective December 8, 2000, the Oregon State Police will act as the point of contact for all firearms background checks (handguns and long guns).

Oregon-Nov1998 Open Letter-Permanent Provisions of the Brady Law (913.1 KB)

The purpose of this letter is to advise Federal firearms licensees in Oregon of their responsibilities under the permanent provisions of the Brady law.

Pennsylvania-Dec2005-Open Letter-Private Transfers of Firearms and Using NICS or the Pennsylvania Instant Check System (PICS) (36.62 KB)

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has received questions from firearms dealers in Pennsylvania concerning the use of the National Instant Criminal Background Check System (NICS)/Pennsylvania Instant Check System (PICS) to do background checks of people who are acquiring firearms from other nonlicensees in what are commonly called "private transfers."

« FIRST   ‹ PREVIOUS   1   2   3   4   5   6   7   8   NEXT ›   LAST »

## Email Updates

Subscribe to receive news and update from the Bureau of Alcohol, Tobacco, Firearms and Explosives

*Enter Email Address

Submit

ATF Supp 000193

| Title▲ | Description |
|---|---|
| Pennsylvania-Oct1998-Open Letter-Permanent Provisions of the Brady Law (779.65 KB) | The purpose of this letter is to advise Federal firearms licensees in Pennsylvania of their responsibilities under the permanent provisions of the Brady law. |
| Public Advisory to All Michigan FFLs 03-03-20 (566.92 KB) | The purpose of this public safety advisory is to advise all Michigan federal firearms licensees (FFLs) of an important change to the procedure they must follow to comply with the Brady Handgun Violence Prevention Act (Brady law), 18 U.S.C. § 922(t), when transferring a firearm to an unlicensed person. |
| Puerto Rico-Oct1998-Open Letter-Permanent Provisions of the Brady Law (68.14 KB) | Open Letter to All FFL's regarding Brady Law. |
| Rhode Island-Oct1998-Open Letter-Permanent Provisions of the Brady Law (647.67 KB) | The purpose of this letter is to advise Federal firearms licensees in Rhode Island of their responsibilities under the permanent provisions of the Brady law. |
| South Carolina-Aug2008-Open Letter-Amendment to South Carolina Law Prohibiting Handgun Sales to Persons Under Eighteen Years of Age (103.51 KB) | The purpose of this letter is to advise you that the recent amendment to Section 16-23-30, Code of Laws of South Carolina, 1976, relating to the unlawful sale of handguns to certain person, so as to prohibit the sale of a handgun to persons under eighteen years of age rather than under twenty-one years of age has no effect on Federal firearms laws and regulations. |
| South Carolina-Dec1998-Open Letter-Correction Notice-Change to South Carolina Background Check Procedures (144.25 KB) | This correction notice provides information regarding a change in the background check procedures for firearms transfers by all South Carolina Federal firearms licensees (FFLs). |
| South Carolina-Nov1998-Open Letter-Permanent Provisions of the Brady Law (44.91 KB) | The purpose of this letter is to advise Federal firearms licensees in South Carolina of their responsibilities under the permanent provisions of the Brady law. |
| South Carolina-Sept1999-Open Letter-Notice of Amendment-South Carolina Ceases Operations as NICS Point of Contact (97.26 KB) | The South Carolina Law Enforcement Division has now notified ATF and the Federal Bureau of Investigation (FBI) that they will cease operations as the NICS point of contact on September 30, 1999. Therefore, beginning October 1, 1999, in order to initiate a NICS check for any firearm, South Carolina licensees must contact the FBI's NICS Operations Center |

| Title▲ | Description |
|---|---|
| South Dakota-Feb2017-Open Letter-South Dakota's Gold Card Concealed Pistol Permit and Enhanced Permit to Carry a Concealed Pistol (33.24 KB) | The purpose of this letter is to advise South Dakota Federal Firearms Licensees regarding ATF's determination of the South Dakota's Gold Card Concealed Pistol Permit and Enhanced Permit to Carry a Concealed Pistol as alternatives to the background check. |
| South Dakota-March 2021-Open Letter-Regular Concealed Carry Permit as NICS Alternative (205.68 KB) | A South Dakota Regular Concealed Carry Permit, issued on or after July 1, 2018, can be used as an alternative to the required NICS background check. |
| South Dakota-Oct1998-Open Letter-Permanent Provisions of the Brady Law (43.5 KB) | The purpose of this letter is to advise Federal firearms licensees in South Dakota of their responsibilities under the permanent provisions of the Brady law. |
| Tennessee-July2009-Open Letter-Passage of the Tennessee Firearms Freedom Act (73.33 KB) | The purpose of this open letter is to provide guidance on your obligations as a Federal firearms licensee ("FFL") with respect to the the passage of the Tennessee Firearms Freedom Act that took effect on June 19, 2009. |
| Tennessee-Oct1998 Open Letter-Permanent Provisions of the Brady Law (460.96 KB) | The purpose of this letter is to advise Federal firearms licensees in Tennessee of their responsibilities under the permanent provisions of the Brady law. |
| Texas Open Letter - HB 957 (219.77 KB) | The passage of Texas House Bill 957 (HB957), with an effective date of September 1, 2021, has generated questions from industry members as to how this state law may affect them while engaged in a firearms business activity. HB957 claims to exempt silencers (also known as suppressors) that are manufactured in Texas, and which remain in Texas, from Federal firearms laws and regulations, including the federal registration requirements. However, because HB957 directly conflicts with federal firearms laws and regulations, federal law supersedes HB957. In summary, all provisions of the Gun Control Act (GCA) and the National Firearms Act (NFA), including their corresponding regulations, continue to apply to FFLs and other persons in Texas. |
| Texas-Oct1998-Open Letter-Permanent Provisions of the Brady Law (873.25 KB) | The purpose of this letter is to advise Federal firearms licensees in Texas of their responsibilities under the permanent provisions of the Brady law. |
| Tribal Law Enforcement-July2006-Open Letter-Misdemeanor Crime of | This letter is to provide information to tribal law enforcement departments regarding the Omnibus Consolidation Appropriations Act of 1997. This Act made it unlawful for any person convicted of a misdemeanor crime of domestic violence (MCDV) to ship, transport, possess, or receive firearms or ammunitions. |

**Title** ▲                     **Description**

Domestic Violence
(374.84 KB)

⬜ Utah-Oct1998-Open
Letter-Permanent                The purpose of this letter is to advise Federal firearms licensees in Utah of
Provisions of the Brady         their responsibilities under the permanent provisions of the Brady law.
Law (800.39 KB)

⬜ Vermont - March               Changes to Vermont Law, 13 Vermont Statutes Annotated (V.S.A.) § 4019,
2023 - Open Letter -            effective July 1, 2022, have generated questions from Vermont FFLs. This
Changes to Vermont              letter alerts Vermont FFLs to the recent changes in Vermont law and provides
Law 13 V.S.A. § 4019            guidance to ensure Vermont FFLs remain in compliance.
(178.29 KB)

⬜ Vermont-Dec2000-              The State of Vermont has advised us that effective February 1, 2002, it will no
Open Letter-Notice of           longer act as a point of contact for NICS checks. In the absence of any
Amendment for                   further Vermont legislation, the Federal Bureau of Investigation (FBI) will
Vermont Firearms                assume responsibility for conducting NICS checks for firearms transactions in
Background Checks               Vermont on February 1, 2002.
(734.05 KB)

⬜ Vermont-Oct1998-              The purpose of this letter is to advise Federal firearms licensees in Vermont of
Open Letter-Permanent           their responsibilities under the permanent provisions of the Brady law.
Provisions of the Brady
Law (637.13 KB)

⬜ Virgin Islands-
Oct1998-Open Letter-            The purpose of this letter is to advise Federal firearms licensees in the U.S.
Permanent Provisions of         Virgin Islands of their responsibilities under the permanent provisions of the
the Brady Law (49.88            Brady law.
KB)

⬜ Virgin Islands-               This open letter informs Federal firearms licensees in the U.S. Virgin Islands
Oct2005-Open Letter-            that the U.S. Virgin Islands Firearms Permits no longer qualifies as an
U.S. Virginia Islands           alternative to a National Instant Criminal Background Check System (NICS)
Firearms Permits No             check.
Longer Alternative to
NICS Check (38.76 KB)

⬜ Virginia-Oct1998-             The purpose of this letter is to advise Federal firearms licensees in Virginia of
Open Letter-Permanent           their responsibilities under the permanent provisions of the Brady law.
Provisions of the Brady
Law (731.39 KB)

⬜ Washington-
Nov2003-Open Letter-            The open letter is to inform all Washington State Federal firearms licensees
Washington Concealed            that as of November 30, 2003, all the grandfathered permits will have expired
Weapons Permits are No          and Washington FFLs may longer accept a Washington concealed weapons
Longer Valid Alternative        permit as an alternative to a NICS check.
to NICS Checks (144.67
KB)

ATF Supp 000196

**Title▲**      **Description**

Washington-
Oct1998 Open Letter-      The purpose of this letter is to advise Federal firearms licensees
Permanent Provisions of      in Washington of their responsibilities under the permanent provisions of the
the Brady Law (93.44      Brady law.
KB)

« FIRST    ‹ PREVIOUS    1    2    3    4    5    6    7    8    NEXT ›    LAST »

## Email Updates

Subscribe to receive news and update from the Bureau of Alcohol, Tobacco, Firearms and Explosives

*Enter Email Address

Submit

# Firearms Open Letters



**Title ▲**

**Description**

📄 West Virginia-Jun2014-Open Letter-West Virginia's Concealed Handgun Licenses (CHLs) as Alternative to NICS Checks (52.11 KB)

The purpose of this open letter is to provide guidance regarding the West Virginia's Concealed Handgun Licenses (CHLs) issued on or after June 4, 2014 as an alternative to the National Instant Criminal Background Check System (NICS) check.

📄 West Virginia-Jun2016-Open Letter - To All West Virginia FFLs regarding HB4145 (44.01 KB)

The purpose of this open letter is to provide guidance concerning West Virginia House Bill (HB) 4145 as it concerns the provisional licenses made eligible to West Virginia residents aged 18-20.

📄 West Virginia-Oct1998-Open Letter-Permanent Provisions of the Brady Law (83.5 KB)

The purpose of this letter is to advise Federal firearms licensees in West Virginia of their responsibilities under the permanent provisions of the Brady law.

📄 Wisconsin-Oct1998-Open Letter-Permanent Provisions of the Brady Law (694.71 KB)

The purpose of this letter is to advise Federal firearms licensees in Wisconsin of their responsibilities under the permanent provisions of the Brady law.

📄 Wyoming-Oct1998-Open Letter-Permanent Provisions of the Brady Law (771.91 KB)

The purpose of this letter is to advise Federal firearms licensees in Wyoming of their responsibilities under the permanent provisions of the Brady law.

« FIRST   ‹ PREVIOUS   1   2   3   4   5   6   7   8

**Email Updates**

Subscribe to receive news and update from the Bureau of Alcohol, Tobacco, Firearms and Explosives

＊*Enter Email Address*

Submit

ATF Supp 000198

**SER-320**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

*Office of Enforcement Programs and Services*

September 27, 2022

Washington, DC 20226
www.atf.gov

## OPEN LETTER TO ALL FEDERAL FIREARMS LICENSEES

### Impact of Final Rule 2021-05F on Partially Complete AR-15/M-16 Type Receivers

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is issuing this open letter to further assist the firearms industry and the public in understanding whether a "partially complete, disassembled, or nonfunctional" receiver of an AR-15/M-16 variant weapon has reached a stage of manufacture such that it "may readily be completed, assembled, restored, or otherwise converted" to a functional receiver, and is therefore classified as a "**frame or receiver**" or "**firearm**" in accordance with the final rule titled "Definition of 'Frame or Receiver' and Identification of Firearms (Final Rule 2021R-05F), which became effective August 24, 2022. In particular, the following addresses items that are clearly identifiable as an unfinished component part of a weapon—specifically, partially complete, disassembled, or nonfunctional AR-type receivers (also known as receiver 'billets' or 'blanks').

**Summary**

As stated in Final Rule 2021-05F and the regulatory text, a partially complete AR-type receiver with no indexing or machining of any kind performed in the area of the fire control cavity is not classified as a "**frame or receiver**" or "**firearm**" provided that it is not sold, distributed, or marketed with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit. 27 CFR 478.12(c), Example 4. Consistent with Final Rule 2021R-05F and the regulatory text, ATF is providing the visual aids below to further illustrate the section of an "unfinished" item that, with further manufacture, machining, or processing, will constitute the "fire control cavity;" the second set of visual aids illustrates the stage of manufacture or machining at which that item becomes a receiver as defined in Final Rule 2021R-05F.

**Background**

The Gun Control Act (GCA) defines the term "**firearm**" as: *"...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."* 18 U.S.C. § 921(a)(3). The GCA implementing regulations now define the terms "frame" and "receiver" by describing a single housing or structural component for one specific

ATF Supp 000199

2

fire control component of a given weapon—for example, a single housing is specified for particular weapons such as a "handgun" and a "rifle." 27 CFR 478.12(a). Moreover, 27 CFR 478.12(f)(1) also provides that the terms "frame" and "receiver" "shall include the specific part of a complete weapon … determined (classified) by the Director to be defined as a firearm frame or receiver prior to April 26, 2022." As explicitly set out in the regulations, 27 CFR 478.12(f)(1)(i), for AR-15/M-16 variant firearms, "[t]he receiver is the lower part of the weapon that provides housing for the trigger mechanism and hammer (*i.e.*, lower receiver)."

A current regulation, 27 CFR 478.12(c), explains when a clearly identifiable component of a weapon that is partially complete, disassembled, or nonfunctional is a **"frame"** or **"receiver"**:

> *The terms 'frame' and 'receiver' shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit.*

Sections 478.11 and 479.11 also define **"readily"** as:

> *A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
>
> *(a) Time, i.e., how long it takes to finish the process;*
> *(b) Ease, i.e., how difficult it is to do so;*
> *(c) Expertise, i.e., what knowledge and skills are required;*
> *(d) Equipment, i.e., what tools are required;*
> *(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
> *(f) Expense, i.e., how much it costs;*
> *(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
> *(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction.*

The above list of factors is a non-exhaustive list, but represents factors that have been identified by Federal courts as being relevant to a "**readily**" analysis with respect to firearms.

ATF Supp 000200

3

## Analysis

There are many partially complete, disassembled, or nonfunctional AR-type "receivers" being marketed as so-called "80%" receivers. However, Federal firearms statutes and supplemental regulations do not employ terms such as "80%," "80% finished," or "80% complete." These are merely terms used by some to market these items; they are not based upon application of the term "**readily**" in the GCA or Final Rule 2021-05F. As used in the GCA and the Final Rule, the term "readily" does not involve evaluation of a percentage of completion for an item that, when completed, will function as a frame or receiver. Rather, the analysis examines how efficiently, quickly, and easily a clearly identifiable component part of a weapon can be completed, assembled, restored, or otherwise converted to house or provide a structure for the applicable fire control component.

In an AR-15 variant weapon, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, is therefore a crucial step in producing a functional receiver.

Thus, in order <u>not</u> to be considered "**readily**" completed to function, ATF has determined that a partially complete AR-type receiver must have no indexing or machining of any kind performed in the area of the trigger/hammer (fire control) cavity. <u>A partially complete AR-type receiver with no indexing or machining of any kind performed in the area of the fire control cavity is not classified as a "**receiver**," or "**firearm**," if not sold, distributed, or marketed with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit</u>.



**(if not sold, distributed, or marketed with any associated templates, jigs, molds, equipment, tools, instructions, or guides)**

ATF Supp 000201

4



**(if not sold, distributed, or marketed with any associated templates, jigs, molds, equipment, tools, instructions, or guides)**

Because the front of the takedown-pin lug clearance area merges with the back of the fire control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown-pin lug clearance area stops, and the fire control cavity begins. ATF has determined that drilling or milling a standard 0.800-inch takedown-pin area, measured from immediately forward of the front of the buffer retainer hole next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas having been indexed, machined, or formed"* as stated in 27 CFR 478.12(c), Example 4.

The following illustration demonstrates the fire control cavity of an AR-type receiver:



5



6

**However**, the above analysis only applies to partially complete, disassembled, or nonfunctional frames or receivers without any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials. Pursuant to Final Rule 2021R-05F, partially complete, disassembled, or nonfunctional frames or receivers that are sold, distributed, possessed with such items (or made available by the seller or distributor to the same person) may change the analysis, including those distributed as frame or receiver parts kits. 27 CFR 478.12(c). For example, jigs, templates, or instructions can provide the same indexing as if it were placed directly on the unfinished frame or receiver.



**Firearm**



**Firearm**

ATF Supp 000204

7

It is important that persons engaged in the business of manufacturing, importing, or dealing in these items do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), and other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371).

Further, although unfinished frames or receivers that do not meet the definition of a "firearm" are not subject to regulation under GCA provisions, they are still considered "defense articles" on the U.S. Munitions Import List and, therefore, require an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and are also subject to export controls.[1]

This information is provided to assist the firearms industry and general public in understanding whether a partially complete AR-type receiver has reached the stage of manufacture where it is classified as a "receiver" or "firearm." If persons remain unclear with respect to a specific model or configuration, they can voluntarily submit a request, under penalty of perjury, with a sample to ATF in accordance with 27 CFR 478.92(c) (GCA) or 479.102(c) (NFA). If you have any questions, please contact the Firearms & Ammunition Technology Division at fire_tech@atf.gov or (304) 616-4300.

<table>
<tr><td>Acting Assistant Director</td><td>Acting Assistant Director</td></tr>
<tr><td>Enforcement Programs and Services</td><td>Field Operations</td></tr>
</table>

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:RRB
3311/313696

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term **"frame or receiver"** in 27 CFR §
478.12.



**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the
submitted partially complete AR-type receiver is not a **"firearm"** as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted. This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed. The classification does not apply if any
templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold,
distributed, possessed with the item, or otherwise made available by the seller or distributor of
the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would
require a separate and complete submission encompassing any such material in order to provide
a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000221

- 2 -

313696

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
  *(a) Time, i.e., how long it takes to finish the process;*
  *(b) Ease, i.e., how difficult it is to do so;*
  *(c) Expertise, i.e., what knowledge and skills are required;*

ATF Supp 000222

- 3 -

313696

(a) Equipment, i.e., what tools are required;

(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;

(f) Expense, i.e., how much it costs;

(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and

(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."

**Evaluation:**

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000223

- 4 -

313696

Results of the FTISB evaluation of the submission, are as follows:

**Submission**





**Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Accordingly, FTISB finds that the submitted sample, alone, is not a "**firearm**" as defined by the GCA.



**Takedown pin clearance recess of submission does not exceed .800 inch in length**

- 5 -

313696

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is <u>not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3)</u>.

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

<u>It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371)</u>. Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,
Digitally signed by
Daniel Hoffman
Date: 2022.10.06
08:38:08 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:JWM
3311/315876

**October 6, 2022**



:

This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term **"frame or receiver"** in 27 CFR §
478.12.

, **Submission**



FTISB has determined that the submitted sample, may "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, even taken alone,
the submitted partially complete AR-type receiver is a **"firearm"** as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted.

ATF Supp 000233

- 2 -

315876

## Background:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
> *(a) Time, i.e., how long it takes to finish the process;*
> *(b) Ease, i.e., how difficult it is to do so;*
> *(c) Expertise, i.e., what knowledge and skills are required;*
> *(a) Equipment, i.e., what tools are required;*

ATF Supp 000234

- 3 -

315876

*(ε) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*

*(f) Expense, i.e., how much it costs;*

*(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*

*(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000235

- 4 -

315876

Results of the FTISB evaluation of the submission, are as follows:



**, Submission**



**, Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item **does measure more than .800 inch immediately forward of the front of the buffer retainer hole (.850 inch)**. Accordingly, FTISB finds that the submitted sample, even alone, **is a "firearm"** as defined in the GCA.



0.85

**Takedown pin clearance recess exceeds .800 inch in length (0.85 inch)**

ATF Supp 000236

- 5 -

315876

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted partially complete AR-type receiver is a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. The partially completed receiver, without any additional materials, which you submitted has been classified as a "firearm." Therefore, all laws and regulations that apply to firearms are fully applicable to this item, whether sold or marketed alone or as part of any other kit of package of materials.

It is important that persons engaged in the business of manufacturing, importing, or dealing in this item do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms, such as the one you submitted, must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a **"defense article"** on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.06
08:49:21 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:NKC
3311/315916

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your submitted sample of one partially complete AR-type receiver. Specifically, you requested an evaluation and classification of the submitted sample under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August 24, 2022, which amended the regulatory definition of the term **"frame or receiver"** in 27 CFR § 478.12.

**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the submitted partially complete AR-type receiver is not a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000238

- 2 -

315916

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
> *(a) Time, i.e., how long it takes to finish the process;*
> *(b) Ease, i.e., how difficult it is to do so;*
> *(c) Expertise, i.e., what knowledge and skills are required;*

- 3 -

315916

(a) Equipment, i.e., what tools are required;
(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;
(f) Expense, i.e., how much it costs;
(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and
(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire-control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

- 4 -

315916

Results of the FTISB evaluation of the submitted "partially complete" AR-type receiver sample, are as follows:

 **Submission**





**Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed .800 inch in length**

ATF Supp 000241

**SER-341**

- 5 -

315916

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a **"defense article"** on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,
Digitally signed by
Daniel Hoffman
Date: 2022.10.06
13:26:58 -04'00'
Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
*www.atf.gov*

907010:JWM
3311/316248

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your submitted sample of one partially complete AR10-type receiver. Specifically, you requested an evaluation and classification of the submitted sample under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August 24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR § 478.12.

**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the submitted partially complete AR10-type receiver is <u>not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3)</u>. Please note this classification only applies to the sample itself, precisely as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000243

- 2 -

316248

## Background:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates *"the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)"* as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
   *(a) Time, i.e., how long it takes to finish the process;*
   *(b) Ease, i.e., how difficult it is to do so;*
   *(c) Expertise, i.e., what knowledge and skills are required;*

ATF Supp 000244

- 3 -

316248

(a) *Equipment, i.e., what tools are required;*
(e) *Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
(f) *Expense, i.e., how much it costs;*
(g) *Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
(h) *Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below / 1.600 inch for AR10-types) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area (1.600 inch for AR10-types), measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000245

**SER-345**

- 4 -

316248

Results of the FTISB evaluation of the submitted "partially complete" AR10-type receiver sample, are as follows:

**Submission**





**Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than 1.600 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed 1.600 inch in length**

ATF Supp 000246

**SER-346**

- 5 -

316248

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by Daniel Hoffman
Date: 2022.10.06 13:44:43 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
*www.atf.gov*

907010:DLH
3311/316300

**December 27, 2022**



:

This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample            partially complete striker-fired semiautomatic, striker-
fired pistol frame (sometimes generally referred to as "Glock-type"), produced by
                                     Applying the regulatory text of the
final rule titled *Definition of 'Frame or Receiver' and Identification of Firearms* (Final Rule
2021-05F), partially complete         model frames, including, but not limited to those sold
within parts kits, have reached a stage of manufacture where they "*may readily be completed,
assembled, restored, or otherwise converted*" to a functional frame. Therefore, *even without* any
associated templates, jigs, molds, equipment, tools, instructions, or guides, these partially
complete pistol frames are "**frames**" and also "**firearms**" as defined in the Gun Control Act
(GCA) and its implementing regulations, 18 U.S.C. § 921(a)(3)(B) and 27 CFR 478.12(a)(1), (c).



**Submission - FIREARM**

ATF Supp 000248

- 2 -

316300

### Background:

The GCA defines the term "**firearm**" as: "*...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.*" 18 U.S.C. § 921(a)(3) (emphasis added). The GCA implementing regulations define the terms "**frame**" and "**receiver**" by describing a single housing or structural component for one specific fire control component of a given weapon—for example, a single housing is specified for particular weapons such as a "handgun" and a "rifle."  27 CFR 478.12(a).

The GCA implementing regulations define the term "**frame**" as "*the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.* 27 CFR § 478.12(a)(1).

Further, 27 CFR § 478.12(c) explains when a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, is regulated as a "**frame**" or "**receiver**:"

*The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

Lastly, 27 CFR § 478.11 defines the term "**readily**" as: "*A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*

*(a) Time, i.e., how long it takes to finish the process;*
*(b) Ease, i.e., how difficult it is to do so;*
*(c) Expertise, i.e., what knowledge and skills are required;*
*(a) Equipment, i.e., what tools are required;*
*(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*

ATF Supp 000249

- 3 -

316300

*(f) Expense, i.e., how much it costs;*
*(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
*(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

███████ manufacturers a partially complete frame modeled after, and compatible with, components for Glock pistols. The ███████ is a modified version of the Glock 19 / Glock 23 compact semiautomatic pistol and utilizes Glock or Glock-type components to complete the assembly of the weapon.

FTISB evaluation identified that the subject ███████ partially complete frame has the following features:

- External and internal contours appear to be complete
- Steel serial number plate insert imbedded into frame in a manner to be marked as required under 27 CFR § 478.92
- Magazine well finished
- Finished clearances to house magazine catch
- Finished channel and contours for magazine catch spring
- Rear of grip finished to receive backstrap insert
- Trigger guard completed
- Trigger clearance into trigger guard area
- Dust cover adapter for differing size slide lugs
- Cavities fully formed for slide lock springs (both coil and flat type)
- Housing and clearance for the slide lock lever complete
- Contours and clearances for the slide stop lever complete
- Interior channel of dust cover partially formed
- Clearances for the trigger bar complete
- Trigger cavity formed
- Recess fully formed for trigger mechanism housing
- Recess for the locking block partially formed
- Recess for rail inserts fully formed

In the semiautomatic, striker-fired pistol described above, the critical areas of the "**frame**" are the front and rear fire control cavities. The front and rear cavities are critical because these areas provide housing for the sear. *See* 27 CFR 478.12(a)(1), (a)(4)(iii). As further explained and illustrated below, removing or indexing any material in these critical areas, or completing or indexing any of the pin holes necessary to install the sear, are therefore crucial steps in producing a functional frame.

ATF Supp 000250

- 4 -

316300



**In a pistol based on a Glock design, the trigger is housed in the front fire control cavity, and the sear, which is connected by the trigger bar, is located in the rear cavity**



**For reference, in a pistol based on a Glock design, the trigger bar assembly contains the sear.  The trigger bar assembly operates as a single unit**



**Unmodified** ███████████ **and Glock-type Fire Controls Components**

ATF Supp 000251

- 5 -

███████████                                                               316300

███████████ partially complete frame contains fully formed front and rear cavities for the trigger, trigger bar, and trigger mechanism housing. These components are critical features to these semiautomatic pistols, as discussed above. Any partially formed or indexed hole or recess is relevant, even if unfinished, because such forming or indexing facilitates the completion of this feature and reduces the time, expertise, equipment, and expense needed to make the unfinished item functional.



**Front Cavity-Locking Block Recess (Left) and
Rear Cavity-Trigger Mechanism Housing Recess (Right)**

The FTISB evaluation determined that due to the cavities for the trigger and trigger mechanism housing being fully formed, the submitted ███████████ frame has the ability to accept the complete trigger mechanism (including sear) – **with no further modifications**.



**Unmodified ███████████ Frame**

ATF Supp 000252

- 6 -

316300



**Unmodified** ▆▆▆ **Frame with Glock-type Fire Controls Components installed**



**Unmodified** ▆▆▆ **Frame with Glock-type Fire Controls Components installed**

In your correspondence to FTISB, you state: "▆▆▆ *lacks critical machining operations thereby requiring the end user to perform essential machining themselves. Specifically, the* ▆▆▆ *requires* **significant** *after purchase* **machining**, *drilling, gluing, etc., all of which takes* **significant time** *prior to the completion of a firearm.*"

The front and rear cavities were already fully formed, as were the recesses for slide rail inserts, and therefore, as shown below, FTISB completed the ▆▆▆ partially complete frames by removing the locking block plug and small polymer obstructions, drilling of the six pin holes with common tools, gluing the front and rear rails in place, and inserting the rail caps, to assemble a weapon capable of expeling a projectile by action of an explosive, with completion times of less than 10 minutes using Glock-type parts, an amount of time and a set of circumstances that are far less than required to fall within the meaning of the term "readily" in the Final Rule. These parts are not regulated and are readily available. This completion process therefore required *neither* significant machining nor time.

ATF Supp 000253

- 7 -

316300



**Polymer obstructions removed with pliers**



**Jig placed on frame and holes drilled**



**Recesses for slide rail inserts permit rails to be glued in place**

ATF Supp 000254

- 8 -

316300



**assembled with Glock 19 components into fully functional firearm**

**Conclusion**:

Based on the above, the partially complete                    frame, with any kind of indexing or material removed from the front or rear fire control cavities for installation of the trigger mechanism and sear, has reached a stage of manufacture where it "*may readily be completed, assembled, restored, or otherwise converted*" to function as a firearm frame. As examined, it is classified as a "**frame**" and also a "**firearm**," as defined in the GCA, 18 U.S.C. § 921(a)(3)(B), and implementing regulations, 27 CFR 478.12(a)(1), (c). It is classified as a firearm even if it is not sold, distributed, marketed, or possessed with any associated templates, jigs, molds, equipment, tools, instructions, or guides. While the analysis allows for the consideration of how a partially complete frame is, directly or indirectly, sold, distributed, marketed, or possessed, directly or indirectly, with any associated templates, jigs, molds, equipment, tools, instructions, or guides, or marketing materials, for these partially complete frames such analysis was not necessary because they are, by themselves, "frames" and "firearms" as defined in the GCA.

It is important that persons engaged in the business of manufacturing, importing, or dealing in this item do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms, such as the one you submitted, must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, serialization, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.

- 9 -

316300

Please note this classification only applies to the sample ████████ evaluated above. ATF has classified these items under its own regulatory authority. Please note that you must comply with the Final Rule whether or not you have submitted or received a specific classification with respect to any item. You are free to submit any additional item to ATF for voluntary classification pursuant to 27 CFR 478.92(c).

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.12.27
12:55:01 -05'00'
Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:JWM
3311/317036

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR §
478.12.


**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the
submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted. This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed. The classification does not apply if any
templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold,
distributed, possessed with the item, or otherwise made available by the seller or distributor of
the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would
require a separate and complete submission encompassing any such material in order to provide
a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000273

- 2 -

███████████                                                      317036

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.*
*(2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be.  The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., an unformed block of metal, liquid polymer, or other raw material).  When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state.  With respect to the classification of firearms, factors relevant in making this determination include the following:*
    *(a) Time, i.e., how long it takes to finish the process;*
    *(b) Ease, i.e., how difficult it is to do so;*
    *(c) Expertise, i.e., what knowledge and skills are required;*

ATF Supp 000274

- 3 -

317036

*(a) Equipment, i.e., what tools are required;*
*(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
*(f) Expense, i.e., how much it costs;*
*(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
*(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000275

- 4 -

317036

Results of the FTISB evaluation of the submitted "partially complete" AR-type receiver sample, are as follows:



**Submission**



**Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not intrude more than .800 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed .800 inch in length**

ATF Supp 000276

- 5 -

█████████████                                                    317036

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.06
13:51:59 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc: ████████████████████████████████████████

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
*www.atf.gov*

907010:JWM
3311/318400

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your submitted sample of one partially completeAR10-type receiver. Specifically, you requested an evaluation and classification of the submitted sample under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August 24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR § 478.12.


**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the submitted partially complete AR10-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000318

- 2 -

318400

## Background:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be.  The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material).  When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state.  With respect to the classification of firearms, factors relevant in making this determination include the following:*
*(a) Time, i.e., how long it takes to finish the process;*
*(b) Ease, i.e., how difficult it is to do so;*
*(c) Expertise, i.e., what knowledge and skills are required;*

ATF Supp 000319

- 3 -

318400

*(a) Equipment, i.e., what tools are required;*

*(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*

*(f) Expense, i.e., how much it costs;*

*(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*

*(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

## Evaluation:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, <u>a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below / 1.600 inch for AR10-types) will be examined to ascertain if it can</u> "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is <u>not classified as a</u> "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, <u>marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.</u>

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area (1.600 inch for AR10-types), measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000320

- 4 -

318400

Results of the FTISB evaluation of the submission, are as follows:

**Submission**





**"partially complete" AR10-type receiver (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than 1.600 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed 1.600 inch in length**

ATF Supp 000321

- 5 -

███████████                                              318400

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted partially complete AR-type receiver is a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. The partially completed receiver, without any additional materials, which you submitted has been classified as a "firearm." Therefore, all laws and regulations that apply to firearms are fully applicable to this item, whether sold or marketed alone or as part of any other kit of package of materials.

It is important that persons engaged in the business of manufacturing, importing, or dealing in this item do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms, such as the one you submitted, must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a **"defense article"** on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.06
15:16:02 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:   ███████████████████████████████████████████████

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
*www.atf.gov*

907010:JWM
3311/320538

**October 6, 2022**



:

This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver.  Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term **"frame or receiver"** in 27 CFR §
478.12.


**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver."  Therefore, taken alone, the
submitted partially complete AR-type receiver is not a **"firearm"** as defined in the GCA, 18
U.S.C. § 921(a)(3).  Please note this classification only applies to the sample itself, precisely as
submitted.  This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed.  The classification does not apply if any
templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold,
distributed, possessed with the item, or otherwise made available by the seller or distributor of
the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c).  ATF would
require a separate and complete submission encompassing any such material in order to provide
a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000323

- 2 -

320538

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
*(a) Time, i.e., how long it takes to finish the process;*
*(b) Ease, i.e., how difficult it is to do so;*
*(c) Expertise, i.e., what knowledge and skills are required;*

ATF Supp 000324

- 3 -

320538

*(a) Equipment, i.e., what tools are required;*

*(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*

*(f) Expense, i.e., how much it costs;*

*(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*

*(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation:**

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver,**" or "**firearm,**" that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000325

- 4 -

320538

Results of the FTISB evaluation of the submission, are as follows:

**Submission**



**Submission (top view)**



The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed .800 inch in length**

ATF Supp 000326

**SER-370**

- 5 -

320538

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a **"defense article"** on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.06
17:05:36 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
*www.atf.gov*

907010:JWM
3311/320540

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your submitted sample of one partially complete AR-type receiver. Specifically, you requested an evaluation and classification of the submitted sample under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August 24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR § 478.12.


**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

- 2 -

320540

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; **(B) the frame or receiver of any such weapon;** (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.*
*(2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
    *(a) Time, i.e., how long it takes to finish the process;*
    *(b) Ease, i.e., how difficult it is to do so;*
    *(c) Expertise, i.e., what knowledge and skills are required;*

ATF Supp 000329

- 3 -

320540

*(a) Equipment, i.e., what tools are required;*
*(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
*(f) Expense, i.e., how much it costs;*
*(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
*(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation:**

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000330

- 4 -

320540

Results of the FTISB evaluation of the submission, are as follows:

**Submission**





**Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed .800 inch in length**

ATF Supp 000331

**SER-375**

- 5 -

320540

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a **"defense article"** on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.06
17:05:50 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:JWM
3311/320542

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your submitted sample of one partially complete AR-type receiver. Specifically, you requested an evaluation and classification of the submitted sample under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August 24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR § 478.12.


**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000333

- 2 -

320542

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; **(B) the frame or receiver of any such weapon;** (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
*(a) Time, i.e., how long it takes to finish the process;*
*(b) Ease, i.e., how difficult it is to do so;*
*(c) Expertise, i.e., what knowledge and skills are required;*

ATF Supp 000334

- 3 -

320542

*(a) Equipment, i.e., what tools are required;*
*(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
*(J) Expense, i.e., how much it costs;*
*(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
*(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000335

- 4 -

320542

Results of the FTISB evaluation of the submission, are as follows:

**Submission**



**Submission (top view)**



The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed .800 inch in length**

ATF Supp 000336

**SER-380**

- 5 -

320542

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a **"defense article"** on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,
Digitally signed by
Daniel Hoffman
Date: 2022.10.06
17:06:04 -04'00'
Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
*www.atf.gov*

907010:NKC
3311/321010

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your submitted sample of one partially complete AR-type receiver with upper assembly, buttstock, and grip. Specifically, you requested an evaluation and classification of the submitted sample under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August 24, 2022, which amended the regulatory definition of the term **"frame or receiver"** in 27 CFR § 478.12.

<u>**Submission**</u>





FTISB has determined that the submitted sample, may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the submitted partially complete AR-type receiver is <u>not a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3)</u>. Please note this classification only applies to the sample itself, precisely as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000348

- 2 -

321010

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.*
*(2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be.  The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacure where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material).  When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state.  With respect to the classification of firearms, factors relevant in making this determination include the following:*
　　*(a) Time, i.e., how long it takes to finish the process;*
　　*(b) Ease, i.e., how difficult it is to do so;*
　　*(c) Expertise, i.e., what knowledge and skills are required;*

ATF Supp 000349

- 3 -

321010

*(a) Equipment, i.e., what tools are required;*
*(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
*(f) Expense, i.e., how much it costs;*
*(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
*(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

<u>Evaluation</u>:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, <u>a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver."</u> We note that even when a sample is <u>not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.</u>

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

- 4 -

321010

Results of the FTISB evaluation of the submission, are as follows:

 **Submission**



**Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed .800 inch in length**

Case 3:20-cv-06761-EMC   Document 179-1   Filed 09/28/23   Page 352 of 357

- 5 -

321010

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a **"defense article"** on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,
Digitally signed by
Daniel Hoffman
Date: 2022.10.06
17:11:02 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
*www.atf.gov*

907010:RRB
3311/321122

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your submitted sample of one partially complete AR-type receiver. Specifically, you requested an evaluation and classification of the submitted sample under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August 24, 2022, which amended the regulatory definition of the term **"frame or receiver"** in 27 CFR § 478.12.



**Submission**

FTISB has determined that the submitted sample, may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the submitted partially complete AR-type receiver is not a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000353

- 2 -

321122

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.*
*(2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
    *(a) Time, i.e., how long it takes to finish the process;*
    *(b) Ease, i.e., how difficult it is to do so;*
    *(c) Expertise, i.e., what knowledge and skills are required;*

ATF Supp 000354

- 3 -

321122

*(a) Equipment, i.e., what tools are required;*
*(ε) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
*(f) Expense, i.e., how much it costs;*
*(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
*(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation:**

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

- 4 -

321122

Results of the FTISB evaluation of the submission, are as follows:

**Submission**



**Submission (top view)**



The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole.  Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed .800 inch in length (not present)**

**SER-390**

- 5 -

█████████                                                                          321122

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.06
17:15:25 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc: ████████████████████████████████████████████████████████

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:JWM
3311/321194

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR §
478.12.

**▇▇▇▇ Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the
submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted. This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed. The classification does not apply if any
templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold,
distributed, possessed with the item, or otherwise made available by the seller or distributor of
the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would
require a separate and complete submission encompassing any such material in order to provide
a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000363

- 2 -

321194

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: "...*(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.*"

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: "*(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.*"

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower <u>receiver</u>)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: "*The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit.*"

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: "*A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
    *(a) Time, i.e., how long it takes to finish the process;*
    *(b) Ease, i.e., how difficult it is to do so;*
    *(c) Expertise, i.e., what knowledge and skills are required;*"

ATF Supp 000364

- 3 -

321194

(a) Equipment, i.e., what tools are required;

(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;

(f) Expense, i.e., how much it costs;

(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and

(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000365

- 4 -

321194

Results of the FTISB evaluation of the submission, are as follows:


**Submission**




**Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.


**Takedown pin clearance recess does not exceed .800 inch in length**

ATF Supp 000366

**SER-395**

- 5 -

321194

### Conclusion:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a **"defense article"** on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.06
16:51:45 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:JWM
3311/321196

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR §
478.12.

**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the
submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted. This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed. The classification does not apply if any
templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold,
distributed, possessed with the item, or otherwise made available by the seller or distributor of
the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would
require a separate and complete submission encompassing any such material in order to provide
a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000368

- 2 -

321196

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.
(2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates *"the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower <u>receiver</u>)"* as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
   *(a) Time, i.e., how long it takes to finish the process;*
   *(b) Ease, i.e., how difficult it is to do so;*
   *(c) Expertise, i.e., what knowledge and skills are required;*

- 3 -

321196

(a) *Equipment, i.e., what tools are required;*

(ε) *Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*

(f) *Expense, i.e., how much it costs;*

(g) *Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*

(h) *Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000370

- 4 -

███████████                                                      321196

Results of the FTISB evaluation of the submission, are as follows:

███████ **Submission**



███████ **Submission (top view)**



The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed .800 inch in length**

- 5 -

321196

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a **"firearm"** as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a **"defense article"** on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.06
16:51:31 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.

ATF Supp 000372

**SER-401**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
*www.atf.gov*

907010:JWM
3311/321402

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR §
478.12.

**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the
submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted. This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed. The classification does not apply if any
templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold,
distributed, possessed with the item, or otherwise made available by the seller or distributor of
the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would
require a separate and complete submission encompassing any such material in order to provide
a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000383

- 2 -

321402

## Background:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: "*...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.*"

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: "*(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.*"

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower <u>receiver</u>)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: "*The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit.*"

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: "*A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
    *(a) Time, i.e., how long it takes to finish the process;*
    *(b) Ease, i.e., how difficult it is to do so;*
    *(c) Expertise, i.e., what knowledge and skills are required;*"

ATF Supp 000384

- 3 -

321402

(a) Equipment, i.e., what tools are required;

(ε) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;

(f) Expense, i.e., how much it costs;

(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and

(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

- 4 -

███████████                                                      321402

Results of the FTISB evaluation of the submission, are as follows:

**████████ Submission**





**████████ Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed .800 inch in length (not present)**

ATF Supp 000386

- 5 -

321402

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a "**firearm**" as defined in the GCA. 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.06
16:39:21 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.

ATF Supp 000387



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
*www.atf.gov*

907010:JWM
3311/321404

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR §
478.12.



**Submission**

FTISB has determined that the submitted sample, may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the
submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted. This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed. The classification does not apply if any
templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold,
distributed, possessed with the item, or otherwise made available by the seller or distributor of
the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would
require a separate and complete submission encompassing any such material in order to provide
a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000388

**SER-407**

- 2 -

321404

## Background:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; **(B) the frame or receiver of any such weapon;** (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "**frame**" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.*
*(2) The term "**receiver**" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower <u>receiver</u>)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "**frame**" and "**receiver**" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
  *(a) Time, i.e., how long it takes to finish the process;*
  *(b) Ease, i.e., how difficult it is to do so;*
  *(c) Expertise, i.e., what knowledge and skills are required;*

Case 3:20-cv-06761-EMC   Document 179-2   Filed 09/28/23   Page 33 of 149

- 3 -

321404

(a) Equipment, i.e., what tools are required;

(ε) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;

(f) Expense, i.e., how much it costs;

(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and

(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000390

- 4 -

321404

Results of the FTISB evaluation of the submission, are as follows:

**Submission**



**Submission (top view)**



The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed .800 inch in length (not present)**

- 5 -

321404

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is <u>not a "**firearm**" as defined in the GCA. 18 U.S.C. § 921(a)(3)</u>.

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

<u>It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371)</u>. Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.06
16:39:35 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:JWM
3311/321406

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR §
478.12.

**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the
submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted. This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed. The classification does not apply if any
templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold,
distributed, possessed with the item, or otherwise made available by the seller or distributor of
the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would
require a separate and complete submission encompassing any such material in order to provide
a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000393

- 2 -

321406

## Background:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: "...*(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.*"

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: "*(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.*"

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower* <u>*receiver*</u>)" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: "*The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit.*"

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: "*A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
    *(a) Time, i.e., how long it takes to finish the process;*
    *(b) Ease, i.e., how difficult it is to do so;*
    *(c) Expertise, i.e., what knowledge and skills are required;*

ATF Supp 000394

- 3 -

321406

(a) Equipment, i.e., what tools are required;
(ε) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;
(f) Expense, i.e., how much it costs;
(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and
(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted.  Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver."  We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer."  27 CFR 478.12(f)(1)(i).  To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations.  Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000395

- 4 -

321406

Results of the FTISB evaluation of the submission, are as follows:

**Submission**





**Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed .800 inch in length (not present)**

ATF Supp 000396

- 5 -

321406

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a "**firearm**" as defined in the GCA. 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,
Digitally signed by
Daniel Hoffman
Date: 2022.10.06
16:39:50 -04'00'
Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.

ATF Supp 000397



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
*www.atf.gov*

907010:JWM
3311/321420

**October 6, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your submitted sample of one partially complete AR10-type receiver. Specifically, you requested an evaluation and classification of the submitted sample under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August 24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR § 478.12.



**Submission**

FTISB has determined that the submitted sample, may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the submitted partially complete AR10-type receiver is <u>not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3)</u>. Please note this classification only applies to the sample itself, precisely as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000408

- 2 -

321420

████████

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; **(B) the frame or receiver of any such weapon**; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "**frame**" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.* *(2) The term "**receiver**" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower <u>receiver</u>)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "**frame**" and "**receiver**" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
  *(a) Time, i.e., how long it takes to finish the process;*
  *(b) Ease, i.e., how difficult it is to do so;*
  *(c) Expertise, i.e., what knowledge and skills are required;*

ATF Supp 000409

- 3 -

321420

(a) Equipment, i.e., what tools are required;

(ε) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;

(f) Expense, i.e., how much it costs;

(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and

(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below / 1.600 inch for AR10-types) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area (1.600 inch for AR10-types), measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000410

- 4 -

321420

Results of the FTISB evaluation of the submission, are as follows:

**Submission**



**Submission (top view)**



The forward edge of the takedown pin lug clearance area of this sample item does not measure more than 1.600 inch immediately forward of the front of the buffer retainer hole. Additionally, the trigger/hammer recess of your submitted sample is solid with exception of the previously noted takedown pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.



**Takedown pin clearance recess does not exceed 1.600 inch in length**

- 5 -

321420

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a "**firearm**" as defined in the GCA. 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.06
16:18:40 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.

ATF Supp 000412

**SER-421**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
*www.atf.gov*

907010:NKC
3311/322526

**October 21, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your submitted sample of one partially complete AR-type receiver. Specifically, you requested an evaluation and classification of the submitted sample under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August 24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR § 478.12.

 **Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed.

- 2 -

322526

The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

ATF Supp 000439

- 3 -

322526

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*

> *(a) Time, i.e., how long it takes to finish the process;*
> *(b) Ease, i.e., how difficult it is to do so;*
> *(c) Expertise, i.e., what knowledge and skills are required;*
> *(d) Equipment, i.e., what tools are required;*
> *(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
> *(f) Expense, i.e., how much it costs;*
> *(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
> *(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000440

- 4 -

322526

Results of the FTISB evaluation of the submission, are as follows:

**Submission**



**Submission (top view)**



The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Accordingly, FTISB finds that the submitted sample, alone, is not a "**firearm**" as defined by the GCA.



**Takedown pin clearance recess does not exceed .800 inch in length (not present)**

- 5 -

322526

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is <u>not a "**firearm**" as defined in the GCA. 18 U.S.C. § 921(a)(3)</u>.

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

<u>It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371)</u>. Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.21
07:42:11 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:NKC
3311/322528

**October 21, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your submitted sample of one partially complete AR-type receiver. Specifically, you requested an evaluation and classification of the submitted sample under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August 24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR § 478.12.

 **Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed.

ATF Supp 000443

**SER-427**

- 2 -

322528

The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

ATF Supp 000444

- 3 -

322528

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*

> *(a) Time, i.e., how long it takes to finish the process;*
>
> *(b) Ease, i.e., how difficult it is to do so;*
>
> *(c) Expertise, i.e., what knowledge and skills are required;*
>
> *(d) Equipment, i.e., what tools are required;*
>
> *(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
>
> *(f) Expense, i.e., how much it costs;*
>
> *(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
>
> *(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000445

(220 of 265), Page 220 of 265
Case 3:20-cv-06761-EMC Document 179-2 Filed 09/28/23 Page 89 of 149
Case: 24-2701, 10/29/2025, DktEntry: 36.3, Page 220 of 265

- 4 -

████████████                                                                    322528

Results of the FTISB evaluation of the submission, are as follows:

████████████ **Submission**





████████████ **Submission**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Accordingly, FTISB finds that the submitted sample, alone, is not a "**firearm**" as defined by the GCA.



**Takedown pin clearance recess does not exceed .800 inch in length (not present)**

ATF Supp 000446

- 5 -

322528

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is <u>not a "**firearm**" as defined in the GCA. 18 U.S.C. § 921(a)(3)</u>.

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

<u>It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371)</u>. Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.21
07:42:22 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.

ATF Supp 000447



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:NKC
3311/322530

**October 21, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR §
478.12.



**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the
submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted. This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed.

- 2 -

322530

The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.
(2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower receiver)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

ATF Supp 000449

- 3 -

322530

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*

*(a) Time, i.e., how long it takes to finish the process;*

*(b) Ease, i.e., how difficult it is to do so;*

*(c) Expertise, i.e., what knowledge and skills are required;*

*(d) Equipment, i.e., what tools are required;*

*(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*

*(f) Expense, i.e., how much it costs;*

*(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*

*(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000450

- 4 -

322530

Results of the FTISB evaluation of the submission, are as follows:

**Submission**





**Submission**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Accordingly, FTISB finds that the submitted sample, alone, is not a "**firearm**" as defined by the GCA.



**Takedown pin clearance recess does not exceed .800 inch in length (not present)**

ATF Supp 000451

**SER-435**

- 5 -

322530

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a "**firearm**" as defined in the GCA. 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.21
07:42:36 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.

**SER-436**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:NKC
3311/322532

**October 21, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR §
478.12.

 **Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the
submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted. This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed.

ATF Supp 000453

**SER-437**

- 2 -

322532

The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; **(B) the frame or receiver of any such weapon**; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "**frame**" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.
(2) The term "**receiver**" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower <u>receiver</u>)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

ATF Supp 000454

- 3 -

322532

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*

> *(a) Time, i.e., how long it takes to finish the process;*
>
> *(b) Ease, i.e., how difficult it is to do so;*
>
> *(c) Expertise, i.e., what knowledge and skills are required;*
>
> *(d) Equipment, i.e., what tools are required;*
>
> *(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
>
> *(f) Expense, i.e., how much it costs;*
>
> *(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
>
> *(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000455

(230 of 265), Page 230 of 265
Case 3:20-cv-06761-EMC    Document 179-2    Filed 09/26/23    Page 99 of 149
Case: 24-2701, 10/29/2025, DktEntry: 36.3, Page 230 of 265

- 4 -

322532

Results of the FTISB evaluation of the submission, are as follows:

**Submission**





**Submission**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Accordingly, FTISB finds that the submitted sample, alone, is not a "**firearm**" as defined by the GCA.



**Takedown pin clearance recess does not exceed .800 inch in length (not present)**

ATF Supp 000456

**SER-440**

- 5 -

322532

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is <u>not a "**firearm**" as defined in the GCA. 18 U.S.C. § 921(a)(3)</u>.

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

<u>It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371)</u>. Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

<div style="margin-left: 40%;">

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.10.21
07:42:55 -04'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

</div>

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.

ATF Supp 000457



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:JWM
3311/322692

**November 8, 2022**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR §
478.12.

**Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the
submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted. This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed.

ATF Supp 000468

**SER-442**

- 2 -

322692

The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure. (2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower <u>receiver</u>)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

ATF Supp 000469

- 3 -

322692

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*

    *(a) Time, i.e., how long it takes to finish the process;*

    *(b) Ease, i.e., how difficult it is to do so;*

    *(c) Expertise, i.e., what knowledge and skills are required;*

    *(d) Equipment, i.e., what tools are required;*

    *(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*

    *(f) Expense, i.e., how much it costs;*

    *(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*

    *(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining, or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

ATF Supp 000470

- 4 -

322692

Results of the FTISB evaluation of the submission, are as follows:

**Submission**



**Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Accordingly, FTISB finds that the submitted sample, alone, is not a **"firearm"** as defined by the GCA.



**Takedown pin clearance recess does not exceed .800 inch in length**

**SER-445**

ATF Supp 000471

(236 of 265), Page 236 of 265
Case: 24-2701, 10/29/2025, DktEntry: 36.3, Page 236 of 265
Case 3:20-cv-06761-EMC   Document 179-2   Filed 09/28/23   Page 115 of 149

- 5 -

322692

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition, and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

The submitted sample will be returned to you under separate cover.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,
Digitally signed by
Daniel Hoffman
Date: 2022.11.08
08:03:18 -05'00'
Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:DLH
3311/322714

**December 27, 2022**



:

This correspondence serves to inform you that the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), has evaluated multiple semiautomatic, striker-fired pistols (sometimes generally referred to as "Glock-type" pistols) manufactured by                . Applying the regulatory text of the final rule titled *Definition of 'Frame or Receiver' and Identification of Firearms* (Final Rule 2021-05F), partially complete            striker-fired semiautomatic pistol frames, including, but not limited to those sold within parts kits, have reached a stage of manufacture where they *"may readily be completed, assembled, restored, or otherwise converted"* to a functional frame. Therefore, *even without* any associated templates, jigs, molds, equipment, tools, instructions, or guides, these partially complete pistol frames are **"frames"** and also **"firearms"** as defined in the Gun Control Act (GCA) and its implementing regulations, 18 U.S.C. § 921(a)(3)(B) and 27 CFR 478.12(a)(1), (c).



**partially complete frame - FIREARM**

ATF Supp 000473

**SER-447**

- 2 -

322714



**partially complete frame - FIREARM**

**Background**:

The GCA defines the term **"firearm"** as: *"...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."* 18 U.S.C. § 921 (a)(3) (emphasis added). The GCA implementing regulations define the terms **"frame"** and **"receiver"** by describing a single housing or structural component for one specific fire control component of a given weapon—for example, a single housing is specified for particular weapons such as a "handgun" and a "rifle." 27 CFR 478.12(a).

The GCA implementing regulations define the term **"frame"** as: *"the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."* 27 CFR § 478.12(a)(1).

Further, 27 CFR § 478.12(c) explains when a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, is regulated as a **"frame"** or **"receiver:"**

*The terms **"frame"** and **"receiver"** shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

ATF Supp 000474

**SER-448**

- 3 -

322714

Lastly, 27 CFR § 478.11 defines the term "**readily**" as: "*A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*

*(a) Time, i.e., how long it takes to finish the process;*

*(b) Ease, i.e., how difficult it is to do so;*

*(c) Expertise, i.e., what knowledge and skills are required;*

*(d) Equipment, i.e., what tools are required;*

*(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*

*(f) Expense, i.e., how much it costs;*

*(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*

*(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

## Evaluation:

█████████████, manufacturers multiple partially complete frames modeled after, and compatible with, components for Glock pistols. The ████████████ of the Glock 17 and Glock 22 full size semiautomatic pistol, while the ████████ is a compact semiautomatic pistol compatible with the Glock 19 and Glock 23. Other models such as the ████████ (subcompact), ███████ (.45ACP/10mm) and ████ (single stack) emulate other models of Glock pistols. ████████ partially complete frames utilize Glock or Glock-type components to complete the assembly of the weapon. These designs utilize slide rail components, including the Locking Block Rail System (LBRS) and Rear Rail Module (RRM), as described below.

FTISB evaluation identified that the above-listed ████████ partially complete frames have the following features:

- External and internal contours appear to be complete
- Steel serial number plate insert imbedded into frame in a manner to be marked as required under 27 CFR § 478.92
- Magazine well appears to be finished
- Finished clearances to house magazine catch
- Finished channel and contours for magazine catch spring
- Trigger guard completed
- Trigger clearance into trigger guard area
- Cavities fully formed for slide lock springs
- Housing and clearance for the slide lock lever complete
- Contours and clearances for the slide stop lever complete
- Interior channel of dust cover partially formed
- Clearances for the trigger bar complete
- Front pin holes for LBRS completed

- 4 -

322714

- Locking Block pin holes not completed
- Trigger pin holes not completed
- Trigger Mechanism Housing pin holes not complete
- Trigger cavity formed
- Recess fully formed for the LBRS
- Recess fully formed for trigger mechanism housing and RRM
- "Temporary Rails" preventing installation of RRM
- "Temporary Rails" preventing installation of the LBRS
- "Barrel Block" in dust cover channel preventing slide installation

In the semiautomatic, striker-fired pistol described above, the critical areas of the **"frame"** are the front and rear fire control cavities. The front and rear cavities are critical because these areas provide housing for the sear. *See* 27 CFR 478.12(a)(1), (a)(4)(iii). As further explained and illustrated below, removing or indexing any material in these critical areas, or completing or indexing any of the pin holes necessary to install the sear, are therefore crucial steps in producing a functional frame.



**In a pistol based on a Glock design, the trigger is housed in the front fire control cavity, and the sear, which is connected by the trigger bar, is located in the rear cavity**

ATF Supp 000476

**SER-450**

(241 of 265), Page 241 of 265
Case: 24-2701, 10/29/2025, DktEntry: 36.3, Page 241 of 265
Case 3:20-cv-06761-EMC   Document 179-2   Filed 09/28/23   Page 120 of 149

- 5 -

322714



**For reference, in a pistol based on a Glock design, the trigger bar assembly contains the sear. The trigger bar assembly operates as a single unit**



**frame with Glock-type Fire Control Components including trigger bar assembly containing the sear**

In addition, the front and rear cavities of pistol frames using this internal design incorporate slide rails that have pin holes designed to secure the trigger mechanism and sear in precise locations. Specifically, in the ▮▮▮▮▮ design, the front cavity also provides housing for the LBRS, and the rear cavity provides housing for the RRM. Under the Final Rule, these slide rail components are "attachments ... required to connect" the sear to the frame. *See* 27 CFR 478.12(a)(1).

- 6 -

322714



**The above picture, taken from [redacted] instructional materials, shows that the trigger bar assembly is attached to the RRM, which is attached to the frame**



**Top view of the LBRS and RRM with trigger and trigger mechanism installed**

The above-mentioned "partially complete" pistol frame products marketed by [redacted] are manufactured from a polymer material and incorporate temporary rails or blocking tabs that are easily removable by a person with novice skill, using common tools, such as a Dremel-type rotary tool, within minutes—an amount of time and a set of circumstances that are far less than required to fall within the meaning of the term "readily" in the Final Rule. Once this material is removed, the partially complete frames are immediately capable of accepting the LBRS, RRM, and fire control components, including the sear.

- 7 -

322714



**FIREARM -** ▮▮ **with Temporary Rails**



**FIREARM -** ▮▮ **with Temporary Rails and Barrel Blocking Tab**



**FIREARM -** ▮▮ **with Temporary Rails and Barrel Blocking Tab**

The ▮▮ partially complete frame contains a fully formed cavity for the LBRS, RRM Trigger, Trigger Bar, and Trigger Mechanism Housing. These components are critical features to these semiautomatic pistols, as discussed above. Any partially formed or indexed hole or recess is relevant, even if unfinished, because such forming or indexing facilitates the completion of this feature and reduces the time, expertise, equipment, and expense needed to make the unfinished item functional.

- 8 -

322714



"Temporary Rails" and "Barrel Block" blocking features removed within minutes



partially complete frame with Locking Block Rail System and
Rear Rail Module – "Temporary Rails" present



partially complete frame with Locking Block Rail System and
Rear Rail Module – "Temporary Rails" removed

ATF Supp 000480

**SER-454**

- 9 -

322714



**partially complete frame with Locking Block Rail System and Rear Rail Module installed**

As the front and rear cavities were already fully formed, FTISB completed numerous partially complete frames by removing the "temporary rails," "blocking tab," and drilling of the six pin holes, with common tools, to assemble a weapon capable of expeling a projectile by action of an explosive, with completion times of 10 to 30 minutes using Glock-type parts, an amount of time and a set of circumstances that are far less than required to fall within the meaning of the term "readily" in the Final Rule. These parts are not regulated and are readily available. The time to assemble a weapon capable of expeling a projectile by action of an explosive when it was assembled was generally reduced to less than 15 minutes when completed by individuals having previous experience completing ▮▮▮▮ frames.



**assembled with Glock 19 components into fully functional firearm**

**Conclusion**:

Based on the above, the partially complete ▮▮▮▮, with any kind of indexing or material removed from the front or rear fire control cavities for installation of the trigger mechanism and sear, or slide rail attachments to connect the trigger mechanism and sear to the frame, has reached a stage of manufacture where it *"may readily be completed, assembled, restored, or otherwise converted"* to a functional frame. As examined, it is classified as a "**frame**" and also a "**firearm**." as defined in the GCA, 18 U.S.C. § 921(a)(3)(B), and implementing regulations, 27 CFR 478.12(a)(1), (c). It is classified as a firearm even if it is not sold, distributed, marketed, or possessed with any associated templates, jigs, molds, equipment, tools, instructions, or guides.

ATF Supp 000481

**SER-455**

(246 of 265), Page 246 of 265
Case: 24-2701, 10/29/2025, DktEntry: 36.3, Page 246 of 265
Case 3:20-cv-06761-EMC  Document 179-2  Filed 09/28/23  Page 125 of 149

- 10 -

322714

While the analysis allows for the consideration of how a partially complete frame is, directly or indirectly, sold, distributed. marketed. or possessed, with any associated templates, jigs. molds, equipment. tools, instructions, guides, or marketing materials, for these partially complete frames such analysis was not necessary because they are, by themselves, "frames" and "firearms" as defined in the GCA.

It is important that persons engaged in the business of manufacturing, importing, or dealing in this item do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)). serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)). or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2; 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms, such as those classified above, must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, serialization, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a **"defense article"** on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

Please note this classification applies to the samples evaluated above: ATF has classified these items under its own regulatory authority. Please note that you must comply with the Final Rule whether or not you have submitted or received a specific classification with respect to any item. You are free to submit any additional item to ATF for voluntary classification pursuant to 27 CFR 478.92(c).

If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.12.27
12:54:05 -05'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.

ATF Supp 000482

**SER-456**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:CBC
3311/324620

**December 30, 2022**



:

This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your submitted sample of one partially complete AR-type receiver. Specifically, you requested an evaluation and classification of the submitted sample under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August 24, 2022, which amended the regulatory definition of the term "**frame or receiver**" in 27 CFR § 478.12.

**. Submission**



FTISB has determined that the submitted sample, may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

ATF Supp 000496

**SER-457**

- 2 -

324620

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: "…*(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; **(B) the frame or receiver of any such weapon; (C)** any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "**frame**" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.
(2) The term "**receiver**" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower <u>receiver</u>)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

ATF Supp 000497

- 3 -

█████████                                                          324620

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*

> *(a) Time, i.e., how long it takes to finish the process;*
> *(b) Ease, i.e., how difficult it is to do so;*
> *(c) Expertise, i.e., what knowledge and skills are required;*
> *(d) Equipment, i.e., what tools are required;*
> *(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
> *(f) Expense, i.e., how much it costs;*
> *(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
> *(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted. Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR 478.12(c), example 4.

- 4 -

324620

Results of the FTISB evaluation of the submission, are as follows:



**Submission (right view)**



**Submission (right view)**



**. Submission (top view)**

(251 of 265), Page 251 of 265
Case 3:20-cv-06761-EMC   Document 179-2   Filed 09/28/23   Page 143 of 149
10/29/2025, DktEntry: 36.3, Page 251 of 265

- 5 -

324620

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Accordingly, FTISB finds that the submitted sample, alone, is not a "**firearm**" as defined by the GCA.



**Takedown pin clearance recess of submission does not exceed .800 inch in length**
**Measurement of rear take-down clearance on submission is approximately 0.700 inches**

### Conclusion:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3).

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a "**defense article**" on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and is also subject to export controls.[1]

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.

ATF Supp 000500

- 6 -

324620

To facilitate the return of the submitted shotgun, please provide FTISB an appropriate FedEx or similar return shipping label. For your convenience, this information can be emailed to fire_tech@atf.gov and should reference evaluation #324620. Please provide the return shipping label within 60 days of receipt of this letter. If no correspondence is received within 60 days of receipt of this letter, the sample will be considered abandoned and disposed of in accordance with the needs of the Federal Government.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2022.12.30
12:31:45 -05'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

ATF Supp 000501



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*
www.atf.gov

907010:CBC
3311/324648

**January 9, 2023**



This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied
your submitted sample of one partially complete AR-type receiver. Specifically, you requested
an evaluation and classification of the submitted sample under the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), as implemented by the Final Rule – 2021R-05F, effective August
24, 2022, which amended the regulatory definition of the term **"frame or receiver"** in 27 CFR §
478.12.

 **Submission**



FTISB has determined that the submitted sample may not "readily be completed, assembled,
restored or otherwise converted to function as a frame or receiver." Therefore, taken alone, the
submitted partially complete AR-type receiver is not a "**firearm**" as defined in the GCA, 18
U.S.C. § 921(a)(3). Please note this classification only applies to the sample itself, precisely as
submitted. This classification has no force or effect if the design, dimensions, configuration,
method of operation, or materials used were changed.

- 2 -

324648

The classification does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed with the item, or otherwise made available by the seller or distributor of the item to the purchaser or recipient of the item, as set forth in 27 CFR § 478.12(c). ATF would require a separate and complete submission encompassing any such material in order to provide a separate classification on any such changes or additional material or combination of materials.

**Background**:

The GCA, 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as: *"...(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; **(B) the frame or receiver of any such weapon**; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."*

27 CFR § 478.12(a) defines the terms "**frame or receiver**" as: *"(1) The term "frame" means the part of a handgun, or variants thereof, that provides housing or a structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component prior to initiation of the firing sequence (i.e., sear or equivalent), even if pins or other attachments are required to connect such component to the housing or structure.*
*(2) The term "receiver" means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (i.e., bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."*

27 CFR § 478.12(f)(1)(i) specifically designates "*the lower part of the weapon that provides housing for the trigger mechanism and hammer ( i.e., lower <u>receiver</u>)*" as the "**receiver**" of the AR-type weapons.

27 CFR § 478.12(c) defines "**Partially complete, disassembled, or nonfunctional frame or receiver**" as: *"The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."*

ATF Supp 000503

- 3 -

324648

27 CFR § 478.11 and 27 CFR § 479.11 both define the term "**readily**" as: *"A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state.  With respect to the classification of firearms, factors relevant in making this determination include the following:*

> *(a) Time, i.e., how long it takes to finish the process;*
> *(b) Ease, i.e., how difficult it is to do so;*
> *(c) Expertise, i.e., what knowledge and skills are required;*
> *(a) Equipment, i.e., what tools are required;*
> *(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
> *(f) Expense, i.e., how much it costs;*
> *(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
> *(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction."*

**Evaluation**:

As noted above, ATF conducts its classification review of the submitted sample, precisely as submitted.  Based on the statutory and regulatory definitions above, a partially complete AR-type receiver alone, with no indexing or machining of any kind performed in the area of the fire control cavity (except the .800 inch takedown pin area, explained below) will be examined to ascertain if it can "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver."  We note that even when a sample is not classified as a "**receiver**," or "**firearm**," that determination can change if it is sold, distributed, marketed, possessed, or otherwise made available with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit.

In an AR-type receiver, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer."  27 CFR § 478.12(f)(1)(i).  To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations.  Removing or indexing any material in this critical area, or completing or indexing any of these holes, or other similar indexing, machining, or forming of this area, is therefore a crucial step in producing a functional receiver.

Because the front of the takedown pin lug clearance area merges with the back of the fire-control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown pin lug clearance area stops, and the fire-control cavity begins. Accordingly, ATF has determined that drilling or milling a standard .800 inch takedown pin area, measured from immediately forward of the front of the buffer retainer hole, next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer. Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas, having been indexed, machined or formed"* as stated in 27 CFR § 478.12(c), example 4.

ATF Supp 000504

- 4 -

████████████                                               324648

Results of the FTISB evaluation of the submission are as follows:



████████ **Submission**



████████ **Submission (top view)**

The forward edge of the takedown pin lug clearance area of this sample item does not measure more than .800 inch immediately forward of the front of the buffer retainer hole. Accordingly, FTISB finds that the submitted sample, alone, is not a "**firearm**" as defined by the GCA.



**Takedown pin clearance recess does not exceed .800 inch in length**
**Measurement of rear take-down clearance on submission is approximately 0.760 inch**

**Conclusion**:

FTISB has determined, based on the entire record before it, that the submitted sample may not "readily be completed, assembled, restored or otherwise converted to function as a frame or receiver." Therefore, the submitted "partially complete" AR-type receiver is not a "**firearm**" as defined in the GCA, 18 U.S.C. § 921(a)(3).

(257 of 265), Page 257 of 265
Case: 24-2701, 10/29/2025, DktEntry: 36.3, Page 257 of 265
Case 3:20-cv-06761-EMC   Document 179-2   Filed 09/28/23   Page 149 of 149

- 5 -

324648

Please note this classification only applies to the sample exactly as submitted. This classification has no force or effect if the design, dimensions, configuration, method of operation, or materials used were changed. The classification also does not apply if any templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, marketed, possessed, or otherwise made available with the item, as set forth in 27 CFR § 478.12(c).

It is important that persons engaged in the business of manufacturing, importing, or dealing in firearms do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR § 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR § 478.125(i)), or other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371). Anyone engaging in the business of manufacturing, importing, or dealing in firearms must obtain a Federal firearms license from ATF and abide by all applicable laws and regulations, including those related to marketing, recordkeeping, and background checks. Nor may any person or entity intentionally assist another to avoid such legal requirements.

Further, this item is also considered a **"defense article"** on the U.S. Munitions Import List and, therefore, requires an approved Application and Permit for Importation of Firearms, Ammunition, and Implements of War (ATF Form 6) for importation into the United States under 27 CFR § 447.41; § 447.22, and is also subject to export controls.[1]

To facilitate the return of the submitted sample, please provide FTISB an appropriate FedEx or similar return shipping label. For your convenience, this information can be emailed to fire_tech@atf.gov and should reference evaluation #324648. Please provide the return shipping label within 60 days of receipt of this letter. If no correspondence is received within 60 days of receipt of this letter, the sample will be considered abandoned and disposed of in accordance with the needs of the Federal Government.

FTISB trusts that the foregoing has been responsive to your request for an evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

Digitally signed by
Daniel Hoffman
Date: 2023.01.09
09:38:39 -05'00'

Daniel Hoffman
Chief, Firearms Technology Industry Services Branch

Cc:

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.

GIBSON, DUNN & CRUTCHER LLP
SCOTT A. EDELMAN, SBN 116927
sedelman@gibsondunn.com
2029 Century Park East
Los Angeles, CA 90067-3026
Telephone: (310) 552-8500
Facsimile: (310) 551-8741

LEE R. CRAIN, *pro hac vice*
LIESEL SCHAPIRA, *pro hac vice*
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

PAUL HASTINGS LLP
AVI WEITZMAN, *pro hac vice*
aviweitzman@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 752-3620
*Attorneys for Plaintiffs Bryan Muehlberger,
Frank Blackwell, and Giffords Law Center to
Prevent Gun Violence*

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE, SBN 238485
Supervising Deputy Attorney General
S. CLINTON WOODS, SBN 246054
Deputy Attorney General
Clint.Woods@doj.ca.gov
455 Golden Gate Ave,
Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3807
Facsimile: (415) 703-5843

*Attorneys for Plaintiff State of California, by
and through Attorney General Rob Bonta*

[*Additional Counsel Listed on Next Page*]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, BRYAN MUEHLBERGER, FRANK BLACKWELL, GIFFORDS LAW CENTER to PREVENT GUN VIOLENCE<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, STEVEN DETTELBACH, in his official capacity, DANIEL HOFFMAN, in his official capacity, DEPARTMENT OF JUSTICE, MERRICK GARLAND, in his official capacity.<br><br>Defendants. | CIVIL CASE NO.: 3:20-CV-06761-EMC<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Additional Counsel

2    GIFFORDS LAW CENTER TO
3    PREVENT GUN VIOLENCE
     DAVID M. PUCINO, *pro hac vice*
4    244 Madison Ave Ste 147
     New York, NY 10016
5    Telephone: (917) 524-7816

6
     *Attorney for Plaintiffs Bryan Muehlberger,*
7    *Frank Blackwell, and Giffords Law Center to*
     *Prevent Gun Violence*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLAIMS FOR RELIEF**

**COUNT ONE:** **Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A):**
**ATF's Ghost Gun Actions Are Not in Accordance with Law.**

139.    Plaintiffs repeat, reallege, and incorporate the allegations in the paragraphs above as though fully set forth herein.

140.    Individually and collectively, ATF's ghost gun determinations, including the Classification Letters, Ruling 2015-1, the Ghost Gun Guidance, the Final Rule, and additional explanatory materials interpreting the Final Rule, including the September 27, 2022 Open Letter, August, 26, 2022 YouTube video, and informational slide-deck, constitute "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704.

141.    Under the Administrative Procedure Act, this Court is empowered to "hold unlawful and set aside agency action, findings, and conclusion found to be . . . not in accordance with law." *Id.* § 706(2)(A).

142.    ATF's ghost gun determinations are "not in accordance with law" because they disregard the GCA.  The GCA provides that "[t]he term 'firearm' means (A) any weapon (including a starter gun) which will or ***is designed or may readily be converted*** to expel a projectile by the action of an explosive;" and includes "(B) ***the frame or receiver of any such weapon***." 18 U.S.C. § 921(a)(3) (emphases added).  Namely, unfinished 80 percent receivers and frames—sold as part of an assembly kit, with associated templates, or alone—fall within the statutory definition of firearms subject to the GCA's requirements.  They are "designed" to be "readily converted" into firearms, as is evident from their design and marketing, which emphasizes how "easy" it is for even a novice to use the "world's fastest jig" to complete an 80% lower "in *under 30 minutes*."[191]  Yet 80 percent receivers and frames may still be purchased without serial numbers and background checks, in direct violation of the GCA, as a result of ATF's determinations.

143.    ***The Final Rule.***  ATF's Final Rule contravenes the plain text of the GCA.  Although it recognizes that 80 percent frames and receivers, when sold with jigs tool kits or other materials, are

---

[191]   *See, e.g.*, *Easy Jig Gen 3 Multi-Platform – AR-15, AR-9 And .308 80% Lower Jig*, 80 PERCENT ARMS, https://www.80percentarms.com/products/easy-jig-gen-3-multi-platform-ar-15-ar-9-and-308-80-lower-jig/ (last visited Oct. 11, 2022).

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**SER-470**

firearms under the GCA, ATF fails to acknowledge that an 80 percent receiver, whether sold with or without other products, is "readily convertible" to a fully functional weapon. Any buyer can easily and legally purchase, without serialization or background check safeguards, an 80 percent receiver in one transaction and a jig or tool kit in another. Or consumers can purchase machines to automate the conversion process in minutes. Even a novice can "readily convert[]" an 80 percent component into a fully functioning firearm in hours or minutes. Such receivers are therefore "firearms," and the Final Rule's failure to regulate them conflicts with the GCA.

144.  ***Classification Letters, Ruling 2015-1, Ghost Gun Guidance.***  In the alternative, and to the extent the Final Rule is vacated, altered, or amended at any point, ATF's determinations reflected in its Classification Letters to Polymer80, Ruling 2015-1, and the Ghost Gun Guidance similarly disregard the GCA.

145.  Each of the products in the Classification Letters constitutes a "firearm" under the plain text of the GCA. For example, the 2017 Polymer80 Letter states that the 80 percent receiver in question was not "sufficiently complete" because of the "machining operations" that were yet to be "completed." But at least one retailer of the 80 percent receiver at issue in the 2017 Polymer80 Letter markets it with the statement "*[i]t's amazing to think in just 10–15 minutes you can have a fully functioning Glock that you made at home.*"[192] It is difficult to conceive of what might possibly be "readily" converted to expel a projectile within the meaning of the GCA if an 80 percent receiver that requires only 10–15 minutes of labor does not. Similarly, consumers have reported that the product addressed in the November 2015 Polymer80 Letter could be converted into a fireable weapon in an hour or two. As one consumer said, it "[r]eally is that easy."[193] And the product addressed in the February 2015 Polymer80 letter was expressly advertised as "incredibly simple to drill and mill, and the material is forgiving."[194] Ruling 2015-1 and the Ghost Gun Guidance are no different; each

---

[192]  *See supra* note 4.

[193]  *See supra* note 105.

[194]  *See* Polymer80 *80% Receiver and Jig Kit (AR-15),* 80% LOWERS, https://www.80-lower.com/products/Polymer80-lower-receiver-and-jig-kit-ar-15/ (last visited Oct. 19, 2022).

1    permits products that are "*designed or may readily be converted* to expel a projectile" to be sold as

2    *non*-firearms exempt from the GCA's requirements. 18 U.S.C. § 921(a)(3) (emphasis added).

3        146.    Plaintiffs have been and will continue to be impacted and injured by the Final Rule and

4    Classification Letters to Polymer80 (and other 80 percent receiver and frame manufacturers), because,

5    among other reasons, the firearms assembled from 80 percent receivers and frames have been used

6    and in the future will be used in connection with criminal activity that undermines the legitimate

7    regulatory and law enforcement interests of Plaintiff California and that has harmed and will

8    foreseeably cause future harm to Plaintiffs Bryan Muehlberger, Frank Blackwell, and Giffords Law

9    Center to Prevent Gun Violence.

10
11    **COUNT TWO:  Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A):**
    **ATF's Ghost Gun Actions Are Arbitrary and Capricious.**

12        147.    Plaintiffs repeat, reallege, and incorporate the allegations in the paragraphs above as

13    though fully set forth herein.

14        148.    ATF's Final Rule, 87 Fed. Reg. 24,652 constitutes "final agency action for which there

15    is no other adequate remedy." 5 U.S.C. § 704.

16        149.    Under the Administrative Procedure Act, this Court is empowered to "hold unlawful

17    and set aside agency action, findings, and conclusion found to be . . . arbitrary, capricious, an abuse

18    of discretion." *Id.* § 706(2)(A).

19        150.    The Final Rule arbitrarily deems as firearms only those 80 percent receivers and frames

20    sold in kits or alongside jigs, templates, or similar aids, leaving 80 percent receivers and frames sold

21    separately wholly unregulated.  This arbitrary line leaves open obvious and easily navigable loopholes

22    that run counter to the GCA's basic commands.  ATF's Final Rule is, therefore, arbitrary and

23    capricious.

24        151.    Moreover, ATF's approval of the unregulated manufacture and sale of 80 percent

25    receivers and frames used to build ghost guns "entirely fail[s] to consider an important aspect of the

26    problem" that ATF was purporting to regulate. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*

27    *Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  ATF has acknowledged serious problems with the current

28    regulatory landscape, *see supra* ¶ 12, yet has failed to consider the ways in which the Final Rule will

71

1    not abate those problems and may even contribute to the proliferation of untraceable firearms that

2    impose costs across the country, including to the State of California and its law enforcement officers,

3    Plaintiffs Bryan Muehlberger, Frank Blackwell, and other victims of ghost gun violence, and

4    organizations expending limited resources to combat rising ghost gun violence, like Plaintiff Giffords

5    Law Center.

6            152.    ATF has also failed to consider that 80 percent receivers and frames may be easily and

7    legally purchased separate from an assembly kit.

8            153.    Alternatively, should the Final Rule be vacated, altered, or amended at any point,

9    ATF's ghost gun actions, including its Classification Letters, Ruling 2015-1, and Ghost Gun Guidance

10   constitute "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704.

11           154.    Because they are contrary to the GCA and because of ATF's failure to consider

12   "important aspect[s] of the problem," ATF's ghost actions are arbitrary and capricious.

13           155.    Plaintiffs have been and will continue to be impacted and injured by the Final Rule or,

14   in the alternative, ATF's ghost gun actions, because, among other reasons, the firearms assembled

15   from 80 percent receivers and frames have been used and will continue to be used in connection with

16   criminal activity that undermines the legitimate regulatory and law enforcement interests of Plaintiff

17   State of California and that has harmed and will foreseeably cause future harm to Plaintiffs Bryan

18   Muehlberger, Frank Blackwell, and Giffords Law Center.

19                               **PRAYER FOR RELIEF**

20           WHEREFORE, Plaintiffs respectfully request that the Court enter an order and judgment:

21           a.      Declaring that 80 percent receivers and frames are "firearms" under the GCA,

22   even when sold without a kit, template, or other materials, because they are "designed to" *and*

23   "may readily be converted" into functional firearms with ease, *see* 18 U.S.C. § 921(a)(3);

24           b.      Declaring null and void, with no force and effect, the portions of ATF's Final

25   Rule and guidance providing that 80 percent receivers and frames are not "firearms" under the

26   GCA unless sold with a kit, template, or other materials;

27

28

                                            72
                  FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

c.    Declaring arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A) the portions of ATF's Final Rule and other guidance providing that 80 percent receivers and frames are not "firearms," under the GCA unless sold with a kit, template, or other materials;

d.    In the alternative, declaring null, void, and with no force and effect ATF's Classification Letters, Ruling 2015-1, and the Ghost Gun Guidance finding that 80 percent receivers and frames are not "firearms" under the GCA;

e.    In the alternative, declaring arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A) ATF's Classification Letters, Ruling 2015-1, and the Ghost Gun Guidance finding that 80 percent receivers and frames are not "firearms" under the GCA;

f.    Preliminarily and permanently enjoining Defendants from implementing and enforcing any agency action, decision, or guidance providing that 80 percent receivers and frames are not "firearms" under the GCA;

g.    Awarding Plaintiffs their reasonable costs, including attorneys' fees, in bringing this claim;

h.    Granting such other and further relief as this Court deems just and proper.

*Dated:* October 20, 2022

/s S. Clinton Woods

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE, SBN 238485
Supervising Deputy Attorney General
S. CLINTON WOODS, 246054
Deputy Attorney General
Clint.Woods@doj.ca.gov
455 Golden Gate Ave,
Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3807
Facsimile: (415) 703-5843

*Attorneys for Plaintiff State of California, by and through Attorney General Rob Bonta*

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**SER-474**

1    /s Scott A. Edelman

2    GIBSON, DUNN & CRUTCHER LLP
     SCOTT A. EDELMAN, SBN 116927
3    2029 Century Park East, Suite 4000
     Los Angeles, CA 90067-3026
4    sedelman@gibsondunn.com
     Telephone: (310) 357-8061
5    Facsimile: (310) 552-7041
6
     LEE R. CRAIN, *pro hac vice*
7    LIESEL SCHAPIRA, *pro hac vice*
     200 Park Avenue
8    New York, NY 10166-0193
     Telephone: (212) 351-4000
9    Facsimile: (212) 351-4035
10
     /s Avi Weitzman
11
     PAUL HASTINGS LLP
12   AVI WEITZMAN, *pro hac vice*
     aviweitzman@paulhastings.com
13   200 Park Avenue
     New York, NY 10166
14   Telephone: (212) 318-6000
     Facsimile: (212) 752-3620
15
16   *Attorney for Plaintiffs Bryan Muehlberger,*
17   *Frank Blackwell, and Giffords Law Center to Prevent*
     *Gun Violence*
18
19   /s David M. Pucino

20   GIFFORDS LAW CENTER TO
     PREVENT GUN VIOLENCE
21   DAVID M. PUCINO
     223 West 38th St. # 90
22   New York, NY 10018
     Telephone: (917) 680-3473
23
24   *Attorney for Plaintiffs Bryan Muehlberger,*
     *Frank Blackwell, and Giffords Law Center to Prevent*
25   *Gun Violence*
26
27
28
                              74
        FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

                           **SER-475**